**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA**

|  |  |  |
|---|---|---|
| THOMAS SCUDERI, Individually and On Behalf of All Others Similarly Situated, | ) ) ) ) ) | **Case No. 5:19-CV-00522-SLP** |
| Plaintiff, | ) ) | **District Judge Scott L. Palk** |
| v. | ) ) ) |  |
| MAMMOTH ENERGY SERVICES, INC., ARTY STRAEHLA, and MARK LAYTON., | ) ) ) ) ) |  |
| Defendants. | ) ) ) ) |  |
| JUSTAS NORMANTAS, Individually and On Behalf of All Others Similarly Situated, | ) ) ) ) ) | **Case No. 5:19-CV-00560-SLP** |
| Plaintiff, | ) ) | **District Judge Scott L. Palk** |
| v. | ) ) ) |  |
| MAMMOTH ENERGY SERVICES, INC., ARTY STRAEHLA, and MARK LAYTON., | ) ) ) ) ) |  |
| Defendants. | ) ) ) ) |  |

**MEMORANDUM OF LAW IN SUPPORT OF THE MAMMOTH INVESTOR GROUP'S MOTION TO: (1) CONSOLIDATE RELATED ACTIONS; (2) APPOINT LEAD PLAINTIFF; AND (3) APPROVE LEAD PLAINTIFF'S SELECTION OF COUNSEL**

## PRELIMINARY STATEMENT

Thomas Scuderi, Stephen Terry, Justas Normantas, Andrew Micklin, and Dion Larot, (the "Mammoth Investor Group" or the "Group") respectfully submits this memorandum of law in support of its motion for an Order, pursuant to and Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"):

(1)     consolidating the above-captioned actions (the "Related Actions");

(2)     appointing The Mammoth Investor Group as Lead Plaintiff on behalf a class consisting of all persons other than Defendants who purchased or otherwise acquired the securities of Mammoth Energy Services, Inc. ("Mammoth" or the "Company"), between October 19, 2017 and June 5, 2019, both dates inclusive (the "Class Period"); and

(3)     approving The Mammoth Investor Group's selection of The Rosen Law Firm, P.A. as Lead Counsel and Federman & Sherwood as Liaison Counsel for Lead Plaintiff and the Class.

## INTRODUCTION AND BACKGROUND

The *Scuderi* Action was commenced on June 7, 2019 against the Company and certain of its officers, and directors, for violations under the Exchange Act. That same day, The Rosen Law Firm, P.A. issued an early notice pursuant to the PSLRA advising class members of, *inter alia,* the allegations and claims in the Complaint, the Class Period, and advising class members of their option to seek appointment as lead plaintiff.

1

A copy of the early notice is attached as Exhibit 1 to the Declaration of William B. Federman filed herewith ("Federman Decl." or "Federman Declaration"). The *Normantas Action* was filed on June 19, 2019, alleging similar allegations against the same Defendants.

Mammoth purports to operate as an oilfield service company and has three segments: Infrastructure Services, Pressure Pumping Services, and Natural Sand Proppant Services. Mammoth serves government-funded utilities, private and public investor owned utilities, co-operative utilities, independent oil and natural gas producers and land-based drilling contractors in North America. The complaints allege that throughout the Class Period, Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Mammoth's subsidiary, Cobra Acquisitions LLC ("Cobra"), improperly obtained two infrastructure contracts with Puerto Rico Electric Power Authority ("PREPA") that totaled over $1.8 billion; (2) specifically, the contracts were awarded as the result of improper steering and not a competitive Request for Proposal process; and (3) as a result, Defendants' statements about Mammoth's business, operations and prospects were materially false and misleading and/or lacked a reasonable basis at all relevant times.

On May 24, 2019, the *Wall Street Journal* published an article entitled "FEMA Official Probed Over Puerto Rico Power Restoration," stating that the Federal Emergency Management Agency ("FEMA") Deputy Regional Administrator who oversaw FEMA's

response to the damage wrought by Hurricane Maria was under investigation by the Department of Homeland Security ("DHS"), relieved of her duties, and placed on administrative leave over allegations that she steered work to Cobra. On this news, Mammoth's shares fell $1.25 per share or over 10% over the next three trading days on unusually high volume to close at $10.99 per share on May 29, 2019, damaging investors.

Then, on June 5, 2019, during market hours, the *Wall Street Journal* published an article entitled *Puerto Rico Grid Contractor Caught Up in Federal Probes*, stating that the Federal Bureau of Investigation had "opened a related criminal inquiry" into the origin of Cobra's contracts with PREPA. On this news, the Company's shares fell $5.09 per share or over 45% over the next two trading days to close at $6.11 per share on June 6, 2019, further damaging investors.

**ARGUMENT**

**I.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED**

Consolidation of related cases is proper where, as here, the actions involve common questions of law and fact such that consolidation would prevent unnecessary cost or delay in adjudication. When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters at issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay. Fed. R. Civ. P. 42(a).

The PSLRA contemplates consolidation where "more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has

3

been filed." 15 U.S.C. §78u-4(a)(3)(A)(ii). As such, the PSLRA does not displace the traditional legal standards for consolidation under Fed. R. Civ. P. 42(a).

