# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. **THOMAS SCUDERI**, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>1. **MAMMOTH ENERGY SERVICES, INC.**,<br>2. **ARTY STRAEHLA**, and<br>3. **MARK LAYTON**,<br><br>Defendants. | Case No. 5:19-cv-00522-SLP<br><br>**District Judge Scott L. Palk**<br><br>**<u>CLASS ACTION</u>** |
| 1. **JUSTIN NORMANTAS**, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>1. **MAMMOTH ENERGY SERVICES, INC.**,<br>2. **ARTY STRAEHLA**, and<br>3. **MARK LAYTON**,<br><br>Defendants. | Case No. 5:19-cv-00560-SLP<br><br>**District Judge Scott L. Palk**<br><br><u>CLASS ACTION</u> |

(Captions continue on following page.)

1. **THE CITY OF SARASOTA GENERAL EMPLOYEES DEFINED BENEFIT PENSION PLAN**, Individually and on Behalf of All Others Similarly Situated,

> Plaintiff,

v.

1. **MAMMOTH ENERGY SERVICES, INC.**,
2. **ARTY STRAEHLA**, and
3. **MARK LAYTON**,

> Defendants.

Case No. 19-cv-(pending assignment)

**CLASS ACTION**

**OPENING MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE CITY OF SARASOTA GENERAL EMPLOYEES DEFINED BENEFIT PENSION PLAN FOR (1) CONSOLIDATION, (2) APPOINTMENT AS LEAD PLAINTIFF, AND (3) APPROVAL OF SELECTION OF COUNSEL**

ii

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................... 1

SUMMARY OF RELEVANT FACTS ........................................................................ 2

ARGUMENT ............................................................................................................... 5

   I.    The Related Actions Should be Consolidated ........................................... 5

   II.   The City of Sarasota Should Be Appointed Lead Plaintiff ..................................... 6

         A.    The City of Sarasota's Motion is Timely ....................................... 7

         B.    The City of Sarasota Has The Largest Financial Interest in the Relief Sought ................................................................................... 8

         C.    The City of Sarasota Otherwise Satisfies the Requirements of Rule 23 ....... 8

   III.  The Court Should Approve the City of Sarasota's Selection of Counsel .............. 11

CONCLUSION ........................................................................................................... 12

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                                      **Page(s)**

*City of Dania Beach Police & Firefighters' Ret. Sys. v. Chipotle Mexican Grill, Inc.*,
    12-cv-02164-PAB-KLM, 2013 WL 1677553 (D. Colo. Apr. 17, 2013) ................. 5

*Darwin v. Taylor*,
    12-cv—010380-CMA-CBS, 2012 WL 5250400 (D. Colo. Oct. 23, 2012) ............ 9

*Ellis v. Spectranetics Corp.*,
    15-cv-01857-KLM, 2015 WL 9259928 (D. Colo. Dec. 18, 2015) .......................... 8

*Friedman v. Quest Energy Partners, LP*,
    261 F.R.D. 607 (W.D. Okla. Sep. 24, 2009) ........................................................ 9

*Harris v. Illinois-California Express, Inc.*,
    687 F.2d 1361 (10th Cir. 1982) ............................................................................. 5

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) .................................................................................. 7

*Lane v. Page*,
    250 F.R.D. 634 (D.N.M. 2007) ........................................................................... 10

*Wolfe v. AspenBio Pharma, Inc.*,
    275 F.R.D. 625 (D. Colo. 2011) ........................................................................7-8

**Statutes and Other Authorities**

15 U.S.C. § 78j(b)................................................................................................................ 1

15 U.S.C. § 78t(a) ............................................................................................................... 1

15 U.S.C. § 78u-4(a)(3)(A) ................................................................................................ 7

15 U.S.C. § 78u-4(a)(3)(A)(ii) ........................................................................................... 6

15 U.S.C. § 78u-4(a)(3)(B)............................................................................................. 1, 8

