# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| THOMAS SCUDERI, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| v. | Case No. CIV-19-522-SLP |
| MAMMOTH ENERGY SERVICES, INC., ARTY STRAEHLA, and MARK LAYTON, | |
| Defendants. | |
| JUSTAS NORMANTAS, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| v. | Case No. CIV-19-560-SLP |
| MAMMOTH ENERGY SERVICES, INC., ARTY STRAEHLA, and MARK LAYTON, | |
| Defendants. | |

**THE FURIA FAMILY'S REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTION FOR APPOINTMENT AS LEAD PLAINTIFFS**

The Furia Family submits this reply brief in further support of their motion for appointment as Lead Plaintiffs and in opposition to the City of Saratoga General Employees Defined Benefit Pension Plan (the "DB Plan").

The focus of the DB Plan's opposition to the Furia's appointment as Lead Plaintiff is its sensationalistic—yet entirely misleading—argument that "**Daniel D. Furia, a convicted felon who pleaded guilty to identity theft and tampering with government records**" is an inadequate representative Opp. Br. at 1 (emphasis in original). From this, DB Plan contends it has successfully rebutted the presumption that the Furias are the most adequate plaintiff. The DB Plan is wrong on the facts and the law.

*First*, the "identity theft and tampering with government records" to which Daniel Furia pled guilty more than ***ten years ago*** was a second-degree *misdemeanor,* not a felony. He paid a $500 fine and was on probation for a year. *Second*, twenty-seven years ago, when he was 20 years old, Daniel was caught with marijuana and charged in New Jersey with a felony. But as would have been apparent to the DB Plan had it done any amount of appropriate diligence before accusing someone of being a convicted felon in a public filing, official records of Furia's arrest and conviction do not exist. This is because in 2013, Furia's felony conviction was ordered expunged by the New Jersey Superior Court. *See* Exhibits 1-2 to the Declaration of Daniel Furia ("D. Furia Decl."). Under New Jersey law, the expungement means that Daniel's arrest and conviction never occurred, *i.e.,* Daniel is no longer a felon, and could so testify at deposition or trial. *See id*.; N.J. Stat. Ann. § 2C:52-27. Since this youthful indiscretion, Daniel founded and grew a successful business which, at a time, employed dozens of subcontractors and multiple back office staff.

Courts find a proposed class representative inadequate where they are convicted, or plead guilty to, a **felony** involving a financial crime. That is not the case here and the presumption as to Daniel's adequacy has not been rebutted.

While the DB Plan is irresponsibly hurling inaccurate claims against Daniel Furia, it ignores its own inadequacies. *First*, just three years ago, the City of Sarasota Auditor found $30 million in accounting errors and lax internal controls in the ledgers of the three Sarasota pension plans, including the DB Plan. If the DB Plan is unable to accurately keep its own books and records and employ proper internal controls, how can it properly oversee this litigation? This will surely be a focus of the DB Plan's adequacy to represent the class. *Second*, while the DB Plan criticizes the Furias for failing to explain how and why they retained their lawyers at Block & Leviton,[1] the DB Plan omits any mention of how it came to retain its counsel, Abraham, Fructer & Twersky, LLP ("AFT"). The DB Plan has filed to serve as lead plaintiff in two securities class actions, both with AFT. This is relevant, as other courts have denied public pension plans' requests to proceed as a class representative where they are only represented by a single securities law firm and are considered to be a captive client and not in control of the case. That very well may be the case here.

If the DB Plan is found to be inadequate then the class will suffer as after potentially years of litigation, there will be no adequate Lead Plaintiff. The Furia Family does not have this problem: even if somehow the Court were to find Danial Furia inadequate—even

---

[1] The declarations from Daniel, Vincent and Sharon Furia explain that the Furias engaged Block & Leviton after consultation with their financial advisor. *See* D. Furia Decl. ¶ 2; V. Furia Decl. ¶ 2; and S. Furia Decl. ¶ 2.

though he is not—Vincent and Sharon Furia would still be able to represent the class, as there has been no challenge to their adequacy.

