# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| THOMAS SCUDERI, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　Plaintiff,<br><br>v.<br><br>MAMMOTH ENERGY SERVICES, INC., ARTY STRAEHLA, and MARK LAYTON,<br><br>　　　Defendants. | Case No. CIV-19-522-SLP |
| JUSTIN NORMANTAS, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　Plaintiff,<br><br>v.<br><br>MAMMOTH ENERGY SERVICES, INC., ARTY STRAEHLA, and MARK LAYTON,<br><br>　　　Defendants. | Case No. CIV-19-560-SLP |
| THE CITY OF SARASOTA GENERAL EMPLOYEE DEFINED BENEFIT PENSION PLAN, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　Plaintiff,<br><br>v.<br><br>MAMMOTH ENERGY SERVICES, INC. ARTY STRAEHLA, and MARK LAYTON,<br><br>　　　Defendants. | Case No. CIV-19-720-SLP |

# ORDER CONSOLIDATING ACTIONS
# AND APPOINTING LEAD PLAINTIFFS
# AND LEAD COUNSEL

These three related matters involve a proposed securities fraud class action on behalf of persons or entities who purchased or otherwise acquired publicly traded Mammoth Energy Services Inc. (Mammoth) securities from October 19, 2017 through June 5, 2019. These matters are before the Court on pending motions to consolidate, appoint lead plaintiff(s) and appoint lead counsel pursuant to the Private Securities Litigation Reform Act (PSLRA), principally codified at 15 U.S.C. § 78u-4, as more fully set forth below.

## I. The Actions

### A. *Scuderi* – Case No. CIV-19-522

On June 7, 2019, Plaintiff Thomas Scuderi (Scuderi) filed a proposed class action complaint for violation of the federal securities laws. *See* Compl. [Doc. No. 1]. On the same day the suit was filed, Scuderi's counsel's law firm published notice of the pendency of the action announcing that lead plaintiff motions were due no later than August 6, 2019. *See* Notice [Doc. No. 20-1]. Thereafter, on August 6, 2019, Scuderi, together with Stephen Terry, Justas Normantas, Andrew Micklin, and Dion Larot (collectively, the Mammoth Investor Group) filed a motion to consolidate, appoint lead counsel and approve lead plaintiff's selection of counsel. *See* Motion [Doc. No. 18]. The Mammoth Investor Group subsequently filed a Notice of Withdrawal [Doc. No. 31] acknowledging that "[t]he Mammoth Investor Group does not appear to have the largest financial interest." *Id*. at 2. The Mammoth Investor Group continues to move for consolidation of the actions but

withdraws its request to be appointed lead plaintiff or to have its counsel be approved to serve as lead counsel.

> **B.** *Normantas* – **Case No. CIV-19-560**

On June 19, 2019, Plaintiff Justas Normantas (Normantas) filed a lawsuit that arises from substantially the same factual allegations and legal issues as the *Scuderi* lawsuit. *See* Compl. [Doc. No. 1].

> **C.** *Sarasota* – **Case No. CIV-19-720**

On August 6, 2019, Plaintiff City of Sarasota General Employees Defined Benefit Pension Plan (Sarasota) filed a lawsuit. The lawsuit filed by Sarasota is also substantially the same as the Scuderi and Normantas lawsuits. *See* Compl. [Doc. No. 1].

**I.    Consolidation**

The motions before the Court have been filed by the Mammoth Investor Group, the Furia Family[1] and Sarasota.[2] Pursuant to the PSLRA, when, as here, motions to consolidate and motions for appointment of lead plaintiff are pending simultaneously, the Court must first decide the consolidation issue. *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii). Consolidation of

---

[1] The Furia Family is comprised of a group of the following related individuals: Daniel Furia, Sharon Furia and Vincent Furia. These individuals are not named as individual plaintiffs in any of the complaints but, as purported class members, move for appointment as lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i).

[2] All three motions to consolidate were filed in the *Scuderi* action. *See* Motions [Doc. Nos. 18-20; 22; and 23-25]. As set forth, the Mammoth Investor Group has withdrawn its motion and, therefore, only the latter two motions are under review. The movants oppose one another's motions, *see* [Doc. Nos. 32 and 34-35] and each have filed replies in support of their respective motions, *see* [Doc. Nos. 38 and 39]. Citations to the parties' submissions reference the docket entries in the *Scuderi* action and the Court's ECF pagination.

related cases is proper "[i]f actions before the court involve a common question of law or fact . . . ." Fed. R. Civ. P. 42(a).

