## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| IN RE MAMMOTH ENERGY | § | |
| SERVICES, INC. SECURITIES | § | Case No. CIV-19-522-J |
| LITIGATION | § | |
| | § | |

## DEFENDANT KEITH ELLISON'S REPLY IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

Joe M. Hampton, OBA No. 11851
Johnny R. Blassingame, OBA No. 21110
Hampton Barghols Pierce, PLLC
210 Park Avenue, Suite 2700
Oklahoma City, OK 73102
jhampton@hbplawok.com
jblassingame@hbplawok.com
Phone: 405-702-4346
Facsimile: 405-600-6851

William J. Leone (pro hac vice)
Norton Rose Fulbright US LLP
1301 Avenue of the Americas
New York, NY 10019
william.leone@nortonrosefulbright.com
Phone: 212-318-3000
Facsimile: 212-318-3400

Nathan B. Baum (pro hac vice)
Texas Bar No. 24082665
Norton Rose Fulbright US LLP
2200 Ross Ave., Suite 3600
Dallas, TX 75201
Nathan.baum@nortonrosefulbright.com
Phone: 214-855-7487
Facsimile: 214-855-8200

Comes now Defendant Keith Ellison and files this Reply in Support of Motion to Dismiss the Second Amended Complaint ("Complaint") (Dkt. 105) and states as follows:

**A.    <u>The Pleading Burdens Are Much Higher Than Suggested By Plaintiffs.</u>**

Ellison's Motion contained well-sourced precedent from the Tenth Circuit Court of Appeals that repeatedly rejected securities fraud complaints at the motion to dismiss stage on the same legal points on which Ellison moved.  In response, Plaintiffs cited little Tenth Circuit authority, but instead offered a few district court opinions from other jurisdictions while attempting immaterial distinctions.  The precedent cited in the Motion is markedly more powerful than the authority cited in the Response.

Plaintiffs first minimize the applicable standards for a motion to dismiss in a securities fraud case.  Response at 3.  Yes, the Court must accept the Complaint's factual allegations as true.  However, there are several more requirements for Plaintiffs to survive a motion to dismiss.  Motion at 4-5.  The Tenth Circuit's repeated dismissal of securities fraud complaints at the motion to dismiss stage shows that the Tenth Circuit holds securities fraud complaints to "the most stringent pleading standard." *City of Phila. v. Fleming Cos., Inc.*, 264 F.3d 1245, 1259 (10th Cir. 2001).  Even cases cited by Plaintiffs state that, particularly on the scienter element, accepting the Complaint's allegations as true is not enough—rather, the Court "***must*** take into account plausible opposing inferences." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007) (reversing denial of motion to dismiss because of refusal to consider competing inferences) (emphasis added); *Nibur v. SandRidge Mississippian Trust I*, No. CIV-15-634-M, 2017 WL 3996421, at * 4 (W.D. Okla. Sept. 11, 2017).

<u>DEFENDANT KEITH ELLISON'S REPLY IN SUPPORT OF MOTION TO DISMISS</u>                **PAGE 1**

The "factual" allegations in the Complaint and Response are not factual at all. Most are taken from an indictment. But an allegation in an indictment is just that, an allegation. It is given no more weight than an allegation in any other pleading. The indictment is contested and does not address the required elements of a securities fraud claim. The Complaint does not and cannot provide more specificity to fill the gap.

**B.    The One Alleged Misstatement By Ellison is Not Actionable.**

The Motion (at 6-9) challenged Plaintiffs to identify with particularity an act of wrongdoing by Ellison that occurred before his October 31, 2017 statement that would have caused his statement to be false when made. In Response (at 4-11), Plaintiffs made several allegations against Ellison. None occurred before October 31, 2017.

The Motion contained a detailed response to the October 31, 2017 statement made by Ellison, including that: (1) the statement was made months before any alleged wrongdoing by Ellison; (2) the Tenth Circuit has rejected the "fraud by hindsight" theory; (3) the statement was true when made; (4) the statement contained a disclaimer that Ellison was speaking in a personal, unofficial capacity; and (5) the statement was vague and not capable of objective verification. Motion at 6-9.

