# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN RE MAMMOTH ENERGY SERVICES, INC. SECURITIES LITIGATION | Case No. CIV-19-522-J |

## REPLY MEMORANDUM OF LAW OF DEFENDANTS MAMMOTH ENERGY SERVICES, INC., ARTY STRAEHLA, AND MARK LAYTON IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

{S541264;}

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ...................................................................................................................... 1

    I.    PLAINTIFFS FAIL TO ALLEGE FACTS SUPPORTING A STRONG
    INFERENCE THAT ANY DEFENDANT ACTED WITH SCIENTER ...................... 1

        A.    Plaintiffs Fail to Plead Straehla's Scienter ......................................................... 2

        B.    Plaintiffs Fail to Plead Layton's Scienter ........................................................... 4

        C.    Plaintiffs Cannot Impute Ellison's Scienter to Mammoth ............................... 5

    II.    PLAINTIFFS FAIL TO IDENTIFY ACTIONABLE MISSTATEMENTS ........... 7

        A.    Plaintiffs Abandon a Substantial Part of Their Falsity Claims ......................... 7

        B.    The Remaining Alleged Misstatements Are Not Actionable ............................. 8

CONCLUSION .................................................................................................................. 12

{S541264;}               i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Glazer Cap. Mgmt. LP v. Magistri,*
  549 F.3d 736 (9th Cir. 2008) ........................................................................... 6

*In re BISYS Sec. Litig.,*
  397 F. Supp. 2d 430 (S.D.N.Y. 2005) ............................................................. 7

*In re Cognizant Tech. Solutions Corp. Sec. Litig.,*
  2018 WL 3772675 (D.N.J. Aug. 8, 2018) ....................................................... 6

*In re Grupo Televisa Sec. Litig.,*
  368 F. Supp. 3d 711 (S.D.N.Y. 2019) ............................................................. 7

*In re Marsh & McLennan Sec. Litig.,*
  501 F. Supp. 2d 452 (S.D.N.Y. 2006) .......................................................... 6, 7

*In re JP Morgan Sec. Litig.,*
  363 F. Supp. 2d 595 (S.D.N.Y. 2005) ............................................................. 7

*In re Sandridge Energy, Inc. Sec. Litig.,*
  2015 WL 12940036 (W.D. Okla. Aug. 27, 2015) ........................................... 1

*Makor Issues & Rights v. Tellabs Inc.,*
  513 F.3d 702 (7th Cir. 2008) ......................................................................... 5, 6

*Pa. Pub. Sch. Employees' Ret. Sys. v. Bank of Am. Corp.,*
  874 F. Supp. 3d 341 (S.D.N.Y. 2012) ............................................................. 6

*Patel v. L-3 Comm. Hldgs.,*
  2016 WL 1629325 (S.D.N.Y. Apr. 21, 2016) ................................................. 7

*Phillips v. Scientific-Atlanta, Inc.,*
  374 F.3d 1015 (11th Cir. 2004) ....................................................................... 5

*Scott v. Hormel,*
  2019 WL 3935101 (W.D. Okla. Aug. 20, 2019) ............................................. 8

*Smallen v. Western Union Co.,*
  950 F.3d 1297 (10th Cir. 2020) ....................................................................... 5

*Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*,
    365 F.3d 353 (5th Cir. 2004) ....................................................................5

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Cap. Inc.*,
    531 F.3d 190 (2d Cir. 2008) .....................................................................6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)..................................................................................2

## Statutes

Private Securities Litigation Reform Act of 1995 ("PSLRA") .................................2, 7, 10

Defendants Mammoth Energy Services, Inc. ("Mammoth"), Arty Straehla ("Straehla"), and Mark Layton ("Layton," and together "Defendants"),[1] respectfully submit this Reply Memorandum of Law in further support of their motion to dismiss the Second Amended Complaint ("SAC") pursuant to FRCP 12(b) and the PSLRA.

## PRELIMINARY STATEMENT

Despite filing three complaints, Plaintiffs fail to plead that Defendants had any role in, or knowledge of, the misconduct alleged in the Indictment.  Plaintiffs' attempt to "impute" knowledge from Ellison and Cobra to Defendants only highlights the absence of facts that support Defendants' scienter.  And Plaintiffs' authority for imputing scienter from subsidiary to parent universally involves knowledge or participation of that parent. By contrast, the facts alleged here indicate the misconduct was hidden while Cobra performed the functions for which PREPA hired it.  Even if Plaintiffs had pleaded actionable misstatements—which they fail to do with the particularity required under the PSLRA—absence of scienter requires dismissal with prejudice.

## ARGUMENT

**I.    PLAINTIFFS FAIL TO ALLEGE FACTS SUPPORTING A STRONG INFERENCE THAT ANY DEFENDANT ACTED WITH SCIENTER**

The Opposition fails to demonstrate that the SAC makes "[p]articularized factual allegations," *In re Sandridge Energy, Inc. Sec. Litig.*, 2015 WL 12940036, at *8 (W.D. Okla. Aug. 27, 2015), that support an inference of scienter that is "cogent and at least as

---

[1] Capitalized terms have the meaning ascribed in the Motion.

{S541264;}

compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 325 (2007).

### A.    Plaintiffs Fail to Plead Straehla's Scienter

The Opposition relies on mischaracterizing the Indictment (SAC Ex. A) and repeating portions of the SAC in a failed attempt to implicate Mr. Straehla.

*First*, the Indictment nowhere asserts wrongdoing in connection with the first or second PREPA Contracts. The Opposition claims the Indictment alleges the misconduct began "in 'October 2017.'" Opp. 15.[2] The Indictment actually says "*in or about* October 2017," SAC Ex. A ¶¶ 36, 97, 109—a critical difference that means the Indictment lacks *particularized* allegations of *any* misconduct in October 2017, when the first PREPA Contract was executed. *See* Mot. at 10 (PSLRA pleading requirements). In fact, the Indictment alleges no specific acts by Tribble that favored Cobra until December 2017, nor any communications about the award of either PREPA Contract.[3] Mot. 20-21. Plaintiffs thus fail to plead falsity for **Statements #1** and **#2** as to FEMA's role in the first PREPA Contract. Plaintiffs' assertion that the supposed falsity of those statements demonstrates scienter is contrary to the need to plead *each* element of the claim.[4]

---

[2] The Opening Memo is cited as "Mot. __"; the Response as "Opp. __."

[3] Plaintiffs quote a DOJ press release to assert that Tribble "award[ed] restoration work to Cobra," Opp. 24. Like the Indictment, this statement includes no particularized facts as to how Cobra obtained the PREPA Contracts themselves. *See also* Mot. 20-21 (unanswered argument that Indictment alleges steering only of work and payments).

[4] Plaintiffs' assertion that Mr. Straehla is "referred to throughout the Indictment" is irresponsible and misleading. Opp. 18, n.17. Even if he were "Individual A," the Indictment alleges *only* that "Individual A" signed the PREPA Contracts. The related assertion that the Indictment did not "exonerate" Mr. Straehla is inapposite. *See id.* The

*Second*, Plaintiffs do not dispute that Straehla *did not know* about the June 2018 Tribble e-mail, and do not respond to the point that Straehla, as Cobra's CEO, could plausibly have learned about payment issues from sources other than Ellison.  Mot. 13. Regardless, the allegations of a looming "work stoppage," and impending cessation of payment by PREPA, are implausible and inconsistent with the facts alleged: (i) no such stoppage occurred; (ii) Cobra obtained a new, $900 million PREPA Contract just *three weeks* earlier, *see* SAC ¶ 47; (iii) Cobra received payments for another *year* after the June 2018 Tribble e-mail, and was paid more than $1 billion, *see* SAC ¶¶ 98, 100; (iv) PREPA is not alleged to have missed *a single payment* at the time, so there was nothing to disclose; and (v) the allegations nowhere suggest Defendants knew about the misconduct alleged in the Indictment.  These allegations are not plausible, much less compelling.

*Third*, Patterson was not indicted for switching jobs, but for negotiating employment with Cobra while making internal FEMA decisions relating to Cobra.  SAC Ex. A ¶ 121.  Even if it were reasonable to infer that Straehla, as CEO, was aware of every hire in Cobra's thousand-person Puerto Rico operation, Mot. 6, Plaintiffs nowhere allege Straehla was aware of Patterson's Cobra-related functions at FEMA, and so fail to plead Straehla had reason for concern about Patterson's hiring.  *See* Mot. 12.[5]

---

most compelling, and only reasonable, inference from the extensive DOJ investigation and Indictment *not* implicating Defendants is they *lacked* scienter.  The mere existence of the (unpleaded and uncited) SEC and DOJ (Civil) investigations also provides no *particularized facts* concerning scienter.  *See* Opp. 20, n.19.

[5] Plaintiffs imply that Patterson's salary was a red flag, but the Indictment accuses Patterson of *defrauding Mammoth* by misrepresenting the salary she had been earning at FEMA.  SAC Ex. A ¶ 122.

*Finally*, Plaintiffs' allegations concerning Straehla's March 15, 2019 statement about Cobra's wind-down (**Statement # 24**) also fail. As discussed below, Mammoth's 2018 Form 10-K, published March 15, 2019, states plainly that "[a]s of March 8, 2019, the amount owed to us by PREPA had increased to approximately $281 million." SAC ¶ 172. Plaintiffs' assertion that the statement in the 10-K was a "generic risk disclosure" is incorrect, Opp. 18: it *actually disclosed* what PREPA owed Cobra, leaving nothing else for Straehla to disclose and no conduct from which to infer scienter. Plaintiffs' claim that Straehla knew PREPA would *never* pay is not supported by facts in the SAC.[6]

### B.    Plaintiffs Fail to Plead Layton's Scienter

The SAC and Opposition likewise fail to support a strong inference that Layton committed or intended to commit fraud. *First*, allegations concerning the June 18, 2018 leadership meeting fail for the same reasons as with Straehla. *Second*, the Opposition nowhere answers that Layton's "pause" discussion was a protected forward-looking statement, and so abandons **Statement #23**. Mot. 28. *Third*, there is no reason that withdrawal due to PREPA's *disclosed* non-payment is inconsistent with stating the wind-down was a "pause." It surely is commonplace to suspend services for non-payment and resume when payment issues are resolved. Indeed, Layton's statement anticipated Cobra would bid for RFPs "in Q3 or Q4 of this year," which is consistent with a "pause." The

---

[6] Plaintiffs claim the June 7, 2019 press release supports scienter because it did not disclose the investigation. Plaintiffs do not allege the press release—which falls outside the class period—was itself false. Furthermore, Plaintiffs' authority on "cover ups" concerns alleged wrongdoers trying to avoid detection, not the *legal* act of a company declining to disclose publicly an ongoing government investigation. *See* Opp. 14-15.

only reasonable inference is that Layton was making a good-faith prediction, not that he was—for reasons not pleaded—attempting to cover up a *disclosed* payment issue.

### C.    Plaintiffs Cannot Impute Ellison's Scienter to Mammoth

Plaintiffs nowhere allege Defendants participated in, or even knew about, the misconduct alleged in the Indictment. Plaintiffs instead advance two theories for "imputing" Ellison's or Cobra's alleged knowledge of misconduct to Defendants. *First*, that Plaintiffs need only plead conduct of which some senior official—not necessarily a Defendant or identified person—was likely aware; and *second*, that illegal conduct of an important subsidiary may be imputed to the parent. Both theories fail here.

Contrary to Plaintiffs' implication that Courts have all but universally accepted that a plaintiff may "plead scienter against a corporate defendant without doing so for a specific individual," *this* Circuit has not done so. *Smallen v. Western Union Co.*, 950 F.3d 1297, 1314 (10th Cir. 2020) ("We have neither accepted nor rejected this theory of corporate scienter, and we need not do so now.").[7] *Smallen* found the facts before it were

> a far cry from the hypothetical situation our sister courts have provided as to when the doctrine would apply: Suppose General Motors announced that it had sold one million SUVs in 2006, and the actual number was zero. There would be a strong inference of corporate scienter, since so dramatic an announcement would have been approved by corporate officials sufficiently knowledgeable about the company to know that the announcement was false.

*Id.* (quoting *Makor Issues & Rights v. Tellabs Inc.*, 513 F.3d 702, 710 (7th Cir. 2008)).

---

[7] Two other Circuits have rejected the concept. *See Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 366 (5th Cir. 2004); *Phillips v. Scientific-Atlanta, Inc.*, 374 F.3d 1015, 1017 (11th Cir. 2004).

{S541264;}                    5

Regardless, this case is also a "far cry" from the above scenario. Cobra is not alleged, for instance, to have claimed it was performing hundreds of millions of dollars of restoration work while not doing any at all—which it might be reasonable to expect senior company officials to know. Indeed, there is no allegation that Cobra misrepresented the extent or success of the work it performed when it "turned Puerto Rico's lights back on." Mot. 1 (quoting Def. Ex. 1 at 1). Rather, the Indictment and SAC allege, at best, that one person at Cobra and one at FEMA coordinated to steer to Cobra work that the PREPA Contracts already made Cobra eligible to do.[8] Plaintiffs' authority on this point is accordingly inapplicable. *See In re Cognizant Tech. Solutions Corp. Sec. Litig.*, 2018 WL 3772675, at *33 (D.N.J. Aug. 8, 2018) (applying corporate scienter because the "alleged bribery scheme was widespread throughout the company and involved multiple personnel," as distinct from a scheme "involv[ing] a limited group of rogue employees perpetuating a fraud and concealing it from corporate management").[9]

*Second*, Plaintiffs cite no authority imputing a subsidiary's intent to the parent despite a complete absence of allegations of knowledge or participation by the parent in the alleged misconduct. *See In re Marsh & McLennan Sec. Litig.*, 501 F. Supp. 2d 452,

---

[8] Notably, Plaintiffs nowhere allege that the same public scrutiny of the first PREPA Contract was applied to the second, $900 million PREPA Contract.

[9] *See also Teamsters Local 445 Freight Div. Pension Fund v. Dynex Cap. Inc.*, 531 F.3d 190 (2d Cir. 2008) (rejecting scienter allegations); *Makor*, 513 F.3d at 711 (corporate scienter where misstatements "emanated directly from" the CEO); *Glazer Cap. Mgmt. LP v. Magistri*, 549 F.3d 736, 746 (9th Cir. 2008) (rejecting scienter); *Pa. Pub. Sch. Employees' Ret. Sys. v. Bank of Am. Corp.*, 874 F. Supp. 3d 341, 363-64 (S.D.N.Y. 2012) (allegations that unidentified, but specific senior officers executed false affidavits, and alleged wrongdoing by BofA General Counsel, imputed to the bank).

482 (S.D.N.Y. 2006) ("Plaintiffs allege that both [parent] and [subsidiary] actively oversaw a 'business model based on unsustainable and improper business practices.'"); *Patel v. L-3 Comm. Hldgs.*, 2016 WL 1629325, at *14 (S.D.N.Y. Apr. 21, 2016) (imputing to company the scienter of senior managers at company, not subsidiary); *In re BISYS Sec. Litig.*, 397 F. Supp. 2d 430, 443 (S.D.N.Y. 2005) (imputing to company the scienter of managers at company, not subsidiary).[10]

## II.    PLAINTIFFS FAIL TO IDENTIFY ACTIONABLE MISSTATEMENTS

Defendants' Opening Brief detailed, statement by statement, Plaintiffs' failures to plead falsity with the required particularity.  Despite 30 pages of Opposition argument (or 35, accounting for sections incorporated from their Opposition to Keith Ellison's motion), Plaintiffs abandon numerous statements and falsity assertions.  They nonetheless try to assert falsity as to a group of statements *not previously identified as false in the SAC*.  Plaintiffs cannot save the SAC from dismissal.

### A.    Plaintiffs Abandon a Substantial Part of Their Falsity Claims

The Opposition makes no argument as to **Statements #4**, **#7**, **#8**, **#12**, **#16**, and **#17**, and does not address that **Statements #6** and **#23** are protected by the PSLRA Safe Harbor.  *See* Mot. 28.  These alleged misstatements thus should be disregarded.

Plaintiffs also fail to support their claims that **Statements #10**, **#15**, **#18**, **#19**, **#21**, and **#25** were false for failure to disclose the misconduct alleged in the Indictment; *see*

---

[10] *See also In re Grupo Televisa Sec. Litig.*, 368 F. Supp. 3d 711, 720, 722 (S.D.N.Y. 2019) (representative of parent used subsidiary to facilitate bribery, citing *In re Marsh*); *In re JP Morgan Sec. Litig.*, 363 F. Supp. 2d 595, 627 (S.D.N.Y. 2005) (imputing scienter of company's own senior officers, including Vice Chairman).

Mot. 21-22 (citing unanswered authority concerning cautionary language); and abandon claims that **Statements #3**, **#4**, **#10**, **#14**, **#20** were false for failing to disclose the presence of the Whitefish Provisions in the first PREPA Contract. The remaining statements and arguments are insufficiently pleaded.

### B.    The Remaining Alleged Misstatements Are Not Actionable

**Unpleaded Statements at SAC ¶¶ 107-118** ("Unpleaded Statements"). The Opposition asserts that a "series of statements attributing Mammoth's financial success to its work in Puerto Rico," alleged at "SAC ¶¶ 107-18," are false and misleading. Opp. 22-23. The Unpleaded Statements appear in an SAC section titled "Cobra Is An Important And Material Part Of Mammoth's Business And Operation," SAC at 48, but do not appear in the section titled "The False And Misleading Statements," SAC at 54, and are not followed by any allegations explaining *why* they are false. The Opposition concedes that the SAC's alleged misstatements "[b]egin[] at ¶ 120," which is after the paragraphs in which the Unpleaded Statements appear. Opp. 21. It is well settled that "Plaintiffs may not amend their Complaint"—much less for the fourth time—"by adding factual allegations . . . in opposition to a motion to dismiss." *Scott v. Hormel*, 2019 WL 3935101, at *1, n.2 (W.D. Okla. Aug. 20, 2019) (quotation omitted).[11]

The following addresses statements the Opposition continues to assert are false:

---

[11] Plaintiffs' pleading irregularities also include puzzle pleading. Plaintiffs do not and cannot deny that they quote lengthy statements followed by falsity assertions that purportedly apply (yet could not possibly apply) to the entire quoted statement. That Defendants have responded is irrelevant—it is not Defendants' or the Court's burden to determine which portions of which alleged misstatements are at issue. *See* Opp. 21-22. **Statements #4, #9, #12, #14, #15**, and **#17-#20** should be disregarded. Mot. 17-18.

{S541264;}                                  8

**Statements #1**, **#2**.   As the Opening Brief explained, the SAC pleads that **Statement #1** (and its repetition in **#2**) is false because "the only FEMA official" who was "'in the room'" when the first PREPA Contract was drafted was Tribble.  Mot. 18. Plaintiffs do not dispute that this purported fact appears nowhere in the Indictment— Plaintiffs' only source—and the SAC therefore fails to plead falsity with particularity. The Opposition pivots to assert that **Statements #1** and **#2** were false because FEMA *did not* oversee and approve the first PREPA Contract, and thus Straehla's assertions that FEMA approved it—based on PREPA's representation to Cobra in Article 68 of the first PREPA Contract—were false.  Opp. 24.  But Plaintiffs nowhere address Defendants' arguments that (i) there are no allegations that Straehla could not or did not accept PREPA's contractual representation at face value, and therefore (ii) Plaintiffs fail to plead **Statements #1** and **#2** were made with scienter.  *See* Mot. 19.[12]

**Statements #4**, **#10**, **#11**, **#15**, **#18**, **#25**.  The Opening Brief established that these statements, which were supposedly false for failing to disclose that FEMA did not approve the first PREPA Contract, were made *after* FEMA head Brock Long testified publicly that "we don't approve contracts."  *See* SAC ¶ 63.  Plaintiffs' (unpleaded) response that Mammoth's stock price rose after this testimony, Opp. 25-26, does not

---

[12] Plaintiffs assert that **Statements #5** and **#6** "repeated the misrepresentation in January 2018 that FEMA reviewed the '*original* contract award' when claiming that FEMA purportedly approved Mammoth's rates as reasonable." Opp. 26 (emphasis original).  **Statements #5** and **#6** plainly do not re-assert that FEMA participated in the October 2017 drafting of the first PREPA Contract, but rather refer to a review that was contemporaneous with a cost review around December 23, 2017.  Plaintiffs nowhere plead that review did not occur, and so fail to plead **Statements #5** and **#6** are false.

{S541264;}                                      9

change the fact that the information each of these statements supposedly concealed was public *before the statements were made*.  Mot. 19-20.  If anything, the stock movement indicates that disclosure of information contrary to **Statements #1** and **#2**, which pre-date Long's testimony, caused no investor losses, which means Plaintiffs fail to plead loss causation and materiality (as well as falsity and scienter) as to **Statements #1** and **#2**.

**Statement #2**.  The Opening Brief established that the suspicions of an Internet media outlet do not constitute *facts* sufficient to plead *with particularity* why the portion of **Statement #2** concerning Cobra's previous experience was false.  Mot. 27.  Contrary to Plaintiffs' assertions, Defendants do not dispute the allegations that an Internet journalist failed to locate records concerning Cobra's prior experience.  Opp. 24.  Rather, the Opening Brief highlighted the implausibility of, and unanswered questions raised by, that report, none of which Plaintiffs address, and which render the report insufficient to meet the PSLRA's exacting standard for pleading *why* Mr. Straehla's statement concerning Cobra's previous experience was false.[13]  *See* Mot. 10 (PSLRA standard).

**Statements #9**, **#19**.  The Opening Brief established that these statements about "substantial compliance with applicable regulatory requirements" referred to regulations relating to the *infrastructure business* in which Cobra operates, and were not a general guarantee of compliance with the law.  Mot. 23-24.  Because Plaintiffs fail to identify a

---

[13] Although not included in Plaintiffs' allegations, public reports confirm Cobra's previous experience in the wake of Hurricane Harvey in Houston and Hurricane Irma in Florida, both before Hurricane Maria.  *See* Ex. 8 at 2 (CNN article reporting previous work).  The PSLRA's pleading standard cannot be met with selective Internet innuendo for precisely this reason.

{S541264;}                          10

single "applicable regulatory requirement[]" that Cobra breached, they fail to plead with particularity *why* the assertion of regulatory compliance was false.  Plaintiffs reiterate that the bribery scheme made this assertion false without addressing this argument as to why, in fact, it did not.  Plaintiffs' claim that hiring Patterson "creat[ed] a conflict of interest in violation of the [PREPA Contracts]," Opp. 26, is insufficient for the same reason: Plaintiffs fail to identify any applicable regulation supposedly breached by hiring Patterson.  And, in any case, **Statement #9** pre-dated that hiring by several months.

**Statements #10**, **#11**, **#14**, **#15**, **#18**, **#20**, **#25**.  The Opposition appears to argue (based on paragraph references to the SAC) that these statements are false for warning about "withholding or delayed payments" when Straehla and Layton "knew that payments were not being made," based on Straehla's alleged statements in June 2018 and March 2019.  That Straehla's alleged June 2018 statement is insufficient to support Plaintiffs' claims is addressed *supra* at 3.  And, as of March 15, 2019, investors *did*, in fact, "kn[o]w that payments were not being made" by PREPA to Cobra because Mammoth *disclosed* that fact in its 10-K for 2018.  Mot. 28; SAC ¶ 172 (quoting 10-K); *supra* at 4.  Plaintiffs fail to identify what more Defendants *could* have disclosed.[14]

---

[14] **Statements #10** and **#11** pre-date the June 2018 Tribble e-mail, and so cannot be false for failing to disclose information in that e-mail.  Further, the SAC pleads that only **Statement #25**—not the others identified in the Opposition (by SAC paragraph number)—was supposedly false based on Straehla and Layton's knowledge of non-payment, as allegedly expressed in meetings reported by CW1.  *See* Mot. 3, 7, 13. Plaintiffs' assertion, in the Opposition, that CW1's allegations make other statements false is improper and, regardless, unavailing.  Plaintiffs do not respond to the Opening Brief's argument that **Statements #10**, **#11**, **#14**, **#15**, **#18**, **#20**, and **#25,** as well as **#22** and **#26**, are not actionable because Plaintiffs allege nothing in the PREPA Contracts

{S541264;}                                          11

**Statements #5**, **#13**, **#15**, **#18**, **#25**.  Plaintiffs purport to respond to "attacks on the remaining false statements," referring to pages 24-25 of the Opening Brief, which addressed allegations that these statements are false because Cobra allegedly breached the PREPA Contracts, including by hiring Patterson.  Plaintiffs repeat their assertion that Cobra breached Article 21 and claim that PREPA's knowledge about the hiring process is not relevant.  Opp. 27-28.  But Plaintiffs fail to respond to the Opening Brief's point that Plaintiffs identify no specific requirement of Article 21—which is quoted in the SAC— that Cobra actually breached.  Plaintiffs cannot satisfy their pleading burden by making an assertion of breach that is inconsistent with the contract at issue.  *See* SAC ¶ 43 (quoting Article 21); Mot. 24-25.  Finally, regardless whether Plaintiffs have pleaded a breach of the PREPA Contracts, they fail to plead that the mere existence of a breach made any alleged statement false.  *See* Mot. 23 nn.20 & 22, 26 n.28.[15]

## CONCLUSION

For the foregoing reasons, and those in the Opening Brief, Defendants respectfully request an Order dismissing the SAC's claims against them with prejudice.

---

indicating the misconduct alleged in the Indictment would hinder payment to Cobra, and thus the cautionary language about potential non-payment was not false.  *See* Mot. 21-22.

[15] Plaintiffs' loss causation argument also fails.  Plaintiffs do not support their claim that, as of March 15, 2019, the "bribery scheme was unraveling," given March 15, 2019 is the first day Plaintiffs allege any investigation at all, and plead no facts that Defendants were then aware of it.  Mot. 23.  Plaintiffs concede the last "four remaining loss causation events exposed the bribery scheme," Opp. 29—meaning each discussed the same risk, which is insufficient to plead disclosures to the market.  *See* Mot. 30.

{S541264;}                                              12

Dated: May 4, 2020

Respectfully Submitted,

*/s/ Harry A. Olivar, Jr.*
Harry A. Olivar, Jr. (*pro hac vice*)
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Telephone: (213) 443-3000
Email: harryolivar@quinnemanuel.com

Michael B. Carlinsky (*pro hac vice*)
Jacob J. Waldman (*pro hac vice*)
**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Email: michaelcarlinsky@quinnemanuel.com
        jacobwaldman@quinnemanuel.com

and

Robert G. McCampbell, OBA No. 10390
Lance E. Leffel, OBA No. 19511
**GABLE GOTWALS**
One Leadership Square, 15th Floor
211 North Robinson
Oklahoma City, OK 73102
Telephone: (405) 235-3314
Email: RMcCampbell@Gablelaw.com
        LLeffel@Gablelaw.com

*Attorneys for Defendants Mammoth Energy
Services, Inc., Arty Straehla, and Mark Layton
and*

{S541264;}                      13

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of May, 2020, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing. Based on the records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to all listed ECF registrants.

/s/ *Jacob J. Waldman*

{S541264;}                    14