**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA**

IN RE MAMMOTH ENERGY
SERVICES, INC. SECURITIES
LITIGATION

Case No. CIV-19-522-J

CLASS ACTION

**LEAD PLAINTIFFS' MOTION AND OPENING BRIEF IN SUPPORT OF FINAL
APPROVAL OF THE SETTLEMENT AND PLAN OF ALLOCATION OF
<u>SETTLEMENT PROCEEDS</u>**

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   FACTUAL AND PROCEDURAL HISTORY ........................................................ 4

III.  STANDARDS GOVERNING FINAL APPROVAL: RULE 23(e) AND
      *RUTTER* ................................................................................................. 4

IV.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ................... 7

      A.    Lead Plaintiff and Lead Counsel Have Adequately Represented the
            Class ................................................................................................. 7

      B.    The Settlement Is the Product of Arm's Length Negotiations Between
            Experienced Counsel ...................................................................... 11

      C.    The Relief Provided for the Class is Adequate ............................ 13

      D.    All Settlement Class Members Are Treated Equitably ............... 22

V.    THE NOTICE PROGRAM SATISFIES RULE 23 AND DUE PROCESS ......... 22

VI.   THE PLAN OF ALLOCATION IS FAIR AND REASONABLE ....................... 24

VII.  THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS ................... 26

VIII. CONCLUSION ................................................................................................. 27

# TABLE OF AUTHORITIES

## Cases

*In re Advanced Battery Techs., Inc. Secs. Litig.*,
    298 F.R.D. 171 (S.D.N.Y. 2014)...................................................................... 27

*Alvarado Partners, L.P. v. Mehta*, 723 F. Supp. 540 (D. Colo. 1989) ...................... 10, 13

*In re* Bear Stearns Cos., Inc. Sec., Derivative & ERISA Litig.,
    909 F. Supp. 2d 259 (S.D.N.Y. 2012) ............................................................ 28

*Belote v. Rivet Software, Inc.*, No. 12-CV-02792-WYD-MJW, 2014 WL 3906205 (D.
    Colo. Aug. 11, 2014)...................................................................................... 17

*Carson v. Am. Brands, Inc.*, 450 U.S. 79 (1981) ............................................................ 10

*Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 F. App'x 752 (10th Cir.), *cert.
    denied sub nom. Gonzalez v. Elna Sefcovic, LLC*, 141 S. Ct. 851 (2020)................ 9, 17

*Fager v. CenturyLink Commc'ns, LLC*, 854 F.3d 1167 (10th Cir. 2016)...................... 7, 9

*Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015)...................... 22

*Goldstein v. MCI WorldCom*, 340 F.3d 238 (5th Cir. 2003) ............................................ 21

*Gradie v. C.R. England, Inc.*, No. 2:16-CV-00768-DN, 2020 WL 6827783 (D. Utah Nov.
    20, 2020)........................................................................................................... 9

*Grady v. de Ville Motor Hotel, Inc.*, 415 F.2d 449 (10th Cir. 1969) ................................. 7

*Harris v. Chevron U.S.A., Inc.*, No. CIV-15-0094-PRW, 2019 WL 5846917 (W.D. Okla.
    July 29, 2019) ................................................................................... 5, 7, 11, 13

*Hill v. Kaiser-Francis Oil Co.*, No. CIV-09-07-R, 2013 WL 12090205 (W.D. Okla. July
    30, 2013).................................................................................................... 5, 28

*Hsu v. Puma Biotech., Inc.*, No. 8:15-cv-00865-AG-ASK (C.D. Cal.) (ECF No. 734-2) 22

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 2006 WL 903236 (S.D.N.Y. Apr. 6,
    2006).............................................................................................................. 20

*In re Apple Computer Sec. Litig.*, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) .............. 22

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011)
    ....................................................................................................................... 22

*In re Carrier IQ, Inc., Consumer Privacy Litig.*, 2016 WL 4474366 (N.D. Cal. Aug. 25, 2016) ................................................................................................................ 24

*In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001) ................................................... 21

*In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672 (D. Colo. 2014) .................................... 25, 27

*In re Crocs, Inc. Sec. Litig.*, No. 07-CV-02351-PAB-KLM, 2013 WL 4547404 (D. Colo. Aug. 28, 2013) ............................................................................................. 16, 17, 19

*In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423 (E.D. Pa. 2001) .......................... 28

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995) ................................................................................................................ 19

*In re IMAX Sec. Litig.*, 283 F.R.D. 178 (S.D.N.Y. 2012) .................................................................................. 28

*In re Molycorp, Inc. Sec. Litig.*, No. 12-CV-00292-RM-KMT, 2017 WL 4333997 (D. Colo. Feb. 15, 2017), *report and recommendation adopted,* No. 12-CV-00292-RM-KMT, 2017 WL 4333998 (D. Colo. Mar. 6, 2017) ................................................................. 27

*In re Nat'l Football League Players' Concussion Injury Litig.*, 821 F.3d 410 (3d Cir. 2016) ............................................................................................................................. 12, 13

*In re Polaroid ERISA Litig.*, 240 F.R.D. 65 (S.D.N.Y. 2006) ......................................... 10

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283 (3d Cir. 1998) ................................................................................................................ 17

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d 1143 (D. Colo. 2009) ...... 19

*In re Samsung Top-load Washing Mach. Mktg., Sales Practices & Prod. Liab. Litig.*, No. 17-ML-2792-D, 2020 WL 2616711 (W.D. Okla. May 22, 2020) .................... 12, 13, 15

*In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178 (D.N.M. 2012) .. 20, 21, 24

*In re Viropharma Inc. Sec. Litig.*, No. CV 12-2714, 2016 WL 312108 (E.D. Pa. Jan. 25, 2016) ................................................................................................................ 18

*In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319 (S.D.N.Y. 2005) ........................ 28

*M.B. v. Howard*, No. 18-2617-DDC-GEB, 2021 WL 295882 (D. Kan. Jan. 28, 2021) ..... 9

*Martinez v. Reams*, No. 20-CV-00977-PAB-SKC, 2020 WL 7319081 (D. Colo. Dec. 11, 2020) ................................................................................................................ 10

*McClintock v. Continuum Produce Servs., LLC*, No. CIV-17-259-JAG, 2020 WL 5524790 (E.D. Okla. May 19, 2020), *report and recommendation adopted*, No. 6:17-CV-00259-JAG, 2020 WL 3022744 (E.D. Okla. June 4, 2020) ..................................................... 28

*Nakkhumpun v. Taylor*, No. 12-CV-01038-CMA-CBS, 2015 WL 6689399 (D. Colo. Nov. 3, 2015) ........................................................................................................................ 12

*Newman v. Stein*, 464 F.2d 689 (2d Cir. 1972) ................................................................. 19

*O'Dowd v. Anthem, Inc.*, No. 14-CV-02787-KLM-NYW, 2019 WL 4279123 (D. Colo. Sept. 9, 2019) ........................................................................................................ 13, 25

*Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) ........................................ 22

*Rose v. Travelers Home and Marine Ins. Co.*, No. CV 19-977, 2020 WL 4059613 (E.D. Pa. July 20, 2020) ..................................................................................................... 21

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180 (10th Cir. 2002) ...................... 8

*Stanforth v. Farmers Ins. Co. of Ariz.*, No. 1:09-CV-01146 RB/RHS, 2014 WL 12625578 (D.N.M. June 25, 2014) ...................................................................................... 6

*Strougo v. Bassini*, 258 F. Supp. 2d 254 (S.D.N.Y. 2003) .............................................. 19

*Tennille v. Western Union Co.*, 785 F.3d 422 (10th Cir. 2015) ....................................... 9

*Tumpa v. IOC-PA, LLC*, 2021 WL 62144 (W.D. Pa. Jan. 7, 2021) ................................. 19

*Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003 (D. Colo. 2014) .............................. 7

*Zimmer Paper Prods, Inc. v. Berger Montague, P.C.*, 758 F.2d 86 (3d Cir. 1985) .......... 27

**Statutes**

15 U.S.C. § 78u-4 ........................................................................................................... 26

Fed. R. Civ. P. 23(e) ............................................................................................... *passim*

**Treatises**

Manuel on Complex Litig. 2d § 30.44 ............................................................................ 19

Lead Plaintiffs Daniel Furia, Vincent Furia, and Sharon Furia ("Lead Plaintiffs"), on behalf of themselves and all others similarly situated, respectfully submit this motion seeking an Order (i) granting final approval of the proposed Settlement in this Action; (ii) approving the proposed Plan of Allocation for the net proceeds of the Settlement; and (iii) finally certifying the Settlement Class for settlement purposes only.[1]

## I.    INTRODUCTION

Lead Plaintiffs and Lead Counsel believe that the recovery of $11 million in cash is an excellent result for the Settlement Class and merits the Court's approval. The factual background and claims, as well as the procedural history of this Action, are set forth in Lead Plaintiffs' Motion for Preliminary Approval of Settlement, ECF No. 130, and are incorporated herein. In short, Lead Plaintiffs allege that Defendants concealed a scheme to use Mammoth's wholly-owned subsidiary, Cobra Acquisitions, LLC, to bribe Federal Emergency Management Agency officials to steer $1.8 billion in business to Cobra and Mammoth to rebuild Puerto Rico's power grid in the aftermath of Hurricane Maria. Members of the class lost money in their Mammoth investments as the bribery scheme was revealed to the public, including through the indictment of Defendant Keith Ellison. The Settlement, the terms of which are set forth in the Stipulation, ECF No. 130-1, resolves all

---

[1] All capitalized terms not defined herein have the same meanings ascribed to them in the Stipulation and Agreement of Settlement filed with the Court on April 30, 2021 (ECF No. 130-1, the "Stipulation"), or the concurrently-filed Declaration of Jeffrey C. Block in Support of Lead Plaintiff's Motion For: (1) Final Approval of the Settlement and Plan of Allocation of Settlement Proceeds; (2) Award of Attorneys' Fees and Expenses; and (3) Award of Contribution Award to Lead Plaintiff (the "Block Declaration" or "Block Decl."). Unless otherwise noted, all citations herein to "¶__" and "Ex.__" refer, respectively, to paragraphs in, and exhibits to the Block Declaration.

of Lead Plaintiff's claims against Mammoth Energy Services, Inc. ("Mammoth" or the "Company"), Arty Straehla, Mark Layton, and Keith Ellison (collectively, "Defendants").

The Settlement was reached after eighteen months of vigorous litigation, during which Lead Counsel reviewed nearly 90,000 internal Mammoth documents and engaged in extensive arm's-length settlement negotiations with a mediation session facilitated by a formal federal district judge. As discussed herein, Lead Plaintiffs' damages expert estimated that the total recoverable damages under the shortened class period upheld by the Court's Order (ECF No. 121) granting in part and denying in part defendants' motions to dismiss were $14.9 million. And under the best case scenario—under which Lead Plaintiffs successfully amended their allegations to restore a class period beginning October 20, 2017—total maximum available damages would be approximately $90.7 million. Thus, the $11 million settlement represents approximately 75% of the maximum presently available damages, and 12.1% of the total maximum damages potentially available in this Action.

Lead Counsel firmly believes that this Settlement is an excellent recovery for the Settlement Class based on their investigation, past experience in litigating similar cases, the significant risk, expense, and uncertainty of continued litigation, and the serious dispute between the Parties concerning the merits of the case and damages. *See Hill v. Kaiser-Francis Oil Co.*, No. CIV-09-07-R, 2013 WL 12090205, at *2-3 (W.D. Okla. July 30, 2013) ("The Settlement Agreement fairly reflects the complexity of the claims in this litigation, the duration of the litigation and extent of discovery, and the balance between the benefits of settlement which inure to the Plaintiff Class as compared to the costs and

risks associated with continued prosecution of this action."). Members of the Settlement Class agree. Pursuant to the Preliminary Approval Order, Notice was mailed to 18,842 potential Settlement Class Members, and the Summary Notice was published in *Investor's Business Daily* and over *PR Newswire* on June 7, 2021. To date, no Settlement Class Members have opted out of the Settlement. Although the objection deadline is August 30, 2021, to date, not one Settlement Class Member has filed an objection to any aspect of the Settlement or the Plan of Allocation. This is strong evidence that the Settlement is fair, adequate and reasonable. *Stanforth v. Farmers Ins. Co. of Ariz.*, No. 1:09-CV-01146 RB/RHS, 2014 WL 12625578, at *7 (D.N.M. June 25, 2014) (finally approving class action settlement, noting that the existence of "two objections and 252 optouts" out of "850,000 individual potential Settlement Class Members" was "statistically negligence, further supporting the Court's conclusion that the Settlement is fair and adequate to the Settlement Class Members").[2]

A described below, and in the accompanying Declaration of Jeffrey C. Block (the "Block Declaration"), the decision to settle was well-informed by the successes and setbacks in Lead Plaintiffs' case to date, as well as the significant delay, risk, and uncertainty of continued litigation. Lead Plaintiffs respectfully requests that the Court certify the Settlement Class and finally approve the Settlement and Plan of Allocation.

---

[2] If any objections or requests for exclusions are received after the date of this submission, Lead Counsel will address them in the reply brief, which will be filed with the Court no later than September 14, 2021.

## II.     FACTUAL AND PROCEDURAL HISTORY

The Block Declaration is an integral part of this submission. The Court is respectfully referred to it for a detailed description of the factual and procedural history of the litigation, the claims asserted, the extensive investigation undertaken, the settlement negotiations, and the numerous risks and uncertainties presented in this litigation.

## III.    STANDARDS GOVERNING FINAL APPROVAL: RULE 23(e) AND *RUTTER*

Judicial policy strongly favors settlement of class actions. *See Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003, 1007 (D. Colo. 2014) ("[C]ourts have held that the presumption in favor of voluntary settlement agreements 'is especially strong in class actions and other complex cases where substantial resources can be conserved by avoiding formal litigation.'"); *see also Grady v. de Ville Motor Hotel, Inc.*, 415 F.2d 449, 451 (10th Cir. 1969) ("It is well settled, as a matter of sound policy, that the law should favor the settlement of controversies, and should not discourage settlement by subjecting a person who has compromised a claim to the hazard of having the settlement proved in a subsequent trial of another law suit by another person asserting a claim related to the controversy settled.").[3] However, courts may approve a proposed class action settlement "only after a hearing and only on finding that it is fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(2); *Fager v. CenturyLink Commc'ns, LLC*, 854 F.3d 1167, 1174 (10th Cir. 2016).

In making this determination, Rule 23(e)(2), as amended, requires courts to consider the following factors:

---

[3] Unless otherwise indicated, all citations are omitted and emphasis is added.

(A)    have the class representatives and class counsel adequately represented the class;

(B)    was the proposal negotiated at arm's length;

(C)    is the relief provided for the class adequate, taking into account:

(i)    the costs, risks, and delay of trial and appeal;
(ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)  the terms of any proposed award of attorneys' fees, including timing of payment; and

(iv)   any agreement required to be identified under Rule 23(e)(3); and

(D)    does the proposal treat class members equitable relative to each other.

Fed. R. Civ. P. 23(e)(2). Consistent with these factors, courts in the Tenth Circuit have long considered the following factors set forth in *Rutter & Wilbanks Corp. v. Shell Oil Co.* (the "*Rutter*" factors) in deciding whether to approve a class action settlement under Rule 23(e)(2):

(1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable.

314 F.3d 1180, 1188 (10th Cir. 2002).

Since the amendments to Rule 23(e), courts in this district have evaluated proposed settlements under the Rule 23(e)(2) factors, rather than the Tenth Circuit's traditional "*Rutter*" factors. *See Harris v. Chevron U.S.A., Inc.*, No. CIV-15-0094-PRW, 2019 WL 5846917, at *3 (W.D. Okla. July 29, 2019) ("If the proposed settlement class satisfies the requirements of Rules 23(a) and (b), then the Court must separately evaluate whether the

settlement agreement is 'fair, reasonable, and adequate' under Rule 23(e)."); *see also Gradie v. C.R. England, Inc.*, No. 2:16-CV-00768-DN, 2020 WL 6827783, at *9 (D. Utah Nov. 20, 2020) (applying Rule 23(e)(2) factors to determine whether a settlement agreement is fair, reasonable, and adequate); *Fager*, 854 F.3d at 1174 (noting that the "[p]roposed Fed. R. Civ. P. 23 advisory committee's note to 2016 proposed rules, subdivision (e)(2) … caution[] against focusing on lengthy list of factors and losing sight of central concerns."); *but see Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 F. App'x 752, 757 (10th Cir.), *cert. denied sub nom. Gonzalez v. Elna Sefcovic, LLC*, 141 S. Ct. 851 (2020) (identifying Rule 23(e)(2) as the standard but applying the four factors outlined in *Rutter* to evaluate a settlement without acknowledging the amendments to Rule 23); *M.B. v. Howard*, No. 18-2617-DDC-GEB, 2021 WL 295882, at *4 (D. Kan. Jan. 28, 2021) (noting that *Elna Sefcovic* "appl[ied] Rutter factors following the 2018 amendments to Fed. R. Civ. P. 23(e)"). Accordingly, Lead Plaintiffs' discussion of the fairness, reasonableness, and adequacy of the Settlement focuses primarily on the four Rule 23(e)(2) factors, while also addressing the subsumed *Rutter* factors.[4]

The Court has broad discretion in approving class action settlements. *Tennille v. Western Union Co.*, 785 F.3d 422, 434 (10th Cir. 2015) ("We review the district court's decision to approve a class settlement for an abuse of discretion."). But in applying the

---

[4] The Advisory Committee notes to the 2018 amendments explain that the changes to Rule 23(e) did not "displace any factor" generated by each circuit, "but rather [sought] to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e) advisory committee's note to 2018 amendment.

pertinent factors, the Court need not reach conclusions about the merits of the case. *See Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981) ("Courts judge the fairness of a proposed compromise by weighing the plaintiff's likelihood of success on the merits against the amount and form of relief offered in settlement . . . . They do not decide the merits of the case or resolve unsettled legal questions."). Indeed, "[c]ourts have consistently refused to substitute their business judgment for that of counsel and the parties." *Alvarado Partners, L.P. v. Mehta*, 723 F. Supp. 540, 548 (D. Colo. 1989).

## IV.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A.    Lead Plaintiff and Lead Counsel Have Adequately Represented the Class

Pursuant to Rule 23(e)(2)(A), Lead Plaintiffs and Lead Counsel have adequately represented the Settlement Class by zealously advocating on their behalf during both the litigation of this Action and its settlement. Lead Plaintiffs' claims are typical of and coextensive with the claims of the Settlement Class, and they have no antagonistic interests; rather, Lead Plaintiffs' interests in obtaining the largest possible recovery are aligned with the other Settlement Class Members. *See Martinez v. Reams*, No. 20-CV-00977-PAB-SKC, 2020 WL 7319081, at *6 (D. Colo. Dec. 11, 2020) (representation found adequate where "there is nothing in the record or proposed settlement agreement that raises obvious concerns regarding interclass conflicts"); *Harris*, 2019 WL 5846917, at *6 (same); *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members.").

Lead Plaintiffs also retained counsel who are highly experienced in securities litigation, and who have a long and successful track record of representing investors in such cases. Lead Counsel and Liaison Counsel have successfully prosecuted securities class actions and complex litigation in federal and state courts throughout the country. *See* Ex. 2, Ex. A & Ex. 3, Ex. A. Lead Counsel vigorously pursued this Action from the outset. By the time the Settlement was reached, Lead Counsel had, among other things: (i) reviewed and analyzed Mammoth's SEC filings, press releases, investor conference call transcripts, and other public statements, as well as (a) publicly available documents, reports, announcements, and news articles concerning Mammoth, and (b) research reports prepared by securities and financial analysts regarding Mammoth; (ii) worked with a damages and loss causation expert to analyze Mammoth's stock price movement; (iii) drafted the comprehensive, factually-detailed second amended complaint ("SAC") against the Defendants; (iv) thoroughly briefed oppositions to Defendants' motions to dismiss; (v) reviewed nearly 90,000 documents internal to Mammoth, including voluminous emails, billing summaries, invoices, and third party contracts related to Cobra's contracts in Puerto Rico ; (vi) drafted and exchanged detailed mediation statements that set forth the facts of the case and analyzed the strengths of the Action and potential damages; (vii) engaged in a full day mediation session overseen by Hon. Michael Burrage, a former federal district judge and experienced securities litigator; (viii) drafted a never-filed third amended complaint based on review of the nearly 90,000 documents; (ix) conducted protracted and time-intensive negotiations regarding the terms of the proposed Settlement; and (x) drafted

the initial versions of the Stipulation and exhibits. Subsequently, Lead Counsel drafted the motion for preliminary approval and the instant motion for final approval.

Lead Counsel's thorough and efficient prosecution of this Action led to the well-informed and substantial Settlement without the delays and significant costs associated with formal discovery in complex class actions. *See In re Nat'l Football League Players' Concussion Injury Litig.*, 821 F.3d 410, 436, 439 (3d Cir. 2016) (affirming approval where decision to settle informed by informal discovery and explaining that "requiring parties to conduct formal discovery before reaching a proposed class settlement would take a valuable bargaining chip—the costs of formal discovery itself—off the table during negotiations."); *Gradie*, 2020 WL 6827783, at *9 (finding representation adequate, even though the parties did not engage in formal discovery, where "[i]n preparation for the mediation that preceded this Settlement, Lead Counsel reviewed, among other things, many thousands of pages of documents and other information amounting to multiple gigabytes of data"); *In re Samsung Top-load Washing Mach. Mktg., Sales Practices & Prod. Liab. Litig.*, No. 17-ML-2792-D, 2020 WL 2616711, at *13 (W.D. Okla. May 22, 2020) (finding representation adequate where the pre-class certification settlement agreement "was reached after three months of negotiations" and plaintiffs' claims had been vigorously litigated before settlement discussions); *Nakkhumpun v. Taylor*, No. 12-CV-01038-CMA-CBS, 2015 WL 6689399, at *6 (D. Colo. Nov. 3, 2015) (finding settlement fairly and honestly negotiated where the parties had "conducted extensive factual investigations and thorough legal analysis," had "fully briefed Defendants' motion to

dismiss," and "consulted with experts and engaged in mediation early in the case with a retired United States district judge").

Lead Plaintiffs have also diligently represented the interests of the Settlement Class. Lead Plaintiffs: (1) reviewed the first amended complaint and SAC, and approved their inclusion as Lead Plaintiff and named plaintiffs to this Action; (2) participated in numerous discussions with Lead Counsel throughout the Action; (3) supervised and monitored the progress of court proceedings; and (4) participated in the settlement process and provided instructions for the resolution of this Action. Lead Plaintiffs therefore had an informed understanding of the strengths and weaknesses of the claims, and support the Settlement. *See* ¶63 & Ex. 4 ¶6; *see also In re NFL Players*, 821 F.3d at 430 (affirming district court's finding that "class representatives ably discharged their duties by closely following the litigation, authorizing the filing of the Class Action Complaint, and approving the final settlement."); *O'Dowd v. Anthem, Inc.*, No. 14-CV-02787-KLM-NYW, 2019 WL 4279123, at *14 (D. Colo. Sept. 9, 2019) (finding that class representative adequately represented the class by being a "diligent, attentive, and unwavering advocate for the interests of the Class" and subjecting herself to discovery).

Finally—as is also a separate factor under *Rutter*—Lead Counsel has thoroughly evaluated the strengths and weaknesses of this Action and firmly believes that the Settlement represents an excellent result for the Settlement Class. *See Samsung*, 2020 WL 2616711 ("The parties' view of a settlement as fair and reasonable is to be given considerable weight."); *Alvarado Partners*, 723 F. Supp. at 548 ("Courts have consistently

refused to substitute their business judgment for that of counsel and the parties."). Lead Plaintiffs and Lead Counsel have, therefore, adequately represented the Settlement Class.

### B.   The Settlement Is the Product of Arm's Length Negotiations Between Experienced Counsel

Rule 23(e)(2)(B) evaluates whether the proposed settlement "was negotiated at arm's length." Similarly, *Rutter* considers whether the proposed settlement was fairly and honestly negotiated. As noted above, the proposed Settlement was achieved only after a full-day mediation session overseen by a former United States District Judge, Mr. Burrage, following Defendants' production of nearly 90,000 internal company documents, and followed by extensive arm's length negotiations drawn out over the course of five months. *Howard*, 2021 WL 295882, at *4 (finding settlement agreement fairly and honestly negotiated where "the parties reached this settlement following meaningful exchange of information[,] Lead Counsel's investigation" and mediation drawn out over months); *Harris*, 2019 WL 5846917, at *3 (finding settlement agreement fair, adequate, and reasonable where "[t]h[e] matter was not settled on the first mediation attempt but was only settled after months of additional negotiations following the same"). As part of those discussions, Lead Counsel and Defendants' Counsel prepared submissions concerning, among other things, their respective views of the Action's merits and damages on a class-wide basis. The negotiations focused on heavily disputed issues. Specifically, the parties disputed: (1) whether Lead Plaintiffs adequately alleged materially false and misleading statements, scienter and loss causation; (2) whether Lead Plaintiffs would be able to certify a class; (3) whether Lead Plaintiffs' claims would survive summary judgment or at trial;

and (4) whether the Settlement Class suffered damages and, if so, the amount of damages. These, as well as many other issues, were explored in-depth and with substantial input from Judge Burrage.

The Court's January 26, 2021 Order altered the negotiation landscape. The truncated class period beginning March 15, 2019 severely reduced the class's recoverable damages but also lifted the stay of discovery, giving Lead Plaintiffs license to use the nearly 90,000 documents produced by Mammoth in connection with the mediation. Review of these documents left Lead Counsel with a strong belief that evidence supported extending the class period back to at least June 18, 2016, the date of the secondary public offering, if not to the original October 19, 2017 start date. This would have restored the initially alleged class's damages, but only if the Court allowed the filing of an amended complaint and only if the new allegations survived additional motions to dismiss. Many uncertainties and significant litigation risks remained.

The negotiations leading up to the settlement agreement were conducted at arm's length by experienced counsel who were well-aware of the strengths and weaknesses of the case. Lead Counsel have many years of experience litigating securities fraud class actions and have negotiated score of class settlements, which have been approved in courts throughout the country. *See* Ex. 2, Ex. A & Ex. 3, Ex. A. Defendants are represented by Quinn Emanuel Urquhart & Sullivan, LLP, a highly respected firm with a strong reputation for tenacious litigation of all complex matters, including the defense of class actions. Accordingly, this factor weighs in favor of preliminary approval. *See Samsung*, 2020 WL 2616711, at *13 ("The presence of the mediator weighs heavily in favor of" the arm's-

length negotiation "requirement being met."); *Harris*, 2019 WL 5846917, at *3 ("Utilization of an experienced mediator during the settlement negotiations supports a finding that the settlement is reasonable, was reached without collusion and should therefore be approved.").

### C.     The Relief Provided for the Class is Adequate

Under Rule 23(e)(2)(C), when evaluating the fairness, reasonableness, and adequacy of a settlement, the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C). The second and third *Rutter* factors—whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt, and whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation—are subsumed within this inquiry.

This factor is satisfied where the settlement provides significant immediate relief for the Class and where the "value of immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation." *In re Crocs, Inc. Sec. Litig.*, No. 07-CV-02351-PAB-KLM, 2013 WL 4547404, at *12 (D. Colo. Aug. 28, 2013). That is certainly the case here, where the Parties face not only significant merits and damages discovery, extensive motion practice concerning further amendments to the complaint, class certification and summary judgment, but a potential trial and subsequent appeal, which would significantly add to the length and resources required to resolve the Action on the merits. *See generally In re Prudential Ins. Co. Am. Sales Practice Litig. Agent*

*Actions*, 148 F.3d 283, 318 (3d Cir. 1998) (settlement was favored where "the trial of this class action would be a long, arduous process requiring great expenditures of time and money on behalf of both parties and the court"). *Belote v. Rivet Software, Inc.*, No. 12-CV-02792-WYD-MJW, 2014 WL 3906205, at *4 (D. Colo. Aug. 11, 2014) (finding settlement favored where there is "no certainty" of recovery, "additional discovery would be required" and defendant "likely would file a motion for summary judgment")

The "time and costs inherent in complex securities litigation" such as this are significant, and here – where there is "the prospect of some recovery versus no recovery," *Crocs*, 2013 WL 4547404, at *12, the substantial immediate recovery outweighs the possibility of future relief after lengthy, expensive, and uncertain litigation. *See Elna Sefcovic,* 807 F. App'x at 759 (finding class settlement fair, in part, because "the immediate recovery was more valuable than the mere possibility of a more favorable outcome after further litigation" due to the uncertain outcome of the litigation and immediate partial recovery of losses).

The $11 million cash Settlement Amount is well within the range of reasonableness under the circumstances, and should be approved by the Court. Here, using the class period for the period upheld by the Court, from March 15, 2019 through June 5, 2019, Lead Plaintiffs' damages expert estimated that total recoverable damages were $14.9 million. Thus, based on the sustained class period, this settlement represents almost 75% of total recoverable damages.

Lead Plaintiffs, however, would have attempted to amend their complaint to bring back claims setting out a class period beginning October 20, 2017. If Lead Plaintiffs were

14

successful in doing so—and of course there is no assurance that the Court would permit another amendment or that the new allegations would not be dismissed yet again—and if a class were certified, if Defendants' likely summary judgment motion were denied, and if, after a jury trial, the Court and jury accepted Lead Plaintiffs' damages theory (including proof of loss causation, which was hotly contested at mediation)—*i.e.*, Lead Plaintiffs' **best case scenario**—the total **maximum** damages would be approximately $90.7 million. Thus, the Settlement Amount represents approximately 12.1% of the total **maximum** damages **potentially** available in this Action.

In comparison, the median recovery in securities class actions in 2020 was approximately 1.7% of estimated damages. *See* Ex. 5, at 20, Fig. 16 (Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review*, NERA (Jan. 25, 2021)). This settlement far exceeds comparable securities class action settlements. As such, the "proposed Settlement is reasonable considering the best possible recovery for the Settlement Class and the risks of further litigation." *See In re Viropharma Inc. Sec. Litig.*, No. CV 12-2714, 2016 WL 312108, at *13-14 (E.D. Pa. Jan. 25, 2016) (citing historical median settlements as a percentage of recovery and finding that settlement reflecting approximately 9-10% of maximum estimated losses weighed in favor of approval).

Moreover, had Defendants prevailed on any motion(s) for class certification or at summary judgment—or had the Court or a jury later accepted Defendants' loss causation arguments—recoverable damages would have been substantially reduced or completely eliminated. Consequently, the amount recovered, when balanced against the risks of

continued litigation, weighs strongly in favor of preliminary approval. *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 806 (3d Cir. 1995) (explaining that in assessing reasonableness, the Court compares the present value of the damages plaintiffs would likely recover if successful—appropriately discounted for the risk of not prevailing—with the amount of the proposed settlement, which "generate[s] a range of [approvable] reasonableness") (citing Manuel on Complex Litig. 2d § 30.44; *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

### 1.      The Cost, Risk, and Delay of Trial and Appeal

"The greater the inherent complexity and likely expense associated with litigating a case to its conclusion, the more likely it is that the court will find a proposed settlement to be fair[.]" *Tumpa v. IOC-PA, LLC*, 2021 WL 62144, at *8 (W.D. Pa. Jan. 7, 2021). Securities fraud cases are inherently complex and frequently take an exceptionally long time to litigate, in part because they often involve significant post-trial motions and appeals. *See, e.g.*, *Crocs*, 2013 WL 4547404, at *12 (quoting *Strougo v. Bassini*, 258 F. Supp. 2d 254, 258 (S.D.N.Y. 2003)) ("It is 'beyond cavil that continued litigation in this multi-district securities class action would be complex, lengthy, and expensive, with no guarantee of recovery by the class members.'"); *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 625 F. Supp. 2d 1143, 1149 (D. Colo. 2009) ("There are few simple class action cases involving securities law. This area of law may not be novel, but it generally is complex and difficult."). Given the "notorious complexity" of securities class actions, settlement is often appropriate because it "circumvents the difficulty and uncertainty

inherent in long, costly trials." *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. MDL 1500, 02 Civ. 5575(SWK), 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006).

Here, there is no question that continued litigation would have been costly, risky, and drawn out. Although Lead Plaintiffs succeeded in defeating Defendants' motions to dismiss, in part, the Court severely curtailed the class period by dismissing all claims premised upon Defendants' actions prior to March 15, 2019. Thus, Lead Plaintiffs' first obstacle was to receive leave to file, and then to defend, a third amended complaint restoring the original class period. Lead Plaintiffs then faced the inevitable challenge of overcoming Defendants' summary judgment argument that the false statements and omissions sustained by the Court would not withstand scrutiny once the record included the actual communications and accounting records referenced and witness testimony.

The Settlement avoids the substantial risks, costs, and delays that would necessarily follow Lead Plaintiffs' continued litigation of this Action, which would entail class certification, intensive discovery, summary judgment, trial, and likely appeals of any class certification order or judgment after trial. *See In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1242 (D.N.M. 2012) ("Pursuing the litigation further would require significant judicial and party resources to complete motions for summary judgment, [*Daubert* motions], and motions in limine. Any of those decisions could then be appealed to the Tenth Circuit along with any jury verdict that might be returned…. Additionally, without the Settlement, there is no guarantee that there will be funds available to satisfy any jury verdict that might be returned in the class' favor."); *see also Rose v. Travelers Home and Marine Ins. Co.*, No. CV 19-977, 2020 WL 4059613, at *7 (E.D. Pa. July 20,

2020) (settlement provided "substantial relief" because "[t]here is no guarantee that the Court would have certified a litigation class[,]" and the settlement "ensures" relief for settlement class members with valid claims).

Even if Lead Plaintiffs were successful in establishing liability at trial, they would still face substantial risks in proving loss causation and damages. Defendants made clear that they intended to challenge the alleged corrective disclosures. Issues relating to loss causation and damages would also have likely come down to a contested and unpredictable "battle of the experts." *Thornburg*, 912 F. Supp. 2d at 1242; *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("[E]stablishing damages at trial would lead to a 'battle of the experts' with each side presenting its figures to the jury and with no guarantee whom the jury would believe."). Accordingly, in the absence of a settlement, there was a very real risk that the Class would have recovered an amount significantly less than the total settlement amount – or even nothing at all.

While Lead Plaintiffs are confident in the merits of their case, success is never guaranteed. *See Goldstein v. MCI WorldCom*, 340 F.3d 238 (5th Cir. 2003) (affirming dismissal with prejudice of securities fraud class action against Bernard Ebbers and WorldCom arising out of a massive securities fraud that resulted in a $685 million write-off of accounts receivable, for which Ebbers was later convicted). Lead Plaintiffs and Lead Counsel recognize the significant risk, time and expense involved in prosecuting the claims against Defendants through class certification, completion of fact and expert discovery, summary judgment, trial, and subsequent appeals, as well as the inherent difficulties and delays complex litigation like this entails. *See, e.g.*, *Glickenhaus & Co. v. Household Int'l,*

*Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation on loss causation grounds and error in jury instruction).[5] Even success at trial carries the substantial risk of reduced recovery. *See e.g., Hsu v. Puma Biotech., Inc.*, No. 8:15-cv-00865-AG-ASK (C.D. Cal.) (ECF No. 734-2) (press release highlighting that in first federal securities class action to reach a verdict in nearly ten years, jury returned a verdict resulting in total damages of $9 to $18 million in a case where "Plaintiffs' estimated potential class-wide damages exceeded $1.1 billion.").

There was, therefore, a very significant risk that continued litigation might yield a smaller recovery—or indeed no recovery at all—several years in the future. The substantial payment of $11,000,000 by the Defendants, particularly when viewed in the context of the risks and the uncertainties involved in this litigation, clearly weighs heavily in favor of approving the Settlement.

### 2. Other Factors Established By Rule 23(e)(2)(C) Support Final Approval

Under Rule 23(e)(2)(C), courts also must consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of attorneys' fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). Each of

---

[5] *See also Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of $81 million for plaintiffs); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) (granting defendants' motion for judgment as a matter of law following plaintiffs' verdict); *In re Apple Computer Sec. Litig.*, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) (overturning jury verdict for plaintiffs after extended trial).

these factors supports the Settlement's approval.

First, pursuant to Rule 23(e)(2)(C)(ii), the method for processing Settlement Class Members' claims and distributing relief to eligible claimants includes well-established, effective procedures for processing claims and efficiently distributing the Net Settlement Fund. *See* Section VI, *infra*. Here, the Court-approved Claims Administrator, Angeion Group ("Angeion"), will review and process claims under the guidance of Lead Counsel, allow claimants an opportunity to cure any deficiencies in their claims or request the Court to review a denial of their claims, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court-approval. ¶¶8, 42 & Ex. 1 ¶2. Claims processing like the method proposed here is standard in securities class action settlements as it has been long found to be effective, as well as necessary insofar as neither Lead Plaintiffs nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund.[6] *See* Ex. 1 ¶¶4-8.

Second, pursuant to Rule 23(e)(2)(C)(iii), the relief provided for the Settlement Class is adequate when the terms of the proposed award of attorneys' fees are considered. As discussed in the accompanying Memorandum of Law in Support of Lead Counsel's Request for an Award of Attorneys' Fees and Reimbursement of Expenses, the proposed attorneys' fees of 30% are reasonable in light of Lead Counsel's substantial work and

---

[6] This is not a claims-made settlement. If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the claims submitted. *See* Stipulation ¶13.

efforts, the results achieved, and relative awards in similar cases.. *See Thornburg*, 912 F. Supp. 2d at 1257 (recognizing that "[f]ees in the range of 30-40% of any amount recovered are common in complex and other cases taken on a contingency fee basis" and citing cases). More importantly, approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees. *See* Stipulation ¶16.[7]

Third, Rule 23(e)(2)(C)(iv) requires the Court to consider the fairness of the proposed settlement in light of "any agreements required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(iv). Here, the Parties have entered into a confidential agreement which establishes certain conditions under which Mammoth may terminate the Settlement if Settlement Class Members, who collectively purchased a specific number of shares of Mammoth common stock, request exclusion (or "opt out") from the Settlement. This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement. *See, e.g.*, *In re Carrier IQ, Inc., Consumer Privacy Litig.*, 2016 WL 4474366, at *5 (N.D. Cal. Aug. 25, 2016) (observing that such "opt-out deals are not uncommon as they are designed to ensure that an objector cannot try to hijack a settlement in his or her own self-interest," and granting final approval of class action settlement).

---

[7] In connection with its fee request, Lead Counsel also seeks reimbursement of $64,238.99 in reasonable and necessary costs and expenses incurred in prosecuting and resolving this Action, and reimbursement of Lead Plaintiffs' costs related to their representation of the Settlement Class in the amount of $5,000 each. ¶¶60, 63.

### D.      All Settlement Class Members Are Treated Equitably

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e)(2)(D). As discussed in Section VI below, the Net Settlement Fund will be distributed among all Authorized Claimants in accordance with the Plan of Allocation, which provides a fair and equitable method of allocating the Net Settlement Fund. Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. Because the proposed Plan of Allocation does not provide preferential treatment to any Settlement Class member, segment of the Settlement Class, or to Lead Plaintiff, this factor supports final approval of the proposed Settlement. *See In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 692-93 (D. Colo. 2014) (finding plan of allocation properly "reimburses class members based on the extent of their injuries and is otherwise fair, reasonable, and adequate" where "the Settlement Fund will be allocated pro rata among the Settlement Class based on" when class members purchased securities and the type of security purchased); *Anthem*, 2019 WL 4279123, at *15 (same).

## V.      THE NOTICE PROGRAM SATISFIES RULE 23 AND DUE PROCESS

Notice to members of a proposed settlement must be directed in a "reasonable manner to all class members who would be bound by the proposal," Fed. R. Civ. P. 23(e)(1)(B) and be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

Here, the Court approved the notice program in the Preliminary Approval Order,[8] and Lead Plaintiffs have executed the notice program in accordance with the provisions therein. ¶3. Notice was given to Settlement Class Members via mailing of the Notice Packet, the Settlement Website, and publication. ¶31. Copies of the Court-approved Notice Packet were timely mailed by the Court-appointed Claims Administrator, A.B. Data, to an aggregate of 18,842 potential Settlement Class Members and the largest brokerage firms, banks, institutions, and other nominees. ¶31 & Ex. 1 ¶9.

The Notice described, among other things, the claims asserted in the Action, the contentions of the Parties, the course of the litigation, the terms of the Settlement, the maximum amounts that would be sought in attorneys' fees and expenses, the Plan of Allocation, the right to object to the Settlement, and the right to seek to be excluded from the Settlement Class. *See generally* Ex. 1, Ex. A. The Notice also stated the deadlines for objecting, seeking exclusion and submitting claims, and advised potential Settlement Class Members of the scheduled Settlement Hearing before this Court. *Id*.

Additionally, on June 7, 2021, the Court-approved Summary Notice was published in *Investor's Business Daily* and was sent over the *PR Newswire*. ¶31 & Ex. 1 ¶9. The published Summary Notice clearly and concisely provided information concerning the Settlement and the means to obtain a copy of the Notice. *See* Ex. 1, Exs. B&C. Finally, the

---

[8] The Preliminary Approval Order found that the form and content of the Notice, Summary Notice, and methods for notifying the Settlement Class, "satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, as amended, and all other applicable laws and rules." Preliminary Approval Order ¶9, ECF No. 132.

Claims Administrator posted the Notice, Claim Form, and other relevant documents online at the Settlement Website, www.MammothSecuritiesSettlement.com, and provided a phone number for Settlement Class Members to call with any questions concerning the Settlement. ¶31 & Ex. 1 ¶10. Courts routinely find that comparable notice programs meet the requirements of due process and Rule 23. *See e.g.*, *Zimmer Paper Prods, Inc. v. Berger Montague, P.C.*, 758 F.2d 86, 90 (3d Cir. 1985) (collecting cases and stating that "[i]t is well settled that in the usual situation first-class mail and publication in the press fully satisfy the notice requirements of both Fed. R. Civ. P. 23 and the due process clause."); *Crocs*, 306 F.R.D. at 693 (finding a combination of mailed claim packets and press releases met the requirements of due process and Rule 23); *In re Molycorp, Inc. Sec. Litig.*, No. 12-CV-00292-RM-KMT, 2017 WL 4333997, at *8 (D. Colo. Feb. 15, 2017), *report and recommendation adopted,* No. 12-CV-00292-RM-KMT, 2017 WL 4333998 (D. Colo. Mar. 6, 2017)(finding that mailing notice to all reasonably identified class members, publication in a nationally-circulated newspaper and over a newswire service, and posting notice on a dedicated website provided "the best notice practicable under the circumstances"); *In re Advanced Battery Techs., Inc. Secs. Litig.*, 298 F.R.D. 171, 183 n.3 (S.D.N.Y. 2014) (collecting cases and stating that "[t]he use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts.").

## VI.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e)(2)(D). "To warrant

24

approval, the plan of allocation must also meet the standards by which the settlement was scrutinized—namely, it must be fair and adequate." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005). "When formulated by competent and experienced counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis." *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 192 (S.D.N.Y. 2012); *In re Bear Stearns Cos., Inc. Sec., Derivative & ERISA Litig.*, 909 F. Supp. 2d 259, 270 (S.D.N.Y. 2012) (same); *see also Hill v. Kaiser-Francis Oil Co.*, No. CIV-09-07-R, 2013 WL 12090205, at *3 (W.D. Okla. July 30, 2013) ("The Plan of Allocation and Distribution is likewise fair, reasonable, and adequate."). Generally, a plan of allocation treats class members fairly where "claimants are to be reimbursed on a *pro rata* basis for their recognized losses based largely on when they bought and sold their shares[.]" *In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 431 (E.D. Pa. 2001); *see also McClintock v. Continuum Produce Servs., LLC*, No. CIV-17-259-JAG, 2020 WL 5524790, at *2 (E.D. Okla. May 19, 2020), *report and recommendation adopted*, No. 6:17-CV-00259-JAG, 2020 WL 3022744 (E.D. Okla. June 4, 2020) (finding "fair and reasonable" a plan of allocation that would "proportionately" reimburse class members "in relation to their individual claim[s]").

Here, Lead Plaintiffs developed the Plan of Allocation with the assistance of their damages expert, with the objective of equitably distributing the Net Settlement Fund to Settlement Class Members. ¶8. The Plan of Allocation was fully described in the Notice and, to date, there has been no objection to the proposed plan. ¶33 & Ex. 1 ¶15.

The Plan of Allocation allocates the Net Settlement Fund to Settlement Class Members on a *pro rata* basis. Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. after determining the Settlement Class Members' Recognized Loss Amounts. ¶42. The calculation of Recognized Losses is explained in detail in the Notice Supplement and incorporates several factors, including when Mammoth common stock was purchased and sold and the estimated artificial inflation in the stock's respective prices at the time of purchase and sale, as determined by Lead Plaintiffs' damages consultant. *See* Stipulation of Settlement and Exhibits 67-72, ECF No. 130-1. Thus, the proposed Plan of Allocation does not provide preferential treatment to any Settlement Class Member, segment of the Class, or to Lead Plaintiffs.[9]

Accordingly, for all the reasons set forth herein and in the Block Declaration, Lead Plaintiffs respectfully submit that the Plan of Allocation is fair, reasonable and adequate and should be finally approved.

## VII.   THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

In connection with its Preliminary Approval Motion, Lead Plaintiffs requested provisional certification of the Settlement Class for settlement purposes so that notice of the Settlement, the Settlement Hearing, and the rights of Settlement Class Members to

---

[9] The Notice does explain that Lead Plaintiffs may move the Court for an award of reasonable costs and expenses (including lost wages) directly relating to the representation of the Class, consistent with the PSLRA. *See* Ex. 1, Ex. A, at 3.

request exclusion, object, or submit Claim Forms to be eligible for a payment from the Settlement, could be issued. In its Preliminary Approval Order, the Court found the class action prerequisites under Rule 23(a) and (b)(3) to be satisfied and preliminarily certified the Settlement Class for settlement purposes only. ECF No. 139, ¶¶1-4. Because nothing has occurred since then to cast doubt on the propriety of class certification for settlement purposes only, and no objections have been received to date, the Court should grant final class certification.

## VIII.  CONCLUSION

For all the foregoing reasons, Lead Plaintiffs respectfully request that the Court: (i) grant final approval of the Settlement; (ii) approve the Plan of Allocation; and (iii) finally certify the Settlement Class, for settlement purposes only.

August 13, 2021

Respectfully submitted,

/s/ Jeffrey C. Block
Jeffrey C. Block (*pro hac vice*)
Jacob A. Walker (*pro hac vice*)
Nathaniel Silver (*pro hac vice*)
**Block & Leviton LLP**
260 Franklin Street, Suite 1860
Boston, Massachusetts 02110
(617) 398-5600 phone
(617) 507-6020 fax
jeff@blockleviton.com
jake@blockleviton.com

*Lead Counsel for*
*Lead Plaintiffs and the Class*

C. Michael Copeland OBA No. 13261
**Jones, Gotcher & Bogan P.C.**
3800 First Place Tower
15 East 5th Street

Tulsa, Oklahoma 74103
(918) 581-8200 phone
(918) 583-1189 fax
mcopeland@jonesgotcher.com

*Local Counsel for*
*Lead Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served upon its filing via this Court's CM/ECF system on this 13th day of August, 2021 to all counsel of record.


By: /s/ Jeffrey C. Block
            Jeffrey C. Block