# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

IN RE MAMMOTH ENERGY
SERVICES, INC. SECURITIES
LITIGATION

Case No. CIV-19-522-J

CLASS ACTION

## LEAD COUNSEL'S MOTION AND OPENING BRIEF IN SUPPORT OF AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF <u>LITIGATION EXPENSES</u>

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ................................................................................................................... 5

I.  LEAD COUNSEL'S FEES SHOULD BE CALCULATED BASED UPON A
    PERCENTAGE OF THE COMMON FUND ........................................................ 5

II. THE FEE REQUEST IS FAIR REASONABLE AND SHOULD BE APPROVED
    ........................................................................................................................... 6

    A.  The *Johnson* Factors Confirm the Reasonableness of the Requested Fee .... 7

        1.  The Time and Labor Required ............................................................. 7

        2.  The Novelty and Difficulty of the Issues ........................................... 8

        3.  The Skill Required to Perform the Legal Service Adequately and the
            Experience, Reputation, and Ability of the Attorneys .................... 10

        4.  The Preclusion of Other Employment ............................................. 12

        5.  The Customary Fee for Similar Work and Awards in Similar Cases
            ........................................................................................................ 12

        6.  Whether the Fee is Fixed or Contingent ......................................... 14

        7.  The Amount Involved and the Results Obtained ............................. 15

        8.  The Undesirability of the Case ....................................................... 16

    B.  Other Factors Considered by Courts Further Support the Requested Fee .. 17

        1.  Public Policy Considerations Support the Requested Fee ............... 17

        2.  Lead Plaintiffs Have Approved the Requested Fee ......................... 18

        3.  The Reaction of the Settlement Class Supports the Requested Fee. 18

III. LEAD COUNSEL'S EXPENSES WERE REASONABLY AND NECESSARILY
     INCURRED IN THE PROSECUTION OF THIS ACTION ................................ 19

IV. THE FEE REQUEST IS FAIR REASONABLE AND SHOULD BE APPROVED
    ......................................................................................................................... 20

CONCLUSION ............................................................................................................. 22

## TABLE OF AUTHORITIES

**CASES**

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013) ................................... 3

*Anderson v. Merit Energy Co.*, 2009 WL 3378526 (D. Colo. Oct. 20, 2009) ................. 15

*Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299 (1985) ........................ 4, 18

*Blum v. Stenson*, 465 U.S. 886 (1984) ............................................................................. 5

*Brown v. Phillips Petroleum Co.*, 838 F.2d 451 (10th Cir. 1988) ............................. 1, 2, 6

*Burford v. Cargill, Inc.*, 2012 WL 5471985 (W.D. La. Nov. 8, 2012) ............................ 12

*Chieftain Royalty Co. v. Laredo Petroleum, Inc.*, 2015 WL 2554606 (W.D.
     Okla. May 13, 2015) ........................................................................................... 6, 13

*Chieftain Royalty Co. v. XTO Energy, Inc.*, 2018 WL 2296588 (E.D. Okla.
     Mar. 27, 2018) .......................................................................................................... 15

*Cook v. Rockwell Int'l Corp.*, 2017 WL 5076498 (D. Colo. Apr. 28, 2017) ............... 5, 12

*Diaz v. Lost Dog Pizza, LLC*, 2019 WL 2189485 (D. Colo. May 21, 2019) ............... 6, 12

*Erica P. John Fund, Inc. v. Halliburton Co.*, 2018 WL 1942227 (N.D. Tex.
     Apr. 25, 2018) ..................................................................................................... 16, 19

*Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994) ........................................................... 5, 6

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190 (3d Cir. 2000) ................................... 4

*Hicks v. Morgan Stanley*, 2005 WL 2757792 (S.D.N.Y. Oct 24, 2005) .......................... 20

*Hill v. Kaiser Francis Oil Co.*, 2013 WL 12090048 (W.D. Okla. July 30, 2013) ............ 13

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 2006 WL 903236
     (S.D.N.Y. Apr. 6, 2006) ............................................................................................. 9

*In re BP P.L.C. Sec. Litig.*, 852 F. Supp. 2d 767 (S.D. Tex. 2012) .................................. 14

*In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001) .................................................. 10

*In re Crocs, Inc. Sec. Litig.*, 2014 WL 4670886 (D. Colo. Sept. 18, 2014) .............. passim

*In re DaVita Healthcare Partners, Inc. Deriv. Litig.*, 2015 WL 3582265 (D. Colo. June 5, 2015) ............................................................ 13

*In re Excel Energy, Inc. Sec., Deriv. & "ERISA" Litig.*, 364 F. Supp. 2d 980 (D. Minn. 2005) ................................................................. 17

*In re Lucent Techs., Inc. Sec. Litig.*, 327 F. Supp. 2d 426 (D.N.J. 2004) ........................ 18

*In re NU Skin Enter., Inc.,* 2016 WL 6916486 (D. Utah Oct. 13, 2016) ................... 10, 12

*In re Oppenheimer Rochester Funds Grp. Sec. Litig.*, No. 09-CV-1042-JLK, 2014 WL 12768451 (D. Colo. July 31, 2014) ............................................. 4, 13, 19

*In re Qwest Commc'ns Int'l, Sec. Litig.*, 625 F. Supp. 2d 1143 (D. Colo. 2009) ... 9, 11, 13

*In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491 (W.D. Pa. 2003) .................................. 19

*In re Samsung Topload Washing Machine Marketing, Sales Practices and Prods Liab. Litig.*, 2020 WL 9936692 (W.D. Okla. June 11, 2020) ...................... 13

*In re Sandridge Energy, Inc. S'holder Deriv. Litig.*, 2015 WL 11921422 (W.D. Okla. Dec. 22, 2015) ............................................................ 14

*In re Spectranetics Corp. Sec. Litig.*, 2011 WL 13238696 (D. Colo. Apr. 4, 2011) ........................................................................... 17

*In re Syngenta AG MIR 162 Corn Litig.*, 357 F. Supp. 3d 1094 (D. Kan. 2018)............. 12

*In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178 (D.N.M. 2012) .......... 4, 10

*In re Ultra Petroleum Corp.*, No. 20-32631 (MI) (S.D. Tex. Bankr. June 4, 2020) ........................................................................... 14

*In re Urethane Antitrust Litig.*, 2016 WL 4060156 (D. Kan. July 29, 2016) .................. 13

*In re Vecco Instruments Inc. Sec. Litig.*, 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ........................................................................... 18

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). ................... 1, 6

*Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358 (S.D.N.Y. 2002)........................ 5

*McKeon v. Int. Pizza LLC*, 2020 WL 6782238 (D. Colo. Nov. 18, 2020)........................ 19

*Nakkhumpun v. Taylor*, 2016 WL 11724397 (D. Colo. June 13, 2016) ........................... 12

*Peace Officers' Annuity and Benefit Fund of Ga. v. DaVita Inc.,* 2021 WL 2981970 (D. Colo. July 15, 2021) .......................................................... 13

*Ramos v. Banner Health*, 2020 WL 6585849 (D. Colo. Nov. 10, 2020) ......................... 13

*Schwartz v. TXU Corp.*, 2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ........................... 11

*Shaw v. Interthinx, Inc.,* 2015 WL 1867861 (D. Colo. Apr. 22, 2015) ........................... 15

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ............................ 3, 18

*Tennille v. W. Union Co.*, 2014 WL 5394624 (D. Colo. Oct. 15, 2014) ........................... 13

*Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277 (S.D.N.Y 1993) ............................... 15

*Uselton v. Commercial Lovelace Motor Freight*, 9 F.3d 849 (10th Cir. 1993) ................. 5

*Varljen v. H.J. Meyers & Co., Inc.,* 2000 WL 1683656 (S.D.N.Y Nov. 8, 2000) ........... 20

## STATUTES

15 U.S.C. § 78u-4 .......................................................................................... 5, 20

## OTHER AUTHORITIES

H.R. Rep. No. 104-369 (1995) (Conf. Rep.) ...................................................... 20

*In re Molycorp Inc. Sec. Litig.*, 2017 WL 11598681 (D. Colo. June 16, 2017) .............. 13

*Lucken Family Ltd, P'ship, LLLP v. Ultra Resources, Inc.*, 2010 WL 5387559 (D. Colo. Dec. 22, 2010) .......................................................................... 21

*Peace Officers' Annuity and Benefit Fund of Ga. v. DaVita Inc.,* 2021 WL 1387110 (D. Colo. Apr. 13, 2021) ...................................................... 21

*Ryskamp v. Looney*, 2012 WL 3397362 (D. Colo. Aug. 14, 2012) .................................. 21

S. Rep. No. 104-98 (1995) .................................................................................. 20

## PRELIMINARY STATEMENT

Lead Counsel prosecuted this case on a wholly contingent basis with no guarantee of payment for their work or reimbursement of their out-of-pocket expense. To date, they have received no compensation for their efforts. Now, having achieved an $11,000,000 all-cash settlement that resolves all outstanding claims in this Action, Lead Counsel respectfully submit this memorandum of law in support of their motion seeking an Order: (i) awarding attorneys' fees in the amount of 30% (or $3,300,000) of the Settlement Fund on behalf of Plaintiffs' Counsel[1]; (ii) approving reimbursement of Litigation Expenses incurred by Plaintiffs' Counsel in prosecuting this action in the amount of $64,238.99; and (iii) granting an award to Lead Plaintiffs Daniel Furia, Vincent Furia, and Sharon Furia of $5,000 each, totaling $15,000.[2]

Litigants who create a common fund for the benefit of a class are entitled to a payment of attorneys' fees and expenses from the common fund. In the Tenth Circuit, courts typically award a percentage of the common fund. *Brown v. Phillips Petroleum Co.*, 838 F.2d 451, 454 (10th Cir. 1988). The evaluation is holistic and fact-bound, relying on the *Johnson*[3] factors, with specific emphasis on the amount of damages involved and the results obtained. *Id.* at 454-56. "The time and labor required need not be evaluated using the

---

[1] Plaintiffs' Counsel consists of Lead Counsel Block & Leviton LLP and Liaison Counsel Jones, Gotcher & Bogan, P.C.
[2] Unless otherwise defined, all capitalized terms herein have the meanings set forth in the Stipulation. ECF No. 130-1.
[3] *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).

lodestar formulation when, in the judgment of the trial court, a reasonable fee is derived by giving greater weight to other factors ….” *Id.* at 456.

Each of these metrics weighs in favor of an attorneys’ fee award of thirty percent of the Settlement Fund. As more fully set out in the Memorandum of Points and Authorities in Support of Lead Plaintiffs’ Motion for Final Approval of Class Action Settlement and Plan of Allocation and Certification of Settlement Class for Settlement Purposes Only (the “Final Approval Brief”), and in the accompanying Declaration of Jeffrey C. Block (the “Block Declaration” or “Block Decl.”), the Settlement is an excellent result. It recovers 75% of the Class’ *maximum* presently available damages, and 12.1% of the total maximum damages potentially available in this Action *if* Lead Plaintiffs and Lead Counsel were able to successfully persuade the court to allow the filing of a third amended complaint and *if* the court sustained those allegations over what would surely be a renewed motion to dismiss by Defendants.

The median recovery in a securities class action is 1.7% of total damages. The settlement here is vastly higher than the median recovery in similar securities class actions. It is 75% of damages in the sustained class period and 12% of the total potential damages assuming the filing of a third amended complaint and success at every turn throughout the case. Lead Counsel achieved this favorable outcome despite facing continued significant litigation risks: the need to file and defend a third amended complaint, the need to certify a class, completion of extensive discovery to collect admissible evidence to support their claims, extensive expert discovery with significant loss causation and damages challenges,

and an inevitable summary judgment motion. To obtain a $11 million dollar settlement in light of these risks is a highly favorable outcome for the Settlement Class.

As described more fully below, Lead Counsel's diligence and substantial efforts during the approximately eighteen months that the Action has been pending generated a total lodestar value of $1,497,317.50, the 2.2 multiplier of which, if the Court were to award the requested fees, is consistent with—if not lower than—those awarded in courts throughout the country. The complexity and risks of this high-stakes securities-fraud class action, which Lead Counsel undertook on a contingency-fee basis, also amply support the requested fee.

The $64,238.99 in expenses incurred were reasonable and necessary to prosecute the Action. Significantly, this amount is substantially ***lower*** than the $150,000 figure that was reported to Settlement Class Members in the mailed Notice Packet as the potential amount of expenses.

In addition, the attentiveness, active involvement, and care with which Lead Plaintiffs performed their duties, the tasks that they performed, the manner in which they monitored the Action, and their oversight of the settlement process all justify the relatively modest request of a combined $15,000 compensatory award to Lead Plaintiffs for their time and service to the Settlement Class.

The services of Lead Plaintiffs and Lead Counsel exemplify the considerations that the Supreme Court has articulated in emphasizing the strong policy for encouraging private securities-fraud class actions. *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 478 (2013); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007);

3

*Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985). The strong policy supporting private enforcement of securities laws through fair and reasonable fee awards, such as that requested here, has also been emphasized by courts in this Circuit. *See, e.g.*, *In re Oppenheimer Rochester Funds Grp. Sec. Litig.*, No. 09-CV-1042-JLK, 2014 WL 12768451, at *2 (D. Colo. July 31, 2014) (finding a fee award of 30% of the settlement fund "consistent with awards made within this District and in similar cases" and collecting cases); *In re Thornburg Mortg., Inc. Sec. Litig.*, 912 F. Supp. 2d 1178, 1256 (D.N.M. 2012) ("The Court has recognized in other cases that '[f]ees in the range of 30–40% of any amount recovered are common in complex and other cases taken on a contingent fee basis.'"); *see also Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000) (finding just compensation from a common fund necessary to ensure that "competent counsel continue[s] to be willing to undertake risky, complex and novel litigation").

The fairness and reasonableness of Lead Plaintiffs' and Lead Counsel's requests is supported by the fact that, to date, no objections and no requests for exclusion have been received from potential Settlement Class Members, despite that 18,842 Notices have been mailed to Settlement Class Members.

In light of all these considerations, particularly the favorable reaction of the Settlement Class, Lead Plaintiffs and Lead Counsel respectfully submit that these requests should be approved.

## ARGUMENT

### I.   LEAD COUNSEL'S FEES SHOULD BE CALCULATED BASED UPON A PERCENTAGE OF THE COMMON FUND

Lead Counsel's efforts created a common fund of $11 million. The Supreme Court has consistently held that the percentage of the fund approach is the preferred method for determining attorneys' fees in common fund cases. *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). Like the Supreme Court, the Tenth Circuit, also favors use of the percentage of the fund method in common fund cases. *Gottlieb v. Barry*, 43 F.3d 474, 483 (10th Cir. 1994) ("In our circuit . . . *Uselton* implies a preference for the percentage of the fund method.") (citing *Uselton v. Commercial Lovelace Motor Freight*, 9 F.3d 849 (10th Cir. 1993)). In utilizing the percentage of the fund method, courts in the Tenth Circuit have "long recognized that class counsel and the class should have aligned interests in this type of matter, such that counsel are both compensated for risk and rewarded for success, where, as here, the Class receives a significant benefit." *See Cook v. Rockwell Int'l Corp.*, 2017 WL 5076498, at *1 (D. Colo. Apr. 28, 2017). The use of the percentage of recovery method also comports with the language of the PSLRA which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class…." 15 U.S.C. § 78u-4(a)(6); *see also Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) (when drafting the PSLRA, Congress "indicated a preference for the use of the percentage method").

Accordingly, Lead Counsel respectfully submits that this Court should use the

percentage method.

## II.   THE FEE REQUEST IS FAIR REASONABLE AND SHOULD BE APPROVED

In determining a reasonable fee award, the Tenth Circuit has adopted the Fifth Circuit's *Johnson* factors. *Brown*, 838 F.2d at 454-55. The *Johnson* factors are:

> (1) The time and labor required by counsel; (2) the novelty and difficulty of the legal question presented; (3) the skill required to represent the class appropriately; (4) the preclusion of other employment by the attorneys due to the acceptance of this case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) any time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Diaz v. Lost Dog Pizza, LLC*, 2019 WL 2189485, at *5 (D. Colo. May 21, 2019) (citing *Johnson*, 488 F.2d at 717-19). The weight given to each *Johnson* factor is within the Court's discretion and depends on the facts and circumstances of the case. *Brown*, 838 F.2d at 456; *Gottlieb*, 43 F.3d at 482 n.4. In addition, courts may consider other factors, such as (1) public policy considerations, (2) plaintiffs' approval of the fee, and (3) the reaction of the class. Here, each of the relevant factors supports the fee request.[4]

---

[4] Lead Counsel respectfully submits that two *Johnson* factors—the time limitations imposed by the client or the circumstances, and the nature and length of the professional relationship with the client—are not relevant in this securities class action, and therefore are not addressed herein. *See Chieftain Royalty Co. v. Laredo Petroleum, Inc.*, 2015 WL 2554606, at *3 (W.D. Okla. May 13, 2015) ("Although the Court must assess the reasonableness of the fee under the *Johnson* factors, rarely will all of the *Johnson* factors be applicable in a common fund case.").

A.    **The *Johnson* Factors Confirm the Reasonableness of the Requested Fee**

Application of the relevant *Jonson* factors confirm that the requested fee award is reasonable.

1.    **The Time and Labor Required**

The time and effort required by Lead Counsel to effectively prosecute this Action and achieve the Settlement establishes that the requested fee is justified. As detailed in the Block Declaration, Lead Counsel vigorously litigated this Action for 18 months. Block Decl. ¶3. In the course of the litigation, Lead Counsel among other things:

- conducted a comprehensive investigation into the allegedly wrongful acts, which included, among other things, a review and analysis of Mammoth's filings with the SEC, public reports and news articles concerning Mammoth, documents filed in the case of *United States of America v. Ahsha Nateef Tribble, Donald Keith Ellison and Jovanda R. Patterson*, Crim. No. 19-541 (D.P.R.) and transcripts of Mammoth's investor calls, and consultation with accounting, damages and market efficiency experts;

- drafted the FAC and the operative SAC, based on the investigation;

- engaged in voluminous briefing related to Defendants' motions to dismiss the SAC;

- drafted extensive mediation statements;

- participated in protracted mediation efforts, including a full-day mediation session before the Honorable Michael Burrage, Esq., of Whitten Burrage LLP;

- extensively reviewed nearly 90,000 internal Mammoth documents (including emails, internal accounting and billing summaries, invoices, and contracts) produced by Mammoth as part of the mediation;

- prepared a draft Third Amended Complaint, based on review of those documents;

- engaged in negotiations regarding the terms of the proposed Settlement;

- obtained competing bids for claims-administration work related to the Settlement before selecting a competitive bidder to serve as Claims Administrator, and worked with the Claims Administrator to effectuate notice and oversee the administration process;

- secured the services of the Escrow Agent

- prepared the motion papers and related documents necessary to obtain preliminary approval of the Settlement and provide notice of the Settlement to Settlement Class Members; and

- prepared the motion papers and related documents necessary to obtain final approval of the Settlement.

*Id.* ¶¶3-4, 27-29.

The efforts that were required to complete these tasks, as well as others, were extensive and required and represented an immense risk, given the contingency-based nature of Lead Counsel's representation. *Id.* ¶¶13-29, 49-52. To date, Plaintiffs' Counsel have spent over 2,667 hours litigating this case. *Id.* ¶54. Plaintiffs' Counsel has also incurred $64,238.99 in unreimbursed litigation expenses. *Id.* ¶60. Lead Counsel will also participate in the final approval hearing on the Settlement and will continue to oversee administration of the Settlement. Plaintiffs' Counsel has received no compensation for their substantial work to date. The substantial time and effort devoted to this case by Lead Counsel was critical to obtaining the Settlement and, as a result, this factor supports the fee request.

### 2. The Novelty and Difficulty of the Issues

The second *Johnson* factor also favors granting Lead Counsel's requested attorneys' fees. As a general matter, "[l]itigating an action under the PSLRA is not a simple undertaking, especially given the specificity required to pled such claims," and this case was no exception. *In re Crocs, Inc. Sec. Litig.*, 2014 WL 4670886, at *3 (D. Colo. Sept.

18, 2014); *see also In re Qwest Commc'ns Int'l, Sec. Litig.*, 625 F. Supp. 2d 1143, 1149 (D. Colo. 2009) ("There are few simple class action cases involving securities law. This area of law may not be novel, but it generally is complex and difficult."); *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006) (noting the "notorious complexity" of securities class actions).

Here, there is no question that continued litigation would have been costly, risky, and drawn out. Although Lead Plaintiffs succeeded in defeating Defendants' motions to dismiss, in part, the Court severely curtailed the class period by dismissing all claims premised upon Defendants' statements prior to March 15, 2019. Thus, Lead Plaintiffs' first obstacle was to file and defend a third amended complaint restoring the original class period. Lead Plaintiffs would then seek to certify the action as a class action and likely face an inevitable argument that the declines in Mammoth's stock were not related to the alleged false statements or material omissions. Thereafter, Lead Plaintiffs faced the inevitable challenge of overcoming Defendants' summary judgment argument that the false statements and omissions were not actionable once the record included the actual communications and accounting records referenced and witness testimony.

Lead Plaintiffs also faced an uphill battle in proving that Defendants acted with the requisite scienter. The Court dismissed all claims against Defendant Ellison – the only defendant to be charged by the Department of Justice for any alleged wrongdoing – and refused to impute Ellison's scienter to the Company. As Defendants have pointed out and would continue to argue, Mammoth, Straehla and Layton have not been accused of any wrongdoing by the DOJ or SEC. Thus, establishing scienter remained a significant threat

to the litigation at summary judgment and at trial.

Even if Lead Plaintiffs were successful in establishing liability at trial, they would still face substantial risks in proving loss causation and damages. Defendants made clear that they intended to challenge the alleged corrective disclosures. Issues relating to loss causation and damages would likely have come down to a contested and unpredictable "battle of the experts." *Thornburg*, 912 F. Supp. 2d at 1242; *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("[E]stablishing damages at trial would lead to a 'battle of the experts' with each side presenting its figures to the jury and with no guarantee whom the jury would believe.").

Accordingly, Lead Counsel's ability to successfully navigate these and other complex legal and factual obstacles fully supports the requested fee award. *See In re NU Skin Enter., Inc.,* 2016 WL 6916486, at *2 (D. Utah Oct. 13, 2016) (noting the risks presented by "Defendants' defenses concerning the falsity of their statements, scienter, loss causation, and damages" weighed in favor of fee award); *Crocs,* 2014 WL 4670886, at *3 (noting the inherent difficulty in litigating cases under the PSLRA).

### 3.  The Skill Required to Perform the Legal Service Adequately and the Experience, Reputation, and Ability of the Attorneys

The third and ninth *Johnson* factors – the skill required and the experience, reputation, and ability of the attorneys – also support the requested fee award. As demonstrated by their firm resume, Block & Leviton has many years of experience in complex federal litigation, particularly in litigation of shareholder, securities, and other class actions. *See* Block Decl. Ex. 2, Ex. A. Liaison Counsel is similarly skilled in complex

litigation. *See* Block Decl. Ex. 3, Ex. A. The Settlement is a direct result of Lead Counsel's skill and experience. Specifically, the attorneys' skills and efforts resulted in defeating Defendants' motion to dismiss, in part, despite the PSLRA's heightened pleading standard, and ultimately securing a highly favorable Settlement for the Settlement Class. *See Qwest,* 625 F. Supp. 2d at 1150 (noting the inherent complexity of securities class actions and finding that "[i]f the issues in a case are complex and difficult then obviously it will take great skill to address those issues successfully."); *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *30 (N.D. Tex. Nov. 8, 2005) (finding this factor weighs in favor of approval where despite the PSLRA restrictions, due to Lead Counsel's "diligent efforts . . . and their skill and reputations" they "were able to negotiate a very favorable" settlement).

Courts have also recognized that the quality of the opposition faced by plaintiff's counsel should be taken into consideration in assessing the quality of counsel's performance. *See TXU*, 2005 WL 3148350, at *30 ("The ability of plaintiffs' counsel to obtain such a favorable settlement for the Class in the face of such formidable legal opposition confirms the superior quality of their representation."). Here, Defendants were represented by Quinn Emanuel Urquhart & Sullivan, LLP – one of the most respected and formidable law firms in the U.S. with significant expertise and experience in defending securities class actions. Block Decl. ¶59. The caliber of Defendants' counsel provides further support for the requested fee award. *See Crocs*, 2014 WL 4670886, at *3 (finding fact that "Defendants' counsel is equally skilled" favored approval of 30% fee award). Accordingly, these factors also support the requested fee.

### 4.    The Preclusion of Other Employment

Plaintiffs' Counsel spent over 2,667 hours litigating this case on behalf of Lead Plaintiffs and the Settlement Class.[5] Block Decl. ¶54. This is time counsel could have devoted to other potentially more lucrative matters. Accordingly, this factor further supports the requested fee. *See Burford v. Cargill, Inc.*, 2012 WL 5471985, at *3 (W.D. La. Nov. 8, 2012) ("The affidavits of Class Counsel prove that while this case did not preclude them from accepting other work, they were often times precluded from working on other cases due to the demands of the instant matter. . . . This factor weighs in favor of a substantial fee award.").

### 5.    The Customary Fee for Similar Work and Awards in Similar Cases

Lead Counsel's 30% fee request is entirely reasonable when considering the customary awards in similar cases in the Tenth Circuit. Indeed, "[c]ourts in the Tenth Circuit have noted that the typical fee award in complex cases is around one third of the common fund." *Crocs*, 2014 WL 4670886, at *3; *see also Diaz*, 2019 WL 2189485, at *5 ("33% fee award falls within the norm"); *Nakkhumpun v. Taylor*, 2016 WL 11724397, at *5 (D. Colo. June 13, 2016) (same). Indeed, the requested fee is similar to fees awarded in numerous complex class actions throughout the Tenth Circuit. *See e.g.*, *In re Syngenta AG MIR 162 Corn Litig.*, 357 F. Supp. 3d 1094, 1114 (D. Kan. 2018) (awarding 33.3% fee); *Cook*, 2017 WL 5076598, at *4 (awarding 40% fee); *NU Skin*, 2016 WL 691486 (awarding

---

[5] If the Settlement is approved, additional time will be spent ensuring that the Settlement is properly distributed to the Settlement Class.

29% fee); *Chieftain,* 2015 WL 2254606, at \*4 (awarding 40% fee); *Tennille v. W. Union Co.*, 2014 WL 5394624, at \*4 (D. Colo. Oct. 15, 2014) (awarding 30% fee); *Oppenheimer*, 2014 WL 12768451, at \*2 (awarding 30% fee); *Hill v. Kaiser Francis Oil Co.*, 2013 WL 12090048, at \*3 (W.D. Okla. July 30, 2013) (awarding 35% fee).

Although not required in the Tenth Circuit, a lodestar "cross-check" also wholly supports the fee request. Here, Plaintiffs' Counsel's total lodestar is $1,497,317.50, and the requested 30% fee equates to a multiplier of 2.2, which is at the low end of the typical range of multipliers routinely approved by courts in the Tenth Circuit. *See, e.g., Peace Officers' Annuity and Benefit Fund of Ga. v. DaVita Inc.,* 2021 WL 2981970, at \*3 (D. Colo. July 15, 2021) (approving 2.75 multiplier, "which is at the low end" of ranges approved in the Tenth Circuit); *In re Urethane Antitrust Litig.*, 2016 WL 4060156, at \*7 (D. Kan. July 29, 2016) (approving 3.2 multiplier); *In re DaVita Healthcare Partners, Inc. Deriv. Litig.*, 2015 WL 3582265, at \*5 (D. Colo. June 5, 2015) (multiplier of 3 "in line with the multipliers awarded in similar cases"); *Qwest*, 625 F. Supp. 2d at 1148 (approving 3.3 multiplier).

Likewise, Plaintiffs' Counsel's hourly rates, which range from $250 to $1,025, are in line with rates approved for similar litigation in the Tenth Circuit. *See In re Samsung Topload Washing Machine Marketing, Sales Practices and Prods Liab. Litig.*, 2020 WL 9936692, at \*7 (W.D. Okla. June 11, 2020) (approving hourly rates ranging from $330 to $1,050); *Ramos v. Banner Health*, 2020 WL 6585849 (D. Colo. Nov. 10, 2020) and ECF No. 504 (approving rates ranging from $490 to $1,060 per hour); *In re Molycorp Inc. Sec. Litig.*, 2017 WL 11598681, at \*1-2 (D. Colo. June 16, 2017) (approving 30% fee where

attorney hourly rates ranged from $435 to $955 per hour); *In re Sandridge Energy, Inc. S'holder Deriv. Litig.*, 2015 WL 11921422, at *3 & n.10, and ECF Nos. 328-3, 328-2 (W.D. Okla. Dec. 22, 2015) (approving fee request where hourly rates were up to $1,150); *Crocs*, 2014 WL 4670886, at *4, and ECF No. 208 at 95 (awarding 30% fee where attorney hourly rates were up to $935 per hour). Plaintiffs' Counsel's hourly rates are also considerably lower than the hourly rates charged by Defendants' Counsel, Quinn Emanuel. *See In re Ultra Petroleum Corp.*, No. 20-32631 (MI) (S.D. Tex. Bankr. June 4, 2020), ECF No. 192 (noting that Quinn Emanuel's "standard hourly rates" for partners "range from $1,040.00 to $1,595.00," for other attorneys "range from $625.00 to $1,200.00," and for law clerks and legal assistants "range from $355.00 to $525.00").

### 6.    Whether the Fee is Fixed or Contingent

The contingent nature of the fee requested by counsel and the substantial risk posed by the litigation also weigh in favor of awarding the requested fee. *See Crocs*, 2014 4670886, at *5 ("Federal securities class actions require plaintiffs' counsel to expend substantial time and efforts with no guarantee of success."). Even with the most vigorous and competent of efforts, success in contingent-fee litigation, such as this, is never assured. Block Decl. ¶49; Final Approval Brief §IV(C)(1). Legal precedents are continually making it more difficult to plead securities class actions. *See In re BP P.L.C. Sec. Litig.*, 852 F. Supp. 2d 767, 820 (S.D. Tex. 2012) ("The Court is acutely aware that federal legislation and authoritative precedents have created for plaintiffs in all securities class actions formidable challenges to successful pleading.").

Further, the risk of loss in this case was not illusory. Securities fraud cases are extremely complex, subject to the PSLRA's heightened pleading standards, and success is never assured. *See Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277, 281 (S.D.N.Y 1993) (securities class actions are "notably difficult and notoriously uncertain."). For over 18 months, Plaintiffs' Counsel undertook this class action on a contingency-fee basis, carrying both the substantial out-of-pocket costs of litigation and the risk of not being paid for their services or reimbursed for their costs in connection with the litigation. Accordingly, this factor weighs in favor of the requested fee. *See, e.g., Crocs,* 2014 WL 4670886, at *4 ("[a] contingent fee arrangement often weighs in favor of a greater fee because [s]uch a large investment of money [and time] place[s] incredible burdens upon law practices."); *Chieftain Royalty Co. v. XTO Energy, Inc.*, 2018 WL 2296588, at *8 (E.D. Okla. Mar. 27, 2018) ("Moreover, even though federal law, not Oklahoma law, governs this issue here, I noted that when the attorneys' compensation is contingent, Oklahoma law recognizes any attorneys' fee award must account for the risks inherent in such engagements").

### 7.   The Amount Involved and the Results Obtained

Courts in the Tenth Circuit have repeatedly found that, when determining the amount of fees to be awarded, the "***greatest weight*** should be given to the monetary results achieved for the benefits of the class." *Anderson v. Merit Energy Co.*, 2009 WL 3378526, at *4 (D. Colo. Oct. 20, 2009) (emphasis added); *see also Shaw v. Interthinx, Inc.,* 2015 WL 1867861, at *7 (D. Colo. Apr. 22, 2015) ("The degree of success . . . is a critical factor in determining the amount of fees to be awarded."). The Settlement result here is exceptional by any measure.

Using the class period for the period upheld by the Court, from March 15, 2019 through June 5, 2019, Lead Plaintiffs' damages expert estimated total recoverable damages were $14.9 million. Thus, based on the sustained class period, the Settlement represents almost 75% of total recoverable damages. Block Decl. ¶45. If Lead Plaintiffs were successful in bringing the class period back to October 2017 – which was far from certain – and if a class were certified, if Defendants' likely summary judgment motion were denied, and if, after a jury trial, the Court and jury accepted Lead Plaintiffs' damages theory (including proof of loss causation, which was hotly contested at mediation)—*i.e.*, Lead Plaintiffs' ***best case scenario***—the total maximum damages would be approximately $90.7 million. Thus, the Settlement represents 12.1% of the total ***maximum*** damages ***potentially*** available in this Action. By comparison, the median recovery in securities class actions in 2020 was approximately 1.7% of estimated damages. *Id.* ¶47 and Ex. 5. Under either scenario, a recovery representing over 38 times or over six times the median recovery in other securities class actions is an excellent result for the Settlement Class. Accordingly, there can be no doubt that Lead Counsel achieved a highly favorable result and that this factor weighs in favor of approving the requested fee.

### 8.    The Undesirability of the Case

The undesirability of the case can be a factor in justifying the award of a requested fee. Securities cases have been recognized as "undesirable" due to the elevated risks, required lengthy investigations, high out-of-pocket costs, and a possibility of no recovery." *See Erica P. John Fund, Inc. v. Halliburton Co.*, 2018 WL 1942227, at *12 (N.D. Tex. Apr. 25, 2018) ("[T]he 'risk of non-recovery' and 'undertaking expensive litigation against

16

. . . well financed corporate defendants on a contingent fee' has been held to make a case undesirable, warranting a higher fee."). Indeed, securities class actions, due to their "notoriously difficult and uncertain" nature, "are often seen as undesirable." *In re Spectranetics Corp. Sec. Litig.*, 2011 WL 13238696, at *2 (D. Colo. Apr. 4, 2011). This was never an easy case and this risk of no recovery was always high – a fact demonstrated by the Court's dismissal of the vast majority of Lead Plaintiffs' allegations. *See In re Excel Energy, Inc. Sec., Deriv. & "ERISA" Litig.*, 364 F. Supp. 2d 980, 1003 (D. Minn. 2005) ("[t]he court needs look no further than its own order dismissing [part of] the . . . litigation to assess the risks involved."). When Lead Counsel undertook representation of Lead Plaintiffs' and the putative class in this Action, it was with the knowledge that they would have to spend substantial time and money and face significant risks without any assurance of being compensated for their efforts. Thus, this factor weighs in favor of approval.

\*       \*       \*

In sum, all of the applicable *Johnson* factors support Lead Counsel's request for attorneys' fees of 30% of the Settlement Fund.

## B.   Other Factors Considered by Courts Further Support the Requested Fee

Consideration of additional factors courts examine further confirm that the requested fee award is fair and reasonable.

### 1.   Public Policy Considerations Support the Requested Fee

A strong public policy concern exists for rewarding firms for bringing successful securities litigation. The Supreme Court has emphasized that private securities actions such as this provide "'a most effective weapon in the enforcement' of the securities laws and are

17

'a necessary supplement to [SEC] action.'" *Berner*, 472 U.S. at 310 (citation omitted); *see also Tellabs*, 551 U.S. at 313. Here, that public policy was advanced as Lead Counsel achieved a meaningful recovery for investors, notwithstanding the absence of any recovery for Mammoth investors from the SEC or any other regulatory agency.

### 2.      Lead Plaintiffs Have Approved the Requested Fee

Lead Plaintiffs played an active role in the prosecution and resolution of the Action and have a sound basis for assessing the reasonableness of the fee request. Lead Plaintiffs fully support and approve the fee request. Block Decl. Ex. 4, ¶9. Lead Plaintiffs' endorsement of the fee request in this PSLRA action supports its approval. *See e.g.*, *In re Vecco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *8 (S.D.N.Y. Nov. 7, 2007) ("[P]ublic policy considerations support the award in this case because the Lead Plaintiff . . . conscientiously supervised the work of lead counsel and has approved the fee request."); *In re Lucent Techs., Inc. Sec. Litig.*, 327 F. Supp. 2d 426, 442 (D.N.J. 2004) ("Significantly, the Lead Plaintiffs, . . . have reviewed and approved Lead Counsel's fees and expense request.").

### 3.      The Reaction of the Settlement Class Supports the Requested Fee

The reaction of the Settlement Class also supports the requested fee. As of August 12, 2021, the Claims Administrator has disseminated the Notice to 18,842 potential Settlement Class Members informing them of, among other things, Lead Counsel's intention to apply to the Court for an award of attorneys' fees of up to 30% of the Settlement Fund and reimbursement of up to $150,000 in Litigation Expenses. Block Decl. ¶31;

Declaration of Markham Sherwood of Angeion Group Regarding: (A) Mailing of Notice and Proof of Claim and Release; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections Received, dated August 12, 2021, ¶8 ("Sherwood Decl.") (attached as Exhibit 1 to Block Decl.). To date, no objections have been received, thus favoring approval of the requested fee. *See e.g.*, *Crocs*, 2014 WL 4670886, at *5 (lack of objections "is significant factor and weighs in favor of the requested award"); *McKeon v. Int. Pizza LLC*, 2020 WL 6782238, at *2 (D. Colo. Nov. 18, 2020) (same); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 515 (W.D. Pa. 2003) ("the absence of substantial objections by other class members to the fee application supports the reasonableness of Lead Counsels' request").

## III. LEAD COUNSEL'S EXPENSES WERE REASONABLY AND NECESSARILY INCURRED IN THE PROSECUTION OF THIS ACTION

Lead Counsel seeks reimbursement of $64,238.99 in Litigation Expenses reasonably incurred in litigating the Action, which expenses are routinely awarded in similar actions, including expert fees, mediation expense, discovery-related costs, and investigation expenses. *Oppenheimer*, 2014 WL 12768451, at *3; *Halliburton*, 2018 WL 1942227, at *14. Here, Plaintiffs' Counsel expended $64,238.99 in out-of-pocket expenses, which are divided into categories and itemized in the declarations submitted by Lead and Liaison Counsel. Block Decl. ¶60. These expenses are well-documented, based on the book and records maintained by each firm, and reflect the costs of prosecuting this litigation. Moreover, these costs were reasonable and necessary. They include, among other things: fees for experts; online legal research costs; an online document review platform;

mediation fees; and copying, mail and telephone. *Id*. Additionally, the Notice informed potential Settlement Class Members that Lead Counsel would seek reimbursement of Litigation Expenses up to $150,000, and, to date, no objection to the expense application has been filed. *Id.* ¶44.

## IV.   THE LEAD PLAINTIFF'S REQUEST IS FAIR REASONABLE AND SHOULD BE APPROVED

The PSLRA, 15 U.S.C. § 78u-4(a)(4), permits Lead Plaintiffs to recoup litigation costs (including lost wages) incurred as a result of serving as lead plaintiffs in the Action and ensuring that the class was adequately represented. Reimbursement of such costs is allowed because it "encourages participation of plaintiffs in the active supervision of their counsel." *Varljen v. H.J. Meyers & Co., Inc.,* 2000 WL 1683656, at *5 n.2 (S.D.N.Y Nov. 8, 2000); *see also Hicks v. Morgan Stanley*, 2005 WL 2757792, at *10 (S.D.N.Y. Oct 24, 2005) (courts "routinely award such costs and expenses both to reimburse named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place."). Congress, in fact, intended to grant courts discretion to grant awards in appropriate cases. *See* H.R. Rep. No. 104-369, at 6 (1995) (Conf. Rep.) ("[L]ead plaintiffs should be reimbursed for reasonable costs and expenses associated with service as lead plaintiff, including lost wages, and [the committee] grants the courts discretion to award fees accordingly."); S. Rep. No. 104-98, at 10 (1995) ("[T]he Committee grants courts discretion to award the lead plaintiff reimbursement for

reasonable costs and expenses (including lost wages) directly relating to representation of the class.").

Here, Lead Counsel requests that the Court approve awards for Lead Plaintiffs in the amount of $5,000 each, for the time they have expended on behalf of the Settlement Class. Block Decl. ¶¶63-64 & Ex. 4 ¶¶5-6, 11. Such a request is fair and reasonable given Lead Plaintiffs' efforts on behalf of the Settlement Class. Throughout this litigation, Lead Plaintiffs have received status reports from Lead Counsel on case developments and participated in regular discussions concerning the prosecution of the Action, the strengths of and risks to the claims, and potential settlement. In particular, throughout the course of this Action, Lead Plaintiffs fulfilled their duties by: (a) regularly communicating with attorneys at Block & Leviton regarding the posture and progress of the case; (b) reviewing the pleadings, briefs, and court orders filed in the Action and discussing them with counsel; (c) consulting with Block & Leviton regarding the settlement negotiations; and (d) evaluating and approving the proposed Settlement. Block Decl. ¶63 & Ex. 4 ¶6. In light of the substantial efforts contributed by Lead Plaintiffs, the amount requested is entirely reasonable, and is consistent with, or lower than, awards in other cases. *See e.g., Peace Officers' Annuity and Benefit Fund of Ga. v. DaVita Inc.,* 2021 WL 1387110, at *7 (D. Colo. Apr. 13, 2021) (awarding lead plaintiff $10,000); *Ryskamp v. Looney*, 2012 WL 3397362, at *6 (D. Colo. Aug. 14, 2012) (approving $50,000 incentive award); *Lucken Family Ltd, P'ship, LLLP v. Ultra Resources, Inc.*, 2010 WL 5387559, at *6 (D. Colo. Dec. 22, 2010) (approving $10,000 incentive award and finding that amount "is well within the

range of reasonable incentive awards."). Accordingly, Lead Counsel respectfully requests that the Court grant this request.[6]

## **CONCLUSION**

For all the foregoing reasons, Lead Plaintiffs and Lead Counsel respectfully request that the Court: (i) award attorneys' fees in the amount of 30% of the Settlement Fund, *i.e.*, $3,300,000, plus interest; (ii) approve reimbursement of $64,238.99 in Litigation Expenses; and (iii) grant awards to Lead Plaintiffs totaling $15,000.

August 13, 2021                                    Respectfully submitted,

                                                   */s/ Jeffrey C. Block*
                                                   Jeffrey C. Block (*pro hac vice*)
                                                   Jacob A. Walker (*pro hac vice*)
                                                   Nathaniel Silver (*pro hac vice*)
                                                   **Block & Leviton LLP**
                                                   260 Franklin Street, Suite 1860
                                                   Boston, Massachusetts 02110
                                                   (617) 398-5600 phone
                                                   (617) 507-6020 fax
                                                   jeff@blockleviton.com
                                                   jake@blockleviton.com

                                                   *Lead Counsel for*
                                                   *Lead Plaintiffs and the Class*

                                                   C. Michael Copeland OBA No. 13261
                                                   **Jones, Gotcher & Bogan P.C.**
                                                   3800 First Place Tower
                                                   15 East 5th Street
                                                   Tulsa, Oklahoma 74103
                                                   (918) 581-8200 phone

---

[6] *See also In re Par Pharm. Sec. Litig.,* 2013 WL 3930091, at *11 (D.N.J. July 29, 2013) (awarding $18,000 to lead plaintiff); *Xcel*, 364 F. Supp. 2d at 1000) (awarding $100,000 collectively to eight lead plaintiffs for services rendered to the class).

(918) 583-1189 fax
mcopeland@jonesgotcher.com

*Local Counsel for*
*Lead Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2021, a copy of the foregoing was filed electronically via the Court's CM/ECF system. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.

By:   */s/ Jeffrey C. Block*
Jeffrey C. Block