Each of the Related Actions has been filed in this District alleging similar factual and legal grounds to support allegations of violations of the Exchange Act by Defendants arising from the public dissemination of false and misleading information to investors. Accordingly, the Related Actions should be consolidated pursuant to Fed. R. Civ. P. 42(a) for all purposes.

## II.    THE MAMMOTH INVESTOR GROUP SHOULD BE APPOINTED LEAD PLAINTIFF

### A.    The Procedural Requirements Pursuant to the PSLRA

The PSLRA sets forth a detailed procedure for the selection of Lead Plaintiff to oversee securities class actions brought pursuant to the Federal Rules of Civil Procedure. *See* 15 U.S.C. § 78u-4(a)(3).

First, the plaintiff who files the initial action must, within 20 days of filing the action, publish a notice to the Class informing Class Members of their right to file a motion for appointment as Lead Plaintiff. 15 U.S.C. 78u-4(a)(3)(A)(i). Plaintiff in the *Scuderi* Action, a member of The Mammoth Investor Group, caused the publication of an early notice on June 7, 2019. *See* Federman Decl., Ex. 1.

Next, the PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of class action by the later of: (i) 90 days after the date of publication of the notice; or (ii) as soon as practicable after the

4

Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B). In determining who is the "most adequate plaintiff" the act provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that—
>
>> (aa)  has either filed the complaint or made a motion in response to a notice…;
>>
>> (bb)  in the determination of the court, has the largest financial interest in the relief sought by the class; and
>>
>> (cc)  otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii); *See In re Nature's Sunshine Products, Inc.*, 2006 WL 2380965 * 1 (D. Utah Aug. 16, 2006); *In re Oxford Health Plans, Inc., Sec. Litig.*, 182 F.R.D. 42, 43-44 (S.D.N.Y. 1998); *In re Fuwei Films Secs. Litig.*, 247 F.R.D. 432, 436 (S.D.N.Y. 2008).

### B.    The Mammoth Investor Group Is "The Most Adequate Plaintiff"

#### 1.    The Group Is Willing to Serve as Lead Plaintiff

The Group has timely filed the instant motion pursuant to the PSLRA early notice and each member of the group has filed herewith a certification attesting that they are willing to serve as a representative of the class and are willing to provide testimony at deposition and trial, if necessary. *See* Federman Decl., Ex. 2. Members of the Group have been actively working to prosecute this action, including the initiating of the two actions, and have agreed to continue to work together with proposed class counsel.

## 2.    The Group Has the Largest Financial Interest

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person…that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). "While the PSLRA does not specify how we should decide which plaintiff group has the 'largest financial interest' in the relief sought, most courts simply determine which potential lead plaintiff has suffered the greatest total losses." *Takara Trust v. Molex*, 229 F.R.D. 577, 579 (N.D. Ill. 2005). Of the *Lax/Olsten*-styled[1] factors used to compare a movant's financial interest, financial loss is the most significant factor. *Fuwei Films,* 247 F.R.D. at 437; *Richardson v. TVIA, Inc.*, 2007 WL 1129344 * 4 (N.D. Cal. Apr. 16, 2007); *In re Nature's Sunshine*, 2006 WL 2380965 at * 1 (measuring financial loss to determine largest financial interest).  Indeed, "the best yardstick by which to judge 'largest financial interest' is the amount of loss, period".  *In re Bally Total Fitness, Sec. Litig.*, 2005 WL 627960 * 4 (N.D. Ill. Mar. 15, 2005).

The Mammoth Investor Group lost $52,488 in connection with its purchases of Mammoth securities. *See* Federman Decl., Ex. 3 (Loss Chart). The Group is not aware of any other movant that has suffered greater losses in Mammoth securities during the Class Period. Accordingly, The Group satisfies the largest financial interest requirement to be appointed as Lead Plaintiff for the class.

---

[1] *Lax v. First Merch. Acceptance Corp.*, 1997 WL 461036 *5 (N.D. Ill. Aug. 11, 1997); *In re Olsten Corp. Secs. Litig.*, 3 F.Supp.2d 286, 295 (E.D.N.Y. 1998).

### 3.    The Group Satisfies the Requirements of Rule 23

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii), in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification, only two—typicality and adequacy—directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as lead plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification. *See Oxford Health*, 182 F.R.D. at 49 (holding that typicality and adequacy are the only relevant prerequisites to lead plaintiff selection under the PSLRA); *Fuwei Films*, 247 F.R.D. at 439 (only a *prima facie* showing of adequacy and typicality is required). As detailed below, The Group satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying its appointment as Lead Plaintiff. The Group's claims are typical of those of other Class Members and The Group can adequately serve as Lead Plaintiff.

7

### i.    The Mammoth Investor Group's Claims Are Typical of the Claims of All the Class Members

Under Rule 23(a)(3), typicality exists where "the claims…of the representative parties" are "typical of the claims…of the class." Typicality is demonstrated where the members of the class are victims of the same course of conduct. *Daigle v. Shell Oil Co.*, 133 F.R.D. 600, 604 (D. Colo. 1990). Typicality is satisfied when the representative plaintiff's claims arise from the same event, practice or course of conduct that provides the basis of class claims and are grounded in the same legal or remedial theory. *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir. 1988). Typicality does not require that every class member's claim be identical to those of the representative plaintiff. *Anderson v. City of Albuquerque*, 690 F.2d 796, 800 (10th Cir. 1982).  According to the Tenth Circuit, "the typicality requirement is ordinarily not argued…It is to be recognized that there may be varying fact situations among individual members of the class and this is all right so long as the claims of the plaintiffs and the other class members are based on the same legal or remedial theory." *Penn v. San Juan Hosp., Inc.*, 528 F.2d 1181, 1189 (10th Cir. 1975).

Here, the typicality requirement is met because the Group's claims are identical, non-competing and non-conflicting with the claims of the other Class Members. The Group, and all of the Class Members, purchased Mammoth securities when the prices were artificially inflated as a result of the Defendants' misrepresentations and omissions, and thus, both The Group and the Class Members suffered damages as a result of these purchases. Simply put, the Group, like all other Class Members: (1) purchased Mammoth securities during the Class Period; (2) purchased Mammoth securities at artificially-

8

inflated prices as a result of Defendants' misrepresentations and omissions; and (3) suffered damages thereby. Moreover, the Group is not subject to any unique or special defenses. Thus, the Group meets the typicality requirement of Fed. R. Civ. P. 23.

### ii.     The Mammoth Investor Group Will Adequately Represent the Class

Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class."  The PSLRA directs the Court to limit its inquiry regarding the adequacy of the Group to: (1) whether there are any conflicts between the interests of the Group and the members of the Class; (2) whether the Group is an adequate representative of the Class; (3) whether the interests of the Group are clearly aligned with the members of the putative Class; and (4) whether there is evidence of any antagonism between their respective interests.  15 U.S.C. § 78u-4(a)(3)(B).

The Mammoth Investor Group's interests are clearly aligned with the members of the Class because the Group's claims are identical to the claims of the Class. There is no evidence of antagonism between the Group's interests and those of the proposed Class Members. Furthermore, the Group has a significant compelling interest in prosecuting this action to a successful conclusion based upon the substantial financial loss the Group incurred as a result of the wrongful conduct alleged herein. This motivation, combined with the Mammoth Investor Group's identical interests with the members of the Class, clearly shows that the Group will adequately and vigorously pursue the interests of the Class. In addition, the Group has selected law firms that are highly experienced in prosecuting securities class actions such as The Rosen Law Firm, P.A. to represent it.

In sum, because of the Group's common interests with the Class Members, its clear motivation and ability to vigorously pursue this action, and its competent counsel, the adequacy requirement of Fed. R. Civ. P. 23(a) is met in this case. Therefore, since the Group not only meets both the typicality and adequacy requirements of Fed. R. Civ. P. 23(a), but also has sustained the largest amount of losses at the hands of the Defendants, it is, in accordance with 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa), presumptively the most adequate plaintiff to lead this action.

## III. THE COURT SHOULD APPROVE THE GROUP'S CHOICE OF COUNSEL

The PSLRA vests authority in the Lead Plaintiff to select and retain counsel to represent the Class, subject to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). Thus, this Court should not disturb the Lead Plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

The Mammoth Investor Group has selected Federman & Sherwood as Liaison Counsel and The Rosen Law Firm, P.A. to serve as Lead Counsel. The firms have successfully prosecuted complex securities class actions and many other types of complex class actions. *See* Federman Decl., Exs. 4-5. Furthermore, the Group's counsel has continually invested time and resources in carefully investigating this case, including the initiation of the instant action. This Court may be assured that in the event this motion is granted, the members of the Class will receive the highest caliber of legal representation.

**CONCLUSION**

For all of the foregoing reasons, the Mammoth Investor Group respectfully requests that this Court enter an Order: (1) consolidating the related actions (2) appointing the Group as Lead Plaintiff; (3) approving the Group's selection of Lead Counsel for the Class; and (4) granting such other and further relief as the Court may deem just and proper.

Dated: August 6, 2019

Respectfully submitted,

/s/ William B. Federman

William B. Federman, OK Bar #2853
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.
Oklahoma City, Oklahoma 73120
Telephone: (405) 235-1560
Fax: (405) 239-2112
Email: wbf@federmanlaw.com

*[Proposed] Liaison Counsel for Lead Plaintiff Movant and Class*

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq.
Laurence M. Rosen, Esq.
275 Madison Avenue, 34th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*[Proposed] Lead Counsel for Lead Plaintiff Movant and Class*

**POMERANTZ LLP**
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: ahood@pomlaw.com
          jalieberman@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email:  pdahlstrom@pomlaw.com

*Additional Counsel for Movant and
Proposed Lead Counsel for the Class*

## CERTIFICATE OF SERVICE

I hereby certify that this Memorandum was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants on August 6, 2019.

/s/ William B. Federman
William B. Federman

12