15 U.S.C. § 78u-4(a)(3)(B)(ii) ........................................................................................ 5

15 U.S.C. § 78u-4(a)(3)(B)(iii) ...................................................................................... 8

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ............................................................................. 6-8

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) ......................................................................... 9-10

15 U.S.C. § 78u-4(a)(3)(B)(v) ....................................................................................... 9

H.R. Conf. Rep. No. 104-369, at 34 (1995) ................................................................. 9

Fed. R. Civ. P. 23 ..................................................................................................*passim*

Fed. R. Civ. P. 42(a) ............................................................................................... 1, 5

The City of Sarasota General Employees Defined Benefit Pension Plan ("City of Sarasota" or "Movant"), through its undersigned counsel, respectfully submits this Memorandum of Law in support of its Motion to:

1. consolidate the above-captioned actions and any subsequently filed and/or related actions brought before this Court;

2. appoint the City of Sarasota as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act), 15 U.S.C. § 78j-1(a)(3)(B), a statutory provision added to the federal securities laws by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); and

3. approve the City of Sarasota's selection of the law firm of Abraham, Fruchter & Twersky, LLP ("AF&T") as Lead Counsel, and The Tawwater Law Firm, P.L.L.C. ("Tawwater Firm") as Liaison Counsel.

## PRELIMINARY STATEMENT

The above-captioned securities fraud class actions pending before this Court (the "Actions") are brought on behalf of purchasers of Mammoth Energy Services, Inc. ("Mammoth" or the "Company") common stock during the period of October 19, 2017 through June 5, 2019 (the putative "Class Period"). The claims asserted arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§78j(b) and 78t(a). The Actions should be consolidated pursuant to this Court's authority under Rule 42(a) of the Federal Rules of Civil Procedure.

The PSLRA directs this Court to adopt a presumption that the "most adequate plaintiff" is the plaintiff that (1) has either filed the complaint or made a motion for its

appointment as Lead Plaintiff, (2) has the largest financial interest in the relief sought, and (3) otherwise satisfies the typicality and adequacy requirements of Rule 23.   Here, the City of Sarasota has filed a complaint against the Company and is making this motion seeking appointment as Lead Plaintiff based upon its belief that it has the largest financial interest in the relief sought and is an otherwise typical and adequate representative of the Class. Further, the City of Sarasota, an institutional investor, is the exact type of plaintiff that Congress sought to have serve as Lead Plaintiff when it enacted the PSLRA.

The City of Sarasota has also selected and retained AF&T, a law firm with substantial experience in prosecuting securities class actions, to serve as Lead Counsel for the Class; and, the Tawwater Firm, a well-established litigation law firm located in Oklahoma City, Oklahoma, as Liaison Counsel.   Therefore, as discussed in greater detail below, the City of Sarasota respectfully requests that this Court grant its motion for consolidation, appointment as Lead Plaintiff, and approval of its selection of counsel.

## SUMMARY OF RELEVANT FACTS

Mammoth is as an oilfield services company operating in three segments: Infrastructure Services, Pressure Pumping Service, and Natural Sand Proppant Services. ¶7. [1]   The Company services government-funded utilities, private and public investor owned utilities, co-operative utilities, independent oil and natural gas producers and land-based drilling contractors in North America.   ¶7.

---

[1]      All references to "Complaint" and citations to "¶_"refer to the initial complaint filed in the action entitled *Scuderi v. Mammoth Energy Services, Inc. et al.*, No. 5:15-cv-00522-SLP (W.D. Okla.).

2

On October 19, 2017, Mammoth announced that its wholly-owned subsidiary, Cobra Acquisitions LLC ("Cobra"), had entered into a contract with the Puerto Rico Electric Power Authority ("PREPA") to aid in the rebuilding Puerto Rico's energy infrastructure following the damage caused Hurricane Maria. ¶15. Mammoth also announced that Cobra's contract with PREPA was expected to generate up to $200 million of revenue over the initial 120 days. ¶15.

On February 28, 2018, Mammoth filed a Form 10-K with the SEC providing the Company's financial results for the fiscal year ended December 31, 2017 (the "2017 10-K"). ¶19. The 2017 10-K stated that Cobra's contract with PREPA had been amended in both January and February 2018, increasing the total value of Cobra's services under the contract to $945.4 million. ¶20.

On May 29, 2018, Mammoth announced that Cobra had entered into a second services contract with PREPA which was valued at $900 million. ¶23. Mammoth also represented that Cobra had participated in a RFP [Request for Proposal] process involving "the submission of bids from qualified infrastructure construction companies" and an analysis by PREPA of each bidder's experience, asset base, financial capacity, understanding of the project and overall cost to perform the work needed. ¶23. On November 2, 2018, Mammoth acknowledged in a Form 10-Q with the SEC that PREPA's involvement in bankruptcy proceedings for the Commonwealth of Puerto Rico meant that PREPA's "ability to meet its payment obligations under the contract[s] [with Cobra] will

3

be largely dependent upon funding from the Federal Emergency Management Agency," or FEMA. ¶27.

On March 15, 2019, Mammoth held an analyst call to discuss its financial results for the fiscal quarter ended December 31, 2019. *See City of Sarasota* Complaint ¶33.[2]  In addition to announcing lower-than-expected earnings for the quarter, Defendant Straehla disclosed that the Company was "in the process of winding down operations in Puerto Rico[.]"  *See City of Sarasota* Complaint ¶33.  Defendant Straehla also claimed that the decision to wind down operations was the result of the Company's assessment that "there [could] be no assurances that [the Company] [would] be able to secure contracts" for any work that would be contacted in the next RFP process.  *See City of Sarasota* Complaint ¶33.  Following these disclosures, Mammoth's share price fell $2.50, or over 12%, from a closing price of $20.28 on March 14, 2019 to a closing price of $17.78 on March 15, 2019.  *See City of Sarasota* Complaint ¶33.

On May 24, 2019, the *Wall Street Journal* published an article titled "FEMA Official Probed Over Puerto Rico Power Restoration," reporting that the FEMA Deputy Regional Administrator responsible for overseeing FEMA's response to the damage

---

[2]    The Company's March 15, 2019 disclosure is an alleged corrective disclosure that is not set forth the initial complaint filed by Plaintiff Scuderi, but is instead alleged in the most recent complaint filed by the City of Sarasota as a result of its own investigation and due diligence when assessing the merits of the case.  *See* Complaint ¶33, *City of Sarasota General Employees Defined Benefit Pension Plan v. Mammoth Energy Services, Inc. et al.,* No. 19-cv-(pending assignment) (W.D. Okla. 2019), herein the "*City of Sarasota* Complaint."

wrought by Hurricane Maria was under investigation by the Department of Homeland Security, relieved of her duties, and placed on administrative leave over allegations that she steered work to Cobra. ¶33. The article also stated that Cobra had billed more than $1.3 billion in 2018 for the work done in connection with restoring Puerto Rico's electrical infrastructure, and that "utility officials raised concerns internally about Cobra's rates" after PREPA's "spending on contractors skyrocketed." ¶33. On this news, the price of Mammoth common stock fell $1.25 per share, or over 10%, to close at $10.99 per share on May 29, 2019, damaging investors. ¶34.

On June 5, 2019, the *Wall Street Journal* published a follow-up article entitled "Puerto Rico Grid Contractor Caught Up in Federal Probes," reporting that the Federal Bureau of Investigation had "opened a related criminal inquiry" into the origin of Cobra's contracts with PREPA. ¶35. On this news, the price of Mammoth common stock declined by $5.09 per share, or over 45%, to close at $6.11 per share on June 6, 2019, further damaging investors. ¶36.

## ARGUMENT

## I.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED

Consolidation followed by appointment of lead plaintiff is proper where actions "involve a common question of law or fact." *See* Fed. R. Civ. P. 42(a); *City of Dania Beach Police & Firefighters' Ret. Sys. v. Chipotle Mexican Grill, Inc.*, No. 12-cv-02164-PAB-KLM, 2013 WL 1677553, at *1 (D. Colo. Apr. 17, 2013) (citing *Harris v. Illinois-California Express, Inc.*, 687 F.2d 1361, 1368 (10th Cir. 1982)). The PSLRA

contemplates consolidation where "more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter have been filed."   15 U.S.C. §78u-4(a)(3)(A)(ii).

Here, three related cases are pending in this District, as shown in the table below:

| Case Name | Case Number | Class Definition | Date Filed |
|---|---|---|---|
| *Scuderi v. Mammoth Energy Services, Inc. et al.,* | 5:19-cv-00522 | All purchasers of Mammoth common stock from October 19, 2016 through June 5, 2019 (*See Scuderi* Complaint ¶1) | June 7, 2019 |
| *Normantas v. Mammoth Energy Services, Inc. et al.,* | 5:19-cv-00560 | All purchasers of Mammoth common stock from October 19, 2016 through June 5, 2019 (*See Normantas* Complaint ¶1) | June 19, 2019 |
| *The City of Sarasota General Employees Defined Benefit Pension Plan v. Mammoth Energy Services, Inc. et al.* | 19-cv-(pending assignment) | All purchasers of Mammoth common stock from October 19, 2017 through June 5, 2019 (*See City of Sarasota* Complaint ¶1) | August 6, 2019 |

The Actions involve common questions of law and fact, including identical or near identical allegations, defendants, class periods, and alleged misstatements.   Accordingly, consolidation of the Actions is appropriate.

## II.   THE CITY OF SARASOTA SHOULD BE APPOINTED AS LEAD PLAINTIFF

The PSLRA provides a method for determining the "most adequate plaintiff" to serve as Lead Plaintiff in a securities fraud class action.   *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii).   *First,* the plaintiff must file a complaint or make a timely motion to be appointed.   *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(aa).   *Second,* the proposed lead plaintiff

needs to have "the largest financial interest in the relief being sought by the [C]lass." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb).   *Third,* the proposed lead plaintiff needs to "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."   15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc).

Here, the City of Sarasota believes it is the most adequate plaintiff because it satisfies all three elements.   Accordingly, the City of Sarasota should be appointed as Lead Plaintiff.

### A.    The City of Sarasota Has Made a Timely Motion

The PSLRA permits any member of the class to move for appointment as lead plaintiff within 60 days of the publication of notice that the first action asserting substantially the same claims has been filed.  *See* 15 U.S.C. §  78u-4(a)(3)(A).   On June 7, 2019, notice of the action brought by Plaintiff Scuderi was published in *Business Wire* and provided August 6, 2019, i.e., the last day that is within 60 days of the publication of notice of the filing of the *Scuderi* Complaint, as the deadline to submit lead plaintiff applications.  *See* Declaration of Darren M. Tawwater, Ex. 1.[3]   As such, the City of Sarasota, through the filing of its accompanying motion, satisfies this deadline requirement.

---

[3]    *See* Declaration of Darren M. Tawwater in Support of the Motion of the City of Sarasota General Employees Defined Benefit Pension Plan for (1) Consolidation, (2) Appointment as Lead Plaintiff, and (3) Approval of Selection of Counsel, herein the "Declaration of Darren M. Tawwater" or the "Tawwater Decl."

**B.      The City of Sarasota Has the Largest Financial Interest in the Relief Sought**

The City of Sarasota should be appointed Lead Plaintiff because it believes it has the largest financial interest as a result of having suffered losses from its purchases of Mammoth common stock during the Class Period. 15 U.S.C. § 78u-4(a)(3)(B)(iii).  *See, e.g.,* Tawwater Decl., Ex. 2; *see also Ellis v. The Spectranetics Corp.*, No. 15-cv-01857-KLM, 2015 WL 9259928, at *2 (D. Colo. Dec. 18, 2015) ("[C]ourts routinely look to the movant's financial loss as the most significant factor in assessing his financial interest in the action.").  As the City of Sarasota believes that it has the largest financial interest among those seeking appointment as Lead Plaintiff, it believes that it is presumed to be the most adequate movant for appointment as Lead Plaintiff.  *See* 15 U.S.C. § 78u-4(a)(3)(B).

**C.      The City of Sarasota Otherwise Satisfies the Requirements of Rule 23**

A lead plaintiff applicant must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied:

> (1) the class is so numerous the joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

On a motion to serve as lead plaintiff, the movant must only make a preliminary showing that the movant satisfies the typicality and adequacy requirements of Rule 23(a). *See Friedman v. Quest Energy Partners LP,* 261 F.R.D. 607 at 612 (W.D. Okla. Sep. 23, 2009) ("Of the four prerequisites, only . . . typicality and adequacy are . . . relevant prerequisites to lead plaintiff selection under the PSLRA."). Consequently, typicality and adequacy are part of the "threshold identification of the presumptive Lead Plaintiff." *In re Cendant Corp. Litig.*, 264 F.3d 201, 263 (3d Cir. 2001). Here, the City of Sarasota easily satisfies both requirements.

The typicality requirement is satisfied "so long as the claims of the class representative and class members are based upon the same legal or remedial theory." *Wolfe v. AspenBio Pharma, Inc.,* 275 F.R.D. 625, 628 (D. Colo. 2011) (citation omitted). The City of Sarasota's claims in this action arise from the very same course of conduct as the claims of the other members of the Class. Specifically, the Movant (1) purchased Mammoth common stock during the Class Period (2) at prices allegedly artificially inflated by Defendants' materially false and misleading statements and/or omissions and (3) suffered financial losses when the price of Mammoth common stock fell precipitously following public disclosure of the Company's misstatements.

The City of Sarasota likewise satisfies the adequacy requirement of Rule 23(a)(4). Courts in the Tenth Circuit of the United States Court of Appeals have found that adequacy is established on proof of "(1) the absence of potential conflict between the named plaintiffs and the class members and (2) that counsel chosen by the representative parties is qualified,

9

experienced and able to vigorously conduct the proposed litigation." *Id.* (citation omitted).

The City of Sarasota easily satisfies the adequacy requirement because its interests are perfectly aligned with those of the other members of the Class and are not antagonistic in any way. Nor are there any facts to suggest that any actual or potential conflict of interest exists between the Movant and other Class members. The City of Sarasota and its counsel have already demonstrated that they will prosecute the claims of the Class vigorously, as evidenced by the City of Sarasota's certification seeking to assert claims on behalf of the Class. *See* Tawwater Decl. At Ex. 2. The City of Sarasota is also diligently investigating the case and has filed a complaint adding to the allegations which will benefit the Class. Moreover, as an institutional investor, the City of Sarasota is precisely the type of investor that Congress sought to encourage to serve as lead plaintiff when it enacted the PSLRA. *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions.").

Accordingly, the City of Sarasota satisfies the requirements Section 21(a)(3)(B) and is presumptively the most adequate plaintiff. This presumption has not been rebutted by proof that the Movant "will not fairly and adequately protect the interests of the class" or "[are] subject to unique defenses that render such plaintiff[s] incapable of adequately representing the class." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Therefore, for the

10

reasons stated above, the Court should consolidate the Actions and appoint the City of Sarasota as Lead Plaintiff for the Class.

## II.   THE COURT SHOULD APPROVE THE CITY OF SARASOTA'S SELECTION OF COUNSEL

The PSLRA in Section 22 of the Exchange Act provides that the lead plaintiff shall, subject to Court approval, select and retain counsel to represent the class.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  In reviewing a movant's selection of lead counsel, courts should consider whether the counsel is "qualified, experienced[,] and able to vigorously conduct the proposed litigation."  *Darwin v. Taylor*, No. 12-CV-01038-CMA-CBS, 2012 WL 5250400, at *8 (D. Colo. Oct. 23, 2012) (internal quotations and citations omitted).  In addition, courts should not disturb a lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also Lane v. Page*, 250 F.R.D. 634, 640 (D.N.M. 2007) ("Courts recognize that, while the appointment of counsel is subject to the court's approval, selecting a lawyer in whom a litigant has confidence is an important client prerogative and ... the PSLRA clearly leaves the choice of class counsel in the hands of the lead plaintiff.").

In that regard, the City of Sarasota has selected and retained the law firm of AF&T to serve as lead counsel.  AF&T has the commitment and ability to accomplish the required tasks because it has extensive experience and is highly competent in prosecuting similar actions. *See, e.g., Utesch v. Lannett Company Inc.*, et al., No. 2:16-cv-05932 (WB), ECF No. 53 (E.D. Pa. Mar. 20, 2017) (appointing AF&T lead counsel); *Accord, e.g., Godinez v. Alere Inc.*, et al., No. 1:16-cv-10766 (PBS), ECF No. 152 (D. Mass. Dec. 22,

11

2017) (appointing AF&T co-lead counsel); *Silverstrand Investments v. AMAG Pharmaceuticals et al.*, No. 1:10-cv-10470 (NMG), ECF No. 24 (D. Mass Jul. 27, 2010) (appointing AF&T lead counsel); *In re SunEdison, Inc. Sec. Litig.*, No. 16-md-02742-PKC, ECF No. 103 (S.D.N.Y. Dec. 22, 2016) (same). The firm resumes for the proposed Lead Counsel and Liaison Counsel are submitted for the Court's convenience. *See* Tawwater Decl., Exs. 3 & 4.

## CONCLUSION

In light of the foregoing, the City of Sarasota respectfully requests that the Court: (1) consolidate the Actions; (2) appoint the City of Sarasota as Lead Plaintiff; and (3) approve the City of Sarasota's selection of Abraham, Fruchter & Twersky, LLP as Lead Counsel, and The Tawwater Law Firm, P.L.L.C. as Liaison Counsel.

Dated: August 6, 2019     Respectfully submitted,

By: s/ Darren M. Tawwater
Larry A. Tawwater, OBA # 8852
Darren M. Tawwater, OBA # 18854
THE TAWWATER LAW FIRM, P.L.L.C.
14001 Quail Springs Pkwy
Oklahoma City, Oklahoma 73134
Tel. (405) 607-1400
Fax. (404) 607-1450
LAT@tawlaw.com
DTaw@tawlaw.com

*Proposed Liaison Counsel for the Class*

**ABRAHAM, FRUCHTER & TWERSKY, LLP**
Mitchell M.Z. Twersky (*Pro Hac Vice* forthcoming)
Atara Hirsch (*Pro Hac Vice* forthcoming)
Sean M. Handron-O'Brien (*Pro Hac Vice* forthcoming)
One Penn Plaza, Suite 2805

12

New York, New York 10119
Tel. (212) 279-5050
Fax. (212) 279-3655
MTwersky@aftlaw.com
AHirsch@aftlaw.com
Shandronobrien@aftlaw.com

- And -

Ian D. Berg (*Pro Hac Vice* forthcoming)
11622 El Camino Real, Suite 100
San Diego, CA 92130
Tel. (858) 764-2580
Fax (858) 764-2582
IBerg@aftlaw.com

*Counsel for the City of Sarasota General Employees Defined Benefit Pension Plan and Proposed Lead Counsel for the Class*

13

## CERTIFICATE OF SERVICE

I hereby certify that on August 6, 2019, I electronically transmitted this document to the Clerk of Court using the ECF System for filing, and a copy thereof was electronically served upon all parties receiving notice pursuant to the CM/ECF System

By:/s/ Darren M. Tawwater
Darren M. Tawwater