## I.     The DB Plan Has Failed To Rebut the Presumption of Adequacy

The DB Plan correctly recognizes that under the PSLRA, the investor with the largest financial interest is the presumptive lead plaintiff and the competing movants must submit "proof" of inadequacy. There is no dispute that the Furia Family has a vastly greater loss than the DB Plan: $989,215.54 vs. $133,595.84. Recognizing that it is dwarfed in a financial interest comparison, the DB Plan resorts to making unsupported, factually inaccurate allegations against Daniel in the hopes of rebutting the presumption.

The "proof" of inadequacy relied on by the DB Plan is an inaccurate print out from an unreliable website that incorrectly lists three times Daniel's single marijuana-related conviction from over 27 years ago, along with a brief description of a misdemeanor charge from 2009. This is insufficient to overcome the presumption of adequacy.

As an initial matter, Daniel's felony conviction was expunged almost six years ago and, under New Jersey law, he is no longer a felon. N.J. Stat. Ann. § 2C:52-27 (West). The DB Plan, through its counsel, had access to New Jersey's CHRI system to verify information it apparently obtained through the Instant Checkmate website.[2] But rather than make this basic reasonable inquiry—which would have returned a negative result—the DB

---

[2]  *See, e.g.*, New Jersey Criminal History Records Information (available at https://www.njsp.org/criminal-history-records/) (explaining that the database can be accessed by "Attorneys-at-law licensed by any state for use in any contested matters docketed in any state or federal court or administrative agencies of this state").

Plan instead attached a printout from Instant Checkmate, despite that website making clear that "[t]he information available may not be 100% accurate, complete, or up to date, so do not use it as a substitute for your own due diligence . . .". It was reckless and irresponsible for the DB Plan to rely entirely on this website to lob this serious accusation, when even the most basic of diligence would have shown that the information was no longer accurate.[3]

With the felony conviction gone, at best, the DB Plan can point to a second-degree misdemeanor from ten years ago as its proof that Daniel is not adequate. That proof, however, is insufficient to overcome the presumption in favor of the Furia's adequacy.

Indeed, myriad courts have found that criminal history is irrelevant to assessing the adequacy of a lead plaintiff or class representative where the charges have no direct relationship to the issues in the case before it:

- *In re Groupon, Inc. Sec. Litig.*, No. 12 C 2450, 2012 WL 3779311, at *4 (N.D. Ill. Aug. 28, 2012) (appointing individual investor over institutional investor even where the individual had three DUI convictions and declared bankruptcy and holding that "[t]he DUI convictions, which occurred over twenty-five years ago, are not germane to this action and do not call into question Cohn's adequacy to serve as lead plaintiff.");

- *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.,* 229 F.R.D. 395, 417 (S.D.N.Y. 2004) (appointing lead plaintiff who purportedly violated the rules of the Chicago mercantile exchange and explaining that courts generally reject the most adequate plaintiff presumption only where the proposed lead plaintiff is suspected of violating the precise laws he wishes to invoke);

---

[3] Recently, a judge in the DB Fund's home state of Florida was removed from office for, among other things, linking to an Instant Checkmate report on his campaign website despite the website's warnings about inaccuracies. *Inquiry Concerning a Judge*, No. 16-377 Re Dupont, 252 So.3d 1130, 1132 (Fla. 2018) ("In spite of those warnings, and instead of taking any steps to verify the scandalous information about your opponent found on the website, you recklessly posted the results of the search . . .").

- *Bordi v. GoPro Inc.*, No. 16-cv-00232, 2016 WL 1718217, at *5 (N.D. Cal. Apr. 28, 2016) (appointing investor entity as lead plaintiff despite the fact that individual who controlled entity "pled guilty to making false statements on a shipper's export declaration, in violation of federal law" and explaining "[t]here is inadequacy only where the representative's credibility is questioned on issues directly relevant to the litigation or there are confirmed examples of dishonesty, such as a criminal conviction for fraud. . . . Here [the controlling individual's] credibility has not been questioned on issues directly relevant to the litigation.");

- *Rocco v. Nam Tai Electronics, Inc.*, 245 F.R.D. 131, 137 (S.D.N.Y. 2007) (finding that prior DUI conviction did not render a class representative inadequate: "Consideration of trustworthiness and credibility are not without limitation, however, but instead are restricted to their relevance to issues in the litigation. Ward's criminal history as a whole, then, is irrelevant to this securities fraud case. For these reasons, Ward's criminal history will not be considered as evidence of his inadequacy to represent this class.") (cleaned up);

- *In re Red Hat, Inc. Sec. Litig.*, 261 F.R.D. 83, 88–89 (E.D.N.C. 2009) (proposed class representative certified despite plaintiff's hundreds of willful violations of the Gun Control Act's record keeping requirements which resulted in the ATF revoking the federal firearms license ("FFL") of one of plaintiff's businesses and denied an application for a FFL for another of his businesses: "While the court will not minimize the seriousness of the violations or [plaintiff's] responsibility therefor as owner of the businesses, **the court finds that such conduct does not implicate [plaintiff's] credibility to the extent the court would deem him inadequate to serve as class representative**.") (cleaned up);

- *In re Sepracor Inc. Sec. Lit.,* 233 F.R.D. 52, 56–57 (D. Mass. 2005) (representative omitted information in certification and answered interrogatory incorrectly: "[q]uestions of credibility which do not affect a plaintiff's ability to represent the class or to pursue the merits of the cause of action routinely fail to defeat class certification" (citations omitted);

- *Wood v. Capital One Auto Finance, Inc.,* No. 06–CV–7, 2006 WL 6627680, at *3 (E.D. Wisc. Sept. 19, 2006) (representative had prior felony conviction for dishonesty: "[i]ndeed, while some courts have rejected the appointment of convicted felons as class representatives, a felony conviction does not necessarily preclude a person from serving as a class representative.") (collecting cases).

Here, Daniel's past legal issues have nothing to do with financial fraud or securities

laws, and there is no basis to find him inadequate to serve as lead plaintiff. *Cf. Zemel Family*

*Trust v. Philips Int'l Realty Corp.*, 205 F.R.D 434, 436-37 (S.D.N.Y. 2002) (trustee of plaintiff trust inadequate where he gave testimony directly contradictory to documentary evidence about his involvement in entities that were the subject of SEC sanctions).

The DB Funds further mislead the Court when they suggest that "Mr. Furia has exhibited a degree of misconduct surpassing that of [the conduct described in] *Utopia Entm't* given that [Furia] has been convicted of felony drug charges *and* pleaded guilty to a charge of tampering with public records that included his attempted use of another person's identity." Opp. at 7. In *Utopia Entm't, Inc. v. Clairborne Parish, et. al.,* No. Civ.A. 03-1355, 2006 WL 548476 at *1 (W.D. La. Mar. 6, 2006), however, the court found that a twice convicted felon, Eric Johnson, was an inadequate class representative as Johnson was convicted for distributing crack and sentenced to 140 months in prison, and also convicted of illegal discharge of a firearm and possession of cocaine for which he was sentenced to two years in prison.[4] Suggesting that Daniel Furia's "misconduct" surpasses that of Eric Johnson's is irresponsible unsupported bluster.[5]

---

[4] *See* https://www.theadvertiser.com/story/news/2016/03/02/appeals-court-upholds-conviction-rapper-vicious/81210918/.

[5] Defendants other cases fare no better, as they simply establish that a *felony* conviction involving financial fraud or dishonesty militates in favor of finding an individual inadequate to act as a lead plaintiff in a securities class action. *Savino v. Computer Credit*, 164 F. 3d 81, 87 (2d Cir. 1998) (in a non-securities case, district court's finding of inadequacy not reversed where proposed representative gave inconsistent testimony about an issue directly relevant to the litigation); *In re Surebeam Sec. Litig*, No. 03 CV 1721, 2004 WL 5159061 at *7 (S.D. Cal. Jan. 4, 2004) (presumption rebutted as to president and principle of one member of proposed lead plaintiff group, who was "subject to over sixty complaints to securities regulators including misrepresentation, unauthorized trading in client accounts, and use of unsuitable investments" but group permitted to break apart and was still appointed as lead plaintiff); *Xhianglin Shi v. Sina Corp.*, No. 05 Civ. 2154, 2005

The DB Plan's rush to improperly smear the integrity of Daniel Furia without even undertaking a proper investigation speaks volumes of its integrity in this process. *See Cook v. Allergan PLC*, 18 Civ. 12089, 2019 WL 1510894, at \*3 n.1 (S.D.N.Y. Mar. 21, 2019) (asserting claims that one lead plaintiff applicant "pleaded guilty to a misdemeanor public indecency charge" twelve years earlier and another "has a criminal record – for a misdemeanor traffic conviction" deemed irrelevant to adequacy analysis. "*Neither of these things has the slightest relevance to the court's lead plaintiff analysis, except insofar as they demonstrate the depths to which lawyers will descend in an effort to become lead counsel in a PSLRA case.*") (emphasis added).

## II. The DB Fund is an inadequate lead plaintiff.

The DB Plan has filed to be lead plaintiff in two securities class actions: this one and *AxoGen, Inc.* ECF 25-2. In both actions the DB Fund is represented by AFT. In fact, it does not appear that the DB Fund has ever been represented by anyone other than AFT in securities class actions. Indeed, while the DB Fund asserts that the Furias should explain

---

WL 1561438 at \*4-5 (S.D.N.Y. July 1, 2005) (proposed Lead Plaintiff Souvagis "is a convicted felon who pled guilty in 1995 to providing false information to a financial institution" and presumption as to adequacy rebutted due to felony financial fraud); *Hartsell v. Source Media,* No. Civ.A.98-CV-1980, 2003 WL 21245989 (Mar. 31, 2003 N.D. Tex.) (Court admonished counsel for failing to inform court prior to settlement hearing that one class representative "was convicted of conspiracy to commit mail fraud and was . . . sentenced to forty-six months in prison."); *In re Proxima Corp. Sec. Litig.*, No. 93-1139, 1994 WL 374306 at \*17-18 (S.D. Cal. May 3, 1994) (proposed class representative in securities class action found inadequate where he pled guilty to fraudulently diverting assets and opportunity from one partnership for the benefit of another partnership.)

*how* they came to retain Block & Leviton, the same holds true for the DB Funds. Yet, the

DB Fund conspicuously fails to provide any information as to how it came to retain AFT.

In *In Re Kosmos Energy Sec. Litig.*, 299 F.R.D. 133, 148-49 (N.D. Tex. 2014) the

court found a public pension plan to be an inadequate class representative where the

pension fund had only one law firm providing it with securities litigation advice:

> [A] strong inference can be drawn that the Plan and Robbins Geller—Lead
> Counsel here, and now seeking to be appointed Class Counsel—maintain the
> type of close affiliation that calls into question whether the Plan or its counsel
> is the one actually pursuing the case. In fact, Saville [the Plan's executive
> director] described Robbins Geller as the Plan's "securities monitoring
> service." . . .
>
> This type of free securities monitoring service that Robbins Geller provides
> the Plan has been criticized by other courts as "foster[ing] the very tendencies
> toward lawyer-driven litigation that the PSLRA was designed to curtail," as
> it "creates a clear incentive for [the securities monitoring law firm] to
> discover 'fraud' in the investments it monitors and to recommend ... that [the
> client], at no cost to itself, bring a class action lawsuit." Further, the
> exclusivity of the Plan's and Robbins Geller's relationship makes this
> securities monitoring set-up even more significant, because the potential for
> a conflict of interest is greater where the monitoring firm "is guaranteed to
> bring the potential lawsuit." In short, the fact that Robbins Geller is the Plan's
> sole securities monitoring service and has, in turn, filed this suit and is now
> seeking appointment as Class Counsel, may not be dispositive on the issue
> of whether the Plan would be an adequate Class Representative, but it
> strongly suggests that this is a lawyer and not a client-driven suit[6].

Plus, the DB Fund has been involved in its own questionable conduct that may

render it inadequate to represent the class. An audit of its 2016 books and records by the

---

[6] *See also Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Serv. and Securitization LLC*, 616 F.Supp.2d 461, 464 (S.D.N.Y. 2009) (presumption of adequacy of pension plan rebutted as exclusive arrangement with one securities litigation law firm "fosters the very tendencies toward lawyer-driver litigation that the PSLRA was designed to curtail.").

Sarasota City Auditor found that the DB Fund, and two other Sarasota City funds, improperly accounted for approximately $30 million due to accounting errors and that the pension plans had inadequate internal controls.[7] The news article also suggests that there are allegations of a hostile work environment. *Id.* The news article quotes Sarasota City commissioner Suzanne Atwell as saying that "I think we have a crisis of confidence within the pension system right now and we need to figure out what to do about it." *Id.*

Whether the "crisis of confidence" has been repaired, whether a hostile work environment still exists, and whether the DB Fund still has inadequate internal controls in place will surely be a focus of the DB Fund's adequacy as a class representative and may become the focus of the litigation, to the detriment of the class.

If the DB Plan is found to be inadequate, the class will suffer. There reportedly is a criminal investigation of the conduct at issue in this case and it is certainly possible that the government might seek a stay of this civil case, which could lead to a delay. If the Court were to deny class certification more than two years from the filing of the lawsuit, June 7, 2019, the class could have a problem seeking a new representative under the Supreme Court's recent opinion in *China Agri-Tech*, 138 S.Ct. 1804 ("The question presented in the case now before us: Upon denial of class certification, may a putative class member, in lieu of promptly joining an existing suit or promptly filing an individual action, commence a

---

[7] *See* Zach Murdock, *Audit finds $30 million in bookkeeping errors in Sarasota pensions*, Herald-Tribune (Apr. 25, 2017, 8:07 AM), available at https://www.heraldtribune.com/news/20170424/audit-finds-30-million-in-bookkeeping-errors-in-sarasota-pensions.

class action anew beyond the time allowed by the applicable statute of limitations? Our answer is no."). Here, there are *no* assertions of any kind that either Vincent or Sharon Furia are inadequate representatives. If appointed, the Furia Family would not subject the class to the risk the DB Plan would inflict on it.[8]

**III.    The Furia Family should be appointed lead plaintiff.**

There is no dispute here that the Furia Family has the largest financial interest in the relief sought by the class, having lost *more than seven times* the amount lost by the DB Plan. Yet, the DB Plan asks this Court to disregard Congress' clear directive and appoint it as the Lead Plaintiff because of a second-degree misdemeanor by Daniel Furia from ten years ago and because of its unsupported claim that the Furia Family cannot act together in this litigation in which they collectively lost almost $1 million.

Having lost the most money by far, the Furia Family should be appointed Lead Plaintiffs. They have retained counsel, Block & Leviton, which is highly experienced in securities litigation and will vigorously prosecute these claims on behalf of the Furias and the class.

---

[8] The DB Plan's assertion that the Furias are an improper group have been rejected by courts in this district, finding that even unrelated groups of investors are perfectly proper under the PSLRA. *See Friedman v. Quest Energy Partners, L.P.,* 261 F.R.D. 607, 614 (W.D. Ok. 2009) ("The Court adopts the reasoning of the Third Circuit and finds that aggregation of unrelated individuals is acceptable for the purposes of lead plaintiff in private securities litigation. The PSLRA specifically allows for a group of persons to serve as lead plaintiff, and there is no requirement contained within the PSLRA that the group of persons serving as lead plaintiff have a relationship among themselves.") Here, the Furias have the added benefit of having a pre-litigation relationship: they are family. The DB Plan's suggestion that close family members cannot work together is baseless.

September 3, 2019                                    Respectfully submitted,

                                                    s/ Jacob A. Walker
                                                    Jeffrey C. Block, *pro hac vice*
                                                    Jacob A. Walker, *pro hac vice*
                                                    **BLOCK & LEVITON LLP**
                                                    260 Franklin Street, Suite 1860
                                                    Boston, MA 02110
                                                    (617) 398-5600 phone
                                                    jeff@blockesq.com
                                                    jake@blockesq.com

                                                    *Counsel to the Furia Family*
                                                    *and Proposed Lead Counsel*

                                                    C. Michael Copeland OBA No. 13261
                                                    **JONES, GOTCHER & BOGAN P.C.**
                                                    3800 First Place Tower
                                                    15 East 5th Street
                                                    Tulsa, Oklahoma 74103
                                                    (918) 581-8200 phone
                                                    (918) 583-1189 fax
                                                    mcopeland@jonesgotcher.com

                                                    *Counsel to the Furia Family and*
                                                    *Proposed Local Counsel*

## CERTIFICATE OF SERVICE

I certify that on September 3, 2019, I electronically transmitted the above document to the Clerk of the Court using the Electronic Case Filing System for filing. Based on the records currently on file in this case, the Clerk of the Court will transmit a Notice of Electronic Filing to those registered participants of the ECF System.

                                                    s/ Jacob A. Walker
                                                    Jacob A. Walker