The *Scuderi*, *Normantas* and *Sarasota* actions involve claims on behalf of purchasers of Mammoth securities for alleged violations of securities laws. The actions each name as defendants Mammoth Energy Services, Inc., Arty Straehla and Mark Layton. All three actions arise from the same factual and legal issues: whether the plaintiffs purchased or otherwise acquired Mammoth securities at artificially inflated prices during the relevant time period as a result of Defendants' allegedly false and misleading statements, and whether the Defendants' conduct violated the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), and Securities and Exchange Commission (SEC) Rule 10(b)-5. Moreover, no party opposes consolidation of the related actions. Accordingly, the Court finds consolidation is proper and directs that the cases be consolidated for all pretrial proceedings and for trial.

II.  **Appointment of Lead Plaintiff**

The PSLRA further governs the procedure for appointment of lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3).[3] The PSLRA mandates the Court to "adopt a presumption that the most adequate plaintiff . . . is the person or group of persons that" (1) "has either filed the complaint or made a motion in response to a notice"; (2) "has the largest financial interest

---

[3] The PSLRA requires notice of the purported class be provided and sets forth the timing and other requirements of that notice. *See* 15 U.S.C. § 78u-4(a)(3). The PSLRA also directs that any member of the purported class may move to serve as lead plaintiff and must do so not later than 60 days after the date on which notice is published. *Id.*, § 78u-4(a)(3)(A)(i)(II). The record reflects that the notice requirements have been satisfied and that the Furia Family and Sarasota each timely moved to serve as lead plaintiff.

in the relief sought by the class" and (3) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." *Id.*, § 78u-4(a)(3)(B)(iii)(I). The presumption is rebuttable but only upon proof that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.*, § 78u-4(a)(3)(B)(iii)(II). "The court must examine potential lead plaintiffs one at a time, starting with the one who has the greatest financial interest, and continuing in descending order if and only if the presumptive lead plaintiff is found inadequate or atypical." *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002).

### A. The Furia Family has the Largest Financial Interest in the Relief Sought

Here, applying the statutory presumption, the Furia Family is the most adequate plaintiff. "[C]ourts routinely look to the movant's financial loss as the most significant factor in assessing his financial interest in the action." *Ellis v. Spectranetics Corp.*, No. 15-cv-01857-KLM, 2015 WL 9259928 at *2 (D. Colo. Dec. 18, 2015) (unpublished op.). The Furia Family has suffered $989,215.54 in losses as a result of Defendants' alleged wrongful conduct. *See* Walker Decl. [Doc. No. 22-1], Exs. B-E; *see also* Furia Family's Opp. [Doc. No. 32] at 3.[4]  In comparison, Sarasota identifies $133,595.84 as its

---

[4] The losses suffered by each member of the Furia Family are as follows: (1) Daniel J. Furia, $859,731.46; (2) Vincent Furia, $65,189.63; and (3) Sharon Furia, $64,292.45. *See* Walker Decl., Ex. E. "The PSLRA permits small groups of plaintiffs to aggregate their losses to show the largest financial interest." *Delashmet v. Custom Designed Compressor Sys., Inc.*, No. CIV 05-0848 MCA/WPL, 2006 WL 2016080 at *4 (D. N.M. Mar. 9, 2006) (unpublished op.) (citing cases).

5

approximate losses. *See* Berg Decl. [Doc. No. 35], Ex. 4; *see also* Sarasota's Mem. of Law in Opp. [Doc. No. 34] at 9, 13.[5]

## B. The Furia Family Satisfies the Requirements of Rule 23

The Court also finds the Furia Family satisfies the typicality and adequacy requirements of Rule 23.[6]

### 1. Typicality

The Furia Family's claims are typical of those of the class. The typicality requirement is satisfied "so long as the claims of the class representative and class members are based upon the same legal theory or remedial theory." *Wolfe v. AspenBio Pharma, Inc*. 275 F.R.D. 625, 628 (D. Colo. 2011) (citation omitted); *see also City of Dania Beach Police & Firefighters' Ret. Sys. v. Chipotle Mexican Grill, Inc.*, No. 12-CV-02164-PAB-

---

[5] The Furia Family references a four-factor test as governing the analysis: (1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended; and (4) the approximate losses suffered. *See* Furia Family's Opp. [Doc. No. 32] at 2-3 (citing *Lax v. First Merchs. Acceptance Corp.*, No. 97 C 2715, 1997 WL 461036 at *5 (N.D. Ill. Aug. 11, 1997) (unpublished op.)). Applying these additional factors, the Court reaches the same conclusion. *See id*. at 3 (chart summary).

[6] Rule 23(a) provides that a party may serve as a class representative only if four requirements are met: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). "Of these four characteristics, only two – typicality and adequacy – directly address personal characteristics of a class representative." *In re Ribozyme Pharms., Inc. Sec. Litig.*, 192 F.R.D. 656, 658 (D. Colo. 2000). The Court, therefore, limits its inquiry to these prongs and defers examination of the other factors until the lead plaintiff moves for class certification. *Id*.; *see also Mariconda v. Farmland Partners, Inc.*, No. 18-cv-02104-DME-NYW, 2018 WL 6307868 at *5 (D. Colo. Dec. 3, 2018) (unpublished op.) ("Under the PSLRA . . . [t]here are only two relevant parts of Rule 23: the typicality and adequacy requirements.").

6

KLM, 2013 WL 1677553 at *2 (D. Colo. Apr. 17, 2013) (unpublished op.) ("Typicality exists where the injury and the conduct are sufficiently similar." (quotations omitted)). As set above in the Court's discussion of whether consolidation of the related actions is proper, like all purported class members, the Furia Family purchased Mammoth securities during the relevant time period and suffered injuries based on the same alleged fraudulent conduct of Defendants. The factual and legal issues governing the claims of the Furia Family are the same as those governing the other purported class members. *Cf. Wolfe*, 275 F.R.D. at 628 (finding typicality requirement satisfied where "both movant and members of the purported class allege that they purchased shares of AspenBio Pharma, Inc. ("AspenBio") stock at prices that were artificially inflated by defendants' misrepresentations and omissions regarding the effectiveness of AspenBio's main product, AppyScore"); *see also In re Ribozyme*, 192 F.R.D. at 658-59 ("Both plaintiff groups satisfy this requirement because, like all other class members they: (1) purchased Ribozyme stock during the relevant time period; (2) at prices that they allege were artificially inflated by the false and misleading statements issued by defendants; and (3) they allegedly suffered damages. Both plaintiff groups' claims are typical of those of other class members since they arise from the same event or course of conduct.").

  2. **Adequacy**

The Furia Family also meets the adequacy prong of the Rule 23 analysis. To establish adequacy, the Furia Family must show "(1) the absence of potential conflict between the named plaintiffs and the class members and (2) that counsel chosen by the representative parties is experienced and able to vigorously conduct the proposed

litigation." *In re Ribozyme*, 192 F.R.D. at 659.  Here, nothing in the record suggests any potential conflicts between the named plaintiff groups (including the Furia Family) and other class members.  And, as discussed below, the Furia Family has retained experienced counsel, respected in the field of securities litigation.

      **C.**     **Sarasota has not Rebutted the Presumption in Favor of Appointment of the Furia Family as Lead Plaintiff**

Sarasota attempts to rebut the presumption in favor of appointing the Furia Family as lead plaintiff.  Although it concedes the Furia Family's combined total losses constitute the largest financial interest in the action, Sarasota argues the Furia Family cannot satisfy the adequacy requirement of Rule 23.  Sarasota points to an alleged "criminal history" of Daniel D. Furia, "the group member who suffered approximately $859,731.46 [of] the Furia Family's overall claimed losses of $989,215.54 (87%)[.]"  *See* Sarasota's Mem. of Law in Opp. [Doc. No. 34] at 9.  Sarasota references a guilty plea by Daniel Furia entered in 2009 in a Pennsylvania court on charges of tampering with public records.  And, Sarasota also references a felony conviction in a New Jersey court on charges of intent to distribute a controlled substance.  Sarasota argues this criminal history demonstrates Daniel Furia cannot adequately represent the class.

Additionally, Sarasota contends the Furia Family has not demonstrated that it is a "cohesive group" that can effectively oversee the litigation and counsel.  Sarasota acknowledges that "weight is afforded to familial relationships" in such circumstances, but argues that "evidence of a pre-existing relationship between a group's members absent additional specifics as to their history has been found to be insufficient to meet the burden.

8

*See City of Sarasota's Mem.* at 11-12 (citing *Nakamura v. BRF S.A.*, No. 18-cv-2213 (PKC), 2018 WL 3217412 at *3 (S.D. N.Y. July 2, 2018) (unpublished op.) (additional citation omitted)).

In reply, the Furia Family argues that Sarasota's reliance upon Daniel Furia's criminal history is "sensationalistic" and "entirely misleading." *See* Furia Family's Reply [Doc. No. 39] at 2. First, the Furia Family demonstrates that the prior felony conviction as to the drug charges has been expunged. *See* D. Furia Decl. [Doc. No. 39-1], ¶ 15 and Exs. 1-2.[7] Under these circumstances, the Court finds the conviction is not a relevant consideration as to whether the Furia Family is an adequate class representative. With respect to the tampering with public records charge, the Furia Family argues this was a second-degree misdemeanor charge, the plea was entered ten years ago, Mr. Furia paid a $500 fine, and he was on probation for a year.

The Furia Family points to other conduct of Mr. Furia to demonstrate he is an adequate representative. Primarily, the Furia Family points to Mr. Furia's successful roofing business and his employment of "dozens of subcontractors and multiple back office staff." *See* Reply at 2; *see also* D. Furia Decl. [Doc. No. 39-1], ¶ 6.

Although Daniel Furia's guilty plea to the misdemeanor charge is of some concern to the Court, it is well established that a criminal history alone does not defeat an individual's adequacy as a class representative. As one court has recently summarized:

---

[7] As the Furia Family explains, the conviction occurred approximately 27 years ago, when Daniel Furia was twenty-years old. The conviction was expunged by the New Jersey Superior Court and under New Jersey law, the expungement deems Mr. Furia no longer a convicted felon. *See* N.J. Stat. Ann. § 2C:52-27.

> "Plaintiffs' adequacy must be assessed in light of their conduct in this or previous litigation, not based on a subjective evaluation of their personal qualifications as allegedly and tenuously evidenced by their prior criminal record." *Randle v. Spectran*, 129 F.R.D. 386, 392 (D. Mass. 1988) (quoting *Haywood v. Barnes*, 109 F.R.D. 568, 579 (E.D.N.C. 1986)). "Most courts have rejected the contention that a proposed representative is inadequate because of prior unrelated unsavory, unethical, or even illegal conduct." 1 *Newberg on Class Actions* § 3:68 (5th ed.) (collecting cases). Moreover, the First Circuit has never held that the adequacy requirement turns on a plaintiff's criminal history. Circuits which have considered criminal histories in the context of adequacy have required a fairly high threshold for finding class representatives inadequate. *See, e.g., CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 728 (7th Cir. 2011) ("For an assault on the class representative's credibility to succeed, the party mounting the assault must demonstrate that there exists admissible evidence so severely undermining plaintiff's credibility that a fact finder might reasonably focus on plaintiff's credibility, to the detriment of the absent class members' claims." (quoting *Dubin v. Miller*, 132 F.R.D. 269, 272 (D. Colo. 1990))).

*Dvornikov v. Landry's Inc.*, No. 15-cv-13286-ADB, 2017 WL 1217110 at *10 (D. Mass. March 31, 2017) (unpublished op.). Indeed, the Furia Family cites a litany of cases where courts have found an individual to be an adequate class representative notwithstanding a criminal history where, as here, the charges have no direct relationship to the issues in the case for which appointment is sought. *See* Furia Family's Reply [Doc. No. 39] at 5-6. The Court finds the misdemeanor criminal charges at issue here, to which Daniel Furia pled guilty nearly ten years ago, are insufficient to attack his credibility to such a degree as to render him inadequate as a class representative.

Additionally, the Court finds the speculative assertion made by Sarasota that the Furia Family is not a cohesive group is insufficient to rebut the presumption that the Furia Family is the most adequate representative. *See In re Molycorp, Inc. Sec. Litig.*, No. 12-cv-0292-WJM-KMT, 2012 WL 13013602 at *2 (D. Colo. May 29, 2012) (unpublished op.)

("[S]peculation that a movant may be either atypical or inadequate will not defeat the PSLRA's most adequate plaintiff presumption." (citation omitted)). The Court has reviewed the declarations of Daniel Furia, Sharon Furia and Vincent Furia, *see* Doc. Nos. 39-1, 39-2 and 39-3, and is satisfied with the representations set forth therein that the Furia Family can work cohesively to adequately represent the interests of the purported class. The Court is further satisfied with the representations of the Furia Family regarding the acknowledgment of their duties and responsibilities as lead plaintiffs.

### III. <u>Appointment of Lead Counsel</u>

The selection of lead counsel is also governed by the PSLRA which provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). "Courts recognize that, while the appointment of counsel is subject to the court's approval, [s]electing a lawyer in whom a litigant has confidence is an important client prerogative and . . . the [PSLRA] clearly leaves the choice of counsel in the hands of the lead plaintiff." *Lane v. Page*, 250 F.R.D. 634, 640 (D. N.M. 2007) (internal quotation marks and citation omitted). In reviewing a movant's selection of lead counsel, the court should consider whether counsel is "qualified, experienced[,] and able to vigorously conduct the proposed litigation." *Darwin v. Taylor*, No. 12-CV-01038-CMA-CBS, 2012 WL 5250400 at *8 (D. Colo. Oct. 23, 2012) (unpublished op.) (internal quotation marks and citations omitted).

The Furia Family has selected as lead counsel the law firm Block & Leviton LLP. The record establishes Block & Leviton has extensive experience litigating federal

securities fraud class actions. *See* Walker Decl., Ex. F (firm resume). As such, the Furia Family's selection of lead counsel is approved.

The Furia Family also selects Jones, Gotcher & Bogan, P.C. as local counsel. However, no firm resume or other information is currently before the Court concerning the qualifications of local counsel.[8] The Court, therefore, defers its ruling on appointment of local counsel and directs the Furia Family to submit appropriate information to demonstrate the qualifications of local counsel within five days of the date of this Order.

## IV. Conclusion

In sum, the Court finds these matters should be consolidated pursuant to Rule 42(a) of the Federal Rules of Civil Procedure. The Court further finds pursuant to the PSLRA that the Furia Family should be appointed lead plaintiff and the law firm of Block & Leviton LLP should be appointed as lead counsel. The Court defers ruling on appointment of local counsel as set forth.

IT IS THEREFORE ORDERED as follows:

1) the three actions identified in the case caption of this Order are consolidated for all pretrial proceedings and for trial;

---

[8] In their respective declarations, the members of the Furia Family state that "Block & Leviton has engaged Jones, Gotcher & Bogan as our Oklahoma counsel" but offer no further explanation with respect to that engagement or the expertise of the local counsel. *See, e.g.*, D. Furia Decl. [Doc. No. 39-1], ¶ 2.

2) the consolidated action shall be designated as *In re Mammoth Energy Services, Inc. Securities Litigation* and all pleadings and other submissions filed subsequent to the date of this Order shall bear the following caption and be filed only in Case No. CIV-19-522-SLP:

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| IN RE MAMMOTH ENERGY SERVICES, INC. SECURITIES LITIGATION | ) ) | Case No. CIV-19-522-SLP |

3) all pleadings and other submissions previously served and filed in the *Normantas* and *Sarasota* actions shall be deemed a part of the record in the consolidated action;

4) pursuant to the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B), the Furia Family is appointed as Lead Plaintiff in this consolidated action;

5) pursuant to the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B)(v), the Court approves the legal counsel selected and retained by the Furia Family and appoints the law firm of Block & Leviton LLP as lead counsel;

6) the Motion [Doc. Nos. 18-20] of the Mammoth Investor Group to: (1) Consolidate the Related Actions; (2) be Appointed Lead Plaintiff; and (3) Approve Proposed Lead Plaintiff's Selection of Counsel is DENIED as MOOT based on the filing of the Notice of Withdrawal [Doc. No. 31];

7) the Motion [Doc. No. 22] of the Furia Family for (1) Consolidation of Cases; (2) Appointment as Lead Plaintiffs; and (3) Appointment of Lead and Local Counsel and Brief in Support is GRANTED **except that the Court defers ruling on appointment of local counsel and directs the Furia Family to submit appropriate information to demonstrate the qualifications of local counsel within five days of the date of this Order**;

8) the Motion [Doc. Nos. 23-25] of the City of Sarasota General Employees Defined Benefit Pension Plan for (1) Consolidation, (2) Appointment as Lead Plaintiff, and (3) Approval of Selection of Counsel is GRANTED to the extent the Motion requests consolidation of these matters and is DENIED as to all other requested relief;

9) The following scheduling deadlines[9] in this matter are established:

    a) within sixty days of the date of this Order, Block & Leviton LLP on behalf of the Furia Family as Lead Plaintiff, shall file a consolidated amended complaint;

    b) Defendants shall have forty five days to answer or otherwise respond to the allegations of the consolidated amended complaint;

    c) The Furia Family, as Lead Plaintiff, shall file a response to any motion to dismiss, if such motion is filed by Defendants, within forty-five days after the motion is filed; and

    d) Defendants shall file their reply, if any, to the Furia Family's response within thirty days after such response, if any, is filed; and

10) The Clerk of Court is directed to file this Order in *Scuderi*, Case No. CIV-19-522-SLP, *Normantas*, Case No. CIV-19-560-SLP and *Sarasota*, Case No. CIV-19-720-SLP.

IT IS SO ORDERED this 13th day of September, 2019.

SCOTT L. PALK
UNITED STATES DISTRICT JUDGE

---

[9] By prior Order entered July 1, 2019, *see Scuderi* [Doc. No. 10]; *Normantas* [Doc. No. 13], the Court declined to issue any scheduling order until ruling on the issues of consolidation, and appointment of lead plaintiff(s) and lead counsel. Because the Court has now ruled on these issues, the Court sets a preliminary scheduling order.