The Response began its rebuttal with two pages of alleged events that are described in the indictment. Response at 5-6. *All* of these events occurred after October 31, 2017. The Response cites, in order: (1) a June 2018 e-mail; (2) June 2018 statements made by Straehla; (3) the July 2018 hiring of Patterson; (4) a December 2017 letter from FEMA; and (5) "pressure" by Tribble to utilize Cobra at (i) a substation in February 2018, (ii) a redevelopment project in March 2018, and (iii) Vieques in January 2018. *Id*.

The Response also contains an undated allegation that Tribble possessed a picture of Ellison's credit card, but the indictment's charge on credit card use relates to transactions in July 2018 and December 2018. *Id*.[1]  Because all of these events occurred after October 2017 (even taking them as true), they do not support that Ellison's statement was false when made, much less any sort of scienter by Ellison when he made the statement.  The only hint of an event before October 31, is that Ellison flew to Puerto Rico on October 13.  A flight to Puerto Rico is not an act of wrongdoing.

None of the general references to "October 2017" in the Complaint and indictment are sufficient.  *Id*. at 8.  The Response quotes general statements that: "From October 2017 to April 2019," Tribble and Ellison developed a personal relationship wherein Ellison provided Tribble with things of value with the intent to influence Tribble's performance of official acts.  *Id*.[2]  These statements fail all of the particularity requirements necessary to plead a securities fraud claim—the "who, what, when, where, and how" of the purported fraud.  *See Caprin v. Simon Transp. Servs., Inc.*, 99 Fed. App'x 150, 158 (10th Cir. 2004).  Plaintiffs must allege ***something*** that occurred in or before October 2017 that would have made Ellison's October 2017 statement false when made.  They did not because they cannot.  The particular allegations in the indictment

---

[1] The Complaint does not allege that Tribble ever used the credit card or the photograph for personal use.  This point, thus, does not permit an inference of impropriety.  The truth, though, is that Tribble never used the credit card for personal use.  It was instead used to purchase supplies for Ellison at his apartment.

[2] The Response states that "in or about October 2017," Tribble was Sector Lead for Power and Infrastructure in Puerto Rico.  *Id*.  Listing Tribble's job title in October 2017 is not sufficient to show wrongdoing by Ellison in October 2017.

<u>DEFENDANT KEITH ELLISON'S REPLY IN SUPPORT OF MOTION TO DISMISS</u>        **PAGE 3**

reveal that the earliest official action by Tribble was in December 2017, and the earliest gift purportedly given by Ellison was in February 2018. Motion at 6. Because no specific "thing of value" is identified from October 2017, no intent element can be sufficiently pled either. Further, the allegations in the indictment are not that Tribble helped Ellison secure the original contract in October 2017 (which is the contract that Ellison was referring to in his October 2017 statement). Ellison and Tribble had not even met at that time. Rather, the particular allegations in the indictment are that, once that contract was in place, Tribble attempted to steer work to Cobra. *Id.* at 7.

Plaintiffs' allegations are exactly like those in the dismissed complaint in *In re PetroChina Co. Ltd. Sec. Litig.*, 120 F. Supp. 3d 340 (S.D.N.Y. 2015). In that case, the court found that the complaint's "primary defect" was that it relied on bribery allegations of events occurring in 2014 that postdated the allegedly false statements made in 2011 and 2012 annual reports. *Id.* at 356. In holding that the complaint must specify when the alleged bribery occurred, the court found that the plaintiffs failed "to establish that *any* statement in the 2011 report . . . was falsely made because they do not allege a single fact that *precedes* the filing of the report on April 26, 2012." *Id.* at 356-57, 365 (emphasis in original); s*ee also Lipow v. Net1 UPES Techs., Inc.*, 131 F. Supp. 3d 144, 166-67 (S.D.N.Y. 2015) (dismissing securities fraud case because plaintiff did "not identify when the alleged bribe occurred"). The same is true here.

Plaintiffs also allege that Ellison is liable for failing to correct the statements of his boss, Straehla, that were made on an October 20, 2017 conference call. Plaintiffs do not assert that Ellison was on that October 20 conference call, and there is no specific tie of

**DEFENDANT KEITH ELLISON'S REPLY IN SUPPORT OF MOTION TO DISMISS**                    **PAGE 4**

Straehla's comment to Ellison in the Complaint.  Even so, Plaintiffs' own argument precludes liability because Plaintiffs suggest that Ellison's duty to correct arose once he spoke.  Accepting Plaintiffs' position *arguendo*, Ellison had no duty to correct Straehla's statements on October 20 because Ellison did not speak until October 31.

**C.** **Plaintiffs' Attempted Distinctions From Tenth Circuit Precedent Are Immaterial, Irrelevant, And Incorrect.**

In the face of binding Tenth Circuit precedent on motions to dismiss securities fraud cases, Plaintiffs advance meaningless distinctions that have no impact on the legal points raised in the Motion.  Response at 9-12.  Ellison cited the Tenth Circuit's holding in *City of Phila.* affirming dismissal of a securities fraud case on several legal points, such as the court's rejection of the "fraud by hindsight" theory as well as that the plaintiff must plead that the defendant knew that not disclosing information posed a substantial likelihood of misleading investors.  Motion at 6-7 & 14.  Plaintiffs quibbled that the underlying event in *City of Phila.* was material only for a short portion of the class period.  There is no explanation in the Response as to why that distinction has any relevance to the legal points that Ellison raised, such as that he cannot be held liable for "fraud by hindsight" where his statement was true when made.  *City of Phila.*, 264 F.3d at 1260.  Plaintiffs also attempt to distinguish from *City of Phila.* by declaring that "there is no anticipated future event at issue" here.  Response at 9.  That means that Plaintiffs acknowledge that they are not attempting to hold Ellison liable for some future event occurring after October 31, 2017, which is meaningful because the only actions allegedly

taken by Ellison occurred after October 31.  By advancing this distinction, Plaintiffs would seem to be hurting the entire theory of their Response.

Plaintiffs criticize *Anderson v. Spirit AeroSystems Holdings, Inc.*, 827 F.3d 1229, 1249 (10th Cir. 2016)—another case affirming the dismissal of a securities fraud case.[3] Plaintiffs allege that *Anderson* is distinct because the court found the individual defendant's statement to be an "honest mistake."  Response at 11.  But the *Anderson* court found that the individual defendant had committed an honest mistake ***because*** he was not aware in August 2012 about an acknowledgement that would come two months later.  That is the same allegation that Plaintiffs set forth in this case—alleging that various events in 2018 caused an October 2017 statement to become untrue.

Plaintiffs conflate the vagueness point.  Response at 12-15.  The relevant issue is whether Ellison's statement, not the bribery allegation, was vague or capable of objective verification.  *Level 3*, 667 F.3d at 1339.  Ellison's statement that Cobra engaged in a "standard bidding process" is vague and not capable of objective verification—it is impossible to objectively know what a "standard bidding process" is.  Ellison's statement is similar to the ones in *Level 3* that were not objective: (1) Level 3 has "proven integration experience"; (2) Level 3 "will make meaningful progress" in 2007; and (3) "the overall customer experience is still positive."  *Id.* at 1340.  It is much closer to those

---

[3] Plaintiffs argue that *In re Level 3 Commncs., Inc. Sec. Litig.*, 667 F.3d 1331, 1342 (10th Cir. 2012) did not "turn on any temporal issue."  Response at 10.  That is not correct. The issue in *Level 3* was whether an April report showed that a February statement was false.  The Court stated, "the April report does not show that any of defendants' ***earlier*** statements were false."  *Level 3*, 667 F.3d at 1342 n. 11 (emphasis added).

statements than it is to the objective, verifiable statement that was found actionable that the company was "under budget." *Id.* And unlike the other cases cited in the Response at 14-15 on this point, Ellison did not "repeatedly" make the statement.

**D.      Plaintiffs' Distinctions on Shotgun Pleadings Are Immaterial.**

Plaintiffs attempt to hold Ellison individually liable for the statements of others. Plaintiffs fail in this regard because the Complaint is an improper shotgun pleading in that it attempts to hold Ellison liable for "all statements made by Mammoth" and attempts to plead scienter based on "all the facts alleged in this Complaint." Courts consistently reject shotgun pleading allegations in securities fraud cases like this one. Motion at 9-13.

Plaintiffs argue that the Tenth Circuit's holding in *Hart v. Salois*, 605 Fed. Appx. 694 (10th Cir. 2015) is inapposite because it involved thirty defendants. That distinction is meaningless, and there is no explanation for why the number of defendants has any relevance in a securities fraud case. Ellison cited numerous cases in the Motion (at 9-13) that the plaintiff must plead as to "each defendant in multiple defendant cases." *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 364-65 (5th Cir. 2004) (affirming dismissal because the plaintiffs must "enlighten each defendant" as to his role in the fraud). These standards are the same regardless of the number of defendants.

**E.      Ellison Had No Duty to Correct Statements Made By Others.**

Plaintiffs concede that the PSLRA does "not create an affirmative duty to disclose any and all material information." Response at 2. That is hornbook law. Instead, in attempting to extend liability to Ellison for statements made by others, Plaintiffs argue that a duty to speak truthfully arises when a defendant chooses to speak. *Id.* This is an

DEFENDANT KEITH ELLISON'S REPLY IN SUPPORT OF MOTION TO DISMISS          PAGE 7

unremarkable position, and Ellison spoke truthfully in his October 31, 2017 statement. Ellison thereafter did not have an unlimited duty to correct statements made by others on any number of topics. The primary case relied upon by Plaintiffs in their Response actively *rejects* this proposition. *In re Cognizant Tech. Sol. Corp. Sec. Litig.*, No. 16-6509, 2018 WL 3772675, at *21-22 (D.N.J. Aug. 8, 2018) (rejecting that a defendant has a broad duty to disclose improper business that contributes to its success whenever it "puts at issue the cause of its success"). There is also no aiding and abetting claim in a securities fraud case. *Central Bk. of Den., N.A. v. First Interstate Bk. of Den, N.A.*, 511 U.S. 164, 191 (1994). Where Ellison was not the speaker, Plaintiffs have not and cannot allege sufficient facts to create any sort of duty by Ellison to correct those statements.

The next case cited by Plaintiffs—*Peace Officers' Annuity & Benefit Fund of Ga. v. DaVita Inc.*, 372 F. Supp. 3d 1139, 1152 (D. Colo. 2019)—is unavailing. Plaintiffs selectively quote the case, glossing over that the quote was referring to a *company* that chooses to speak, not an individual. And the duty to correct in a securities fraud case has never been extended to mean that an individual has a duty to correct the statements of others where the individual had made a prior truthful statement on a similar broad topic. Such a rule would require Ellison to correct any and all statements by anyone at Mammoth or Cobra regarding power restoration in Puerto Rico. That is a step too far.

The other authorities relied upon by Plaintiffs on group pleading (Response at 15-17) are in the context of "the collective actions of corporate directors or officers." *Williams*, 339 F. Supp. 2d at 1221 n.2. Ellison was never a Mammoth employee, was never a "corporate director or officer" or control person of Mammoth, and had no role in

the public statements of Mammoth. Nowhere in the Complaint does Plaintiff ever plead Ellison's role in the public statements made by Mammoth, Straehla, or Layton. For that reason, this case is distinct from the unreported New Jersey case repeatedly cited by Plaintiffs that established liability for the president of a parent company that actively directed the actions of others. *Cognizant*, 2018 WL 3772675, at *16.[4] Plaintiffs' claims against Ellison based on the statements of others fail to sufficiently allege any duty to correct by Ellison or that any failure to correct was coupled with the requisite scienter.

**F.      Plaintiffs Still Cannot Allege Scienter.**

Plaintiffs acknowledge that they must plead that the defendant "knew that failure to reveal the potentially material fact *would likely mislead investors*." Response at 19 (emphasis in original). Plaintiffs failed to do that. Even the portions of the Complaint cited by the Plaintiffs in this Section—Paragraphs 10, 90, 91, and 111—do not state that Ellison knew that his purported misstatements and omissions "would likely mislead investors." *Id*. at 20 n. 21. Ellison's name does not even appear in Paragraphs 90, 91, or 111 of the Complaint *Id*. at 20. The Response does not contain any allegation that Ellison had the requisite scienter for any statements made by Straehla or others.

The Motion contained detailed responses to each of the inferences alleged by Plaintiffs. Motion at 16-19; *see also Smallen v. The Western Union Co.*, 950 F.3d 1297, 1304, 1307-08 (10th Cir. 2020) (affirming dismissal of a 176-page securities fraud complaint that contained a "plethora of allegations" regarding government investigations,

---

[4] On *In re Take-Two Interactive Sec. Litig.*, 55 F. Supp. 2d 247, 268 (S.D.N.Y. 2008), the court there found no liability where the subsidiary had no control over the information disclosed by the parent. Similarly, Ellison had no control over Mammoth's statements.

but very few particularized allegations showing that the defendants made statements intending to defraud investors). Plaintiffs fail to respond to the competing inferences offered by Ellison that, among other things, his conduct is explained by his close personal friendship with Tribble rather than some sort of intent to improperly influence Tribble's official actions. *Id*. Plaintiffs focus on Ellison's resignation from Cobra as evidence of purported wrongful conduct. Response at 24. As a threshold matter, the Complaint contains no allegation, because it would be untrue, that Ellison resigned because of any allegations relating to any purported bribery. Plaintiffs' cited case law also cuts against the argument, because a resignation, even in the midst of internal investigations, "is not sufficient to give rise to a strong inference of scienter." *Cognizant*, 2018 WL 3772675, at *30 (collecting cases). Unlike the company in *Cognizant*, Mammoth and Cobra here have not issued any sort of "public admission" that management participated in a bribery scheme. *Id*. at *31. In fact, the opposite is true, as evidenced by Mammoth, Straehla, and Layton's vigorous defense in their Motion to Dismiss in this case.

G.    **The Court Should Not Provide Plaintiffs With Leave to Amend a Third Time.**

Plaintiffs have amended their Complaint twice. The most recent amendment was *after* Plaintiffs had already seen both Motions to Dismiss. Plaintiffs' second amendment contained no new allegations against Ellison. Plaintiffs should not be given a third bite at the apple. The Court should dismiss the Complaint against Ellison.

H.    **Conclusion**

For these reasons, the Court should dismiss the Second Amended Complaint against Ellison.

Respectfully Submitted,

*/s/ William J. Leone*
William J. Leone (pro hac vice)
Norton Rose Fulbright US LLP
1301 Avenue of the Americas
New York, NY 10019
william.leone@nortonrosefulbright.com
Phone: 212-318-3000
Facsimile: 212-318-3400

Nathan B. Baum (pro hac vice)
Texas Bar No. 24082665
Norton Rose Fulbright US LLP
2200 Ross Ave., Suite 3600
Dallas, TX 75201
Nathan.baum@nortonrosefulbright.com
Phone: 214-855-7487
Facsimile: 214-855-8200

Joe M. Hampton, OBA No. 11851
Johnny R. Blassingame, OBA No. 21110
Hampton Barghols Pierce, PLLC
210 Park Avenue, Suite 2700
Oklahoma City, OK 73102
jhampton@hbplawok.com
jblassingame@hbplawok.com
Phone: 405-702-4346
Facsimile: 405-600-6851

*Attorneys for Defendant Keith Ellison*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was electronically filed via the Court's CM/ECF system on April 27, 2020 and was served via ECF upon counsel of record.

*/s/ William J. Leone*
William J. Leone

**DEFENDANT KEITH ELLISON'S REPLY IN SUPPORT OF MOTION TO DISMISS**          **PAGE 11**