# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

IN RE MAMMOTH ENERGY
SERVICES, INC. SECURITIES
LITIGATION

Case No. CIV-19-522-J

CLASS ACTION

**DECLARATION OF JEFFREY C. BLOCK IN SUPPORT OF LEAD PLAINTIFF'S MOTION FOR: (1) FINAL APPROVAL OF THE SETTLEMENT AND PLAN OF ALLOCATION OF SETTLEMENT PROCEEDS; (2) AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF CLASS EXPENSES; AND (3) AWARD OF CONTRIBUTION AWARD TO LEAD PLAINTIFF**

I, Jeffrey C. Block, Esq., pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am admitted to practice law before all of the courts of the Commonwealth of Massachusetts and I am admitted *pro hac vice* in this Action. I am the founding partner of the law firm Block & Leviton LLP ("Lead Counsel"), counsel of record for Lead Plaintiffs Daniel Furia, Vincent Furia, and Sharon Furia ("Lead Plaintiffs"), and Lead Counsel for the Class. I respectfully submit this declaration in support of Lead Plaintiff's motions, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for: (a) final approval of the settlement of this action, which provides for a cash payment of $11,000,000 (the "Settlement"), (b) the Plan of Allocation for the net proceeds of the settlement; (c) Lead Counsel's application for attorneys' fees and expenses; and (d) a contribution award to the Lead Plaintiff.[1]

2. I have personally participated in, overseen, and monitored the prosecution of this Action, and have otherwise been kept informed of developments in this Litigation by attorneys working with me and under my supervision. Thus, if called upon, I can testify to the matters set forth herein.

## I.   PRELIMINARY STATEMENT

3. After eighteen months of hard-fought litigation and vigorous arm's-length negotiations with the assistance of a distinguished private mediator, the Hon. Michael Burrage, Esq., of Whitten Burrage LLP, Lead Plaintiff has achieved a substantial and

---

[1] Unless otherwise indicated, capitalized terms shall have the meaning ascribed to them in the Stipulation and Agreement of Settlement (the "Settlement Agreement") attached to Lead Plaintiff's Unopposed Motion for Preliminary Approval of Settlement and Approval of Notice to the Settlement Class as Exhibit 1. ECF No. 130-1.

valuable Settlement of this Action, which this Court preliminarily approved on May 4, 2021 in its Order Preliminarily Approving Settlement and Providing For Notice ("Preliminary Approval Order"). ECF No. 132.

4. This case has been vigorously litigated from the outset. The Settlement was achieved only after Lead Counsel, among other things: (i) conducted a comprehensive investigation into the allegedly wrongful acts; (ii) drafted two detailed consolidated complaints, including the operative 112-page Second Amended Complaint for Violations of the Federal Securities Laws (the "SAC"), based on the investigation; (iii) engaged in voluminous briefing related to Defendants' motions to dismiss the Amended Complaint ("FAC") and SAC; (iv) engaged in thorough mediation efforts, which included the exchange of comprehensive mediation statements, an initial targeted review of nearly 90,000 internal Mammoth documents produced by Mammoth as part of mediation, and a full-day mediation session before the Honorable Michael Burrage, Esq., of Whitten Burrage LLP; (v) thoroughly reviewed the nearly 90,000 internal Mammoth documents (including emails, internal accounting and billing summaries, invoices, and contracts) following the end of the discovery stay; (vi) prepared a draft Third Amended Complaint based on review of those documents; and (vii) engaged in drawn out negotiations regarding the terms of the proposed Settlement. The efforts that were required to complete these tasks were extensive and represented immense risk given the contingency-based nature of Lead Counsel's representation.

5. Further, the Court's Order on Defendants' Motions to Dismiss significantly curtailed the size of the class by cutting the Class Period from 19.5 months to slightly less

3

than 3 months, which in turn reduced the available recoverable damages from $90.7 million to just $14.9 million. Although Lead Plaintiffs were prepared to move for leave to file a third amended complaint that sought to restore much of the original Class Period, there was a risk that the Court would deny leave to amend or grant in whole or in part the inevitable motion to dismiss that would follow.

6. In deciding to settle, Lead Plaintiffs and Lead Counsel took into consideration the significant risks associated with filing a third amended complaint, briefing a motion to dismiss, certifying a class, and establishing liability, as well as the duration and complexity of these anticipated proceedings. The Settlement was achieved despite vigorous opposition by Defendants who would have continued to raise serious arguments concerning, among other things, the actionability of allegedly false and misleading statements and the extent of any damages and injury to members of the Settlement Class. Although Lead Plaintiff and Lead Counsel were confident in the strength of the anticipated third amended complaint, there remained significant uncertainty in the outcome of the case. Accordingly, in the absence of a settlement, there was a very real risk that the Settlement Class could have recovered nothing or an amount significantly less than the negotiated Settlement.

7. Further evidence that the Settlement represents an excellent result for the Settlement Class is the fact that, as of the filing of this Declaration, to date, no Settlement Class Members have contacted Lead Counsel to object to the Settlement or to opt out of the Settlement Class.

8.     The proposed Plan of Allocation was developed with the assistance of Lead Plaintiffs' damages expert and provides for the fair and equitable distribution of the Net Settlement Fund to Settlement Class Members. The Plan of Allocation will ensure that each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Funds. Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. Because the Plan of Allocation does not provide preferential treatment to any Settlement Class member, segment of the Settlement Class, or to Lead Plaintiff, each Authorized Claimant will be treated fairly and equally. Again, no objections to date to the Plan of Allocation have been filed.

9.     For the reasons set forth below, Lead Counsel believes that final approval of the Settlement and Plan of Allocation should be granted.

## II.     SUMMARY OF LEAD PLAINTIFF'S CLAIMS

10.     The fundamental allegation in this case is that Mammoth's wholly-owned subsidiary, Cobra Acquisitions, LLC ("Cobra"), bribed Federal Emergency Management Agency ("FEMA") officials to steer over $1.8 billion in business to Cobra/Mammoth to re-build Puerto Rico's power grid in the aftermath of Hurricane Maria. The contracts were with the Puerto Rico Electric Power Authority ("PREPA"), whose ability to meet its payment obligations under the contracts was dependent on obtaining funding from FEMA because PREPA was in bankruptcy.

11.     Plaintiffs alleged that this scheme to procure the PREPA contracts violated the contracts' conflict of interest provision, jeopardizing Cobra/Mammoth's ability to be

paid and retain payments already received. Keith Ellison, the President of Cobra, carried out the scheme, and Arty Straehla, Mammoth's CEO, knew about the scheme from its infancy. Mark Layton, Mammoth's CFO, eventually learned about the scheme.

12. Notwithstanding Ellison, Straehla, and Layton's knowledge of the bribery scheme and the related risk of nonpayment, the three of them publicly hyped the PREPA contracts and assured analysts and investors that the contracts were entirely above board and the Company expected to be paid in full.

## III. PROCEDURAL HISTORY AND CLAIMS

13. On June 7, 2019, Plaintiff Thomas Scuderi initiated this Action by filing a Class Action Complaint for Violations of the Federal Securities Laws in the Western District of Oklahoma, styled *Scuderi v. Mammoth Energy Services, Inc., et al.*, Case No. 5:19-cv-00522-SLP. ECF No. 1. The Action was assigned to United States District Judge Scott L. Palk.

14. On June 19, 2019, Plaintiff Justas Normantas filed a related action captioned *Normantas v. Mammoth Energy Services, Inc., et al.*, Case No. 5:19-cv-00560-SLP.

15. On August 6, 2019, Plaintiff Sarasota General Employees Defined Benefit Pension Plan filed a related action captioned *Sarasota General Employees Defined Benefit Pension Plan v. Mammoth Energy Services, Inc., et al.*, Case No. 5:19-cv-00720-SLP.

16. By Order dated September 13, 2019, Judge Palk consolidated the three cases into *In re Mammoth Energy Services, Inc.*, No. 5:19-cv-522-SLP, appointed Daniel Furia, Vincent Furia, and Sharon Furia Lead Plaintiff, and approved Lead Plaintiffs' selection of Block & Leviton LLP as Lead Counsel. Judge Palk deferred ruling on appointment of

6

Jones, Gotcher & Bogan, P.C. as local counsel pending submission of information demonstrating the firm's qualifications. ECF No. 41.

17. By Order Dated September 25, 2019, Judge Palk appointed Jones, Gotcher & Bogan, P.C. as Local Counsel. ECF No. 45.

18. On November 12, 2019, Lead Plaintiffs filed the FAC, asserting claims against all Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and against Defendants Arty Straehla, Mark Layton, and Keith Ellison under Section 20(a) of the Exchange Act. ECF No. 55.

19. By Order dated January 6, 2020, the Clerk of Court, at the direction of Judge Palk, reassigned the case to United States District Judge Bernard M. Jones. ECF No. 71.

20. On January 10, 2020, Defendants Mammoth, Straehla, and Layton filed a motion to dismiss the claims alleged against them in the FAC. ECF No. 76.

21. On February 24, 2020, Lead Plaintiffs filed their papers in opposition, as well as a motion for leave to file the SAC. ECF Nos. 88, 87. Defendants did not oppose the motion, and, on March 9, 2020, Judge Jones granted Lead Plaintiffs' motion for leave to file the SAC. ECF No. 92.

22. On March 9, 2020, Plaintiffs filed the SAC, asserting claims against all Defendants under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and against Defendants Straehla, Layton, and Ellison under Section 20(a) of the Exchange Act. ECF No. 93.

23.     On March 30, 2020, Defendants Mammoth, Straehla, and Layton filed a motion to dismiss the claims alleged against them in the SAC, and Defendant Ellison filed a separate motion to dismiss the claims alleged against him in the SAC. ECF Nos. 104, 105.

24.     On September 29, 2020, while Defendants' motions to dismiss were pending, Lead Counsel and Defendants' Counsel participated in a full-day mediation session before the Honorable Michael Burrage, Esq. of Whitten Burrage LLP. In advance of that session, the Parties prepared and exchanged detailed mediation statements. Additionally, Mammoth provided Lead Plaintiffs with considerable discovery under certain restrictive conditions, which limited use of the documents to mediation unless and until the PSLRA stay of discovery was lifted. This discovery consisted of nearly 90,000 documents. Due to the short window of only several days between when Defendants' produced the documents and the scheduled mediation session, Lead Counsel was limited to conducting a targeted, cursory review of the documents. The mediation session ended without any agreement being reached.

25.     The parties continued to discuss grounds for resolving the case following the conclusion of the mediation session.

26.     On January 26, 2021, the Court issued an Order granting Defendant Ellison's motion to dismiss and granting in part and denying in part the motion to dismiss filed by Defendants Mammoth, Straehla, and Layton. ECF No. 123. The Order sustained claims against Mammoth, Straehla, and Layton based on statements and omissions made on or

after March 15, 2019, dismissed all other claims, and (implicitly) lifted the the PSLRA's stay of discovery.

27. With the stay of discovery lifted, Lead Counsel began thoroughly reviewing the nearly 90,000 documents produced for mediation. Lead Counsel began drafting a third amended complaint, based on review of those documents, with additional allegations that Lead Plaintiffs believe would have allowed the Court to reinstate claims related to Defendants' earlier false and misleading statements.

28. Counsel for Lead Plaintiff and for Defendants Mammoth, Straehla, and Layton continued to hold numerous discussions over resolution of the case following the Court's January 26, 2021 Order. To accommodate those discussions, Defendants twice moved the Court for an extension of the deadline to answer Lead Plaintiffs' SAC. Those discussions ultimately resulted in an agreement, on March 12, 2021, to settle and release all claims arising out of, based upon, or related to their purchase or acquisition of Mammoth common stock during the Class Period and the allegations, representations, or omissions set forth in the SAC in return for a cash payment by or on behalf of Defendants of $11,000,000 for the benefit of the Settlement Class, subject to certain terms and conditions and the execution of an agreement of settlement and related papers.

29. At the time of the agreement to settle, Lead Counsel had reviewed nearly 90,000 documents produced by Defendants and was prepared to file a third amended complaint, based on the review of those documents, which would have included additional allegations that Plaintiffs believe would have allowed the Court to reinstate claims against Defendants related to earlier alleged false and misleading statements. Based upon their

investigation, prosecution and mediation of the case, Lead Plaintiffs and Lead Counsel have concluded that the terms and conditions set forth in the Settlement Agreement are fair, reasonable and adequate to Lead Plaintiffs and the other members of the Settlement Class, and in their best interests.

## IV.    SUMMARY OF THE SETTLEMENT

30.    The Settlement consists of $11,000,000 in cash, plus interest. The "Settlement Class" is defined in the Settlement Agreement as all persons and entities that purchased or otherwise acquired Mammoth Energy Services, Inc. common stock between October 19, 2017 and June 5, 2019, inclusive, and were damaged thereby.  Excluded from the Settlement Class are (i) Defendants; (ii) the officers and directors of the Company during the Settlement Class Period (the "Excluded Officers and Directors"); (iii) members of the Immediate Families of the Individual Defendants and of the Excluded Officers and Directors; (iv) any entity in which any Defendant, any Excluded Officer or Director, or any of their respective Immediate Family members had during the Settlement Class Period and/or has a controlling interest; and (v) the legal representatives, heirs, successors or assigns of any excluded person or entity, in their respective capacity as such. For avoidance of doubt, Wexford Capital LP and its affiliates and Gulfport Energy Corporation and its affiliates are Excluded from the Settlement Class. Also excluded from the Settlement Class are the persons and entities who or which timely and validly seek exclusion from the Settlement Class or whose request for exclusion is accepted by the Court.

10

## V. LEAD PLAINTIFF'S COMPLIANCE WITH THE PRELIMINARY APPROVAL ORDER

31. Pursuant to the Court's Preliminary Approval Order, Lead Counsel, through the Claims Administrator, implemented a comprehensive notice program whereby a detailed Notice was mailed to members of the Class, which directed potential Settlement Class Members to the Claims Administrator's website, which contains information regarding the Settlement, the same detailed Notice mailed to Class members, and a Claim Form, along with instructions on how to submit a Claim Form or objection or request exclusion from the Settlement. As of August 12, 2021, Notice was mailed to 18,842 potential Class Members. *See* Declaration of Markham Sherwood of Angeion Group Regarding: (A) Mailing of Notice and Proof of Claim and Release; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections Received, dated August 12, 2021, ¶8 ("Sherwood Decl.") (attached hereto as Exhibit 1). Pursuant to the Court's Preliminary Approval Order, Summary Notice was also published on the internet over the *PR Newswire* and in *Investor's Business Daily* on June 7, 2021. *See id.* ¶9. Furthermore, the Claims Administrator established a toll-free phone line and dedicated email address to provide information and to answer potential Settlement Class Members' questions. *See id.* ¶¶11-12.

32. The Notice described, *inter alia*, the claims asserted in the Action, the contentions of the Parties, the course of the litigation, the terms of the Settlement, the maximum amounts that would be sought in attorneys' fees and expenses, the Plan of Allocation, the right to object to the Settlement, and the right to seek to be excluded from

the Settlement Class. The Notice also provided instructions to securities brokers and other nominee holders for forwarding the Notice to those persons for whom the nominees held shares in street name. Additionally, the Notice identified the deadlines for objecting, seeking exclusion, and submitting claims, and advised potential Settlement Class Members of the scheduled Settlement Hearing before this Court.

33. As set forth in the Preliminary Approval Order, the deadline for Class Members to object to the Settlement, the Plan of Allocation, or to the application for attorneys' fees and expenses – or to exclude themselves from the Class – is August 30, 2021. While these deadlines have not yet passed, to date, not a single Class Member has objected to, or requested exclusion from, the Settlement. *Id.* ¶¶14-15 Should any objections or requests for exclusion be received, Lead Plaintiffs will address them in their reply papers, which are due September 14, 2021.

## VI. RISKS OF CONTINUED LITIGATION

34. Lead Plaintiffs believes that they developed substantial evidence during discovery that supports their claims. Lead Plaintiffs also realized, however, that continued litigation would have been costly, risky, and drawn out. Lead Plaintiffs and Lead Counsel carefully considered these risks during the period leading up to the Settlement and throughout the settlement discussions with Defendants and the mediator.

35. In agreeing to settle, Lead Plaintiffs and Lead Counsel weighed, among other things, the substantial and immediate cash benefit to Settlement Class Members against: (i) the uncertainties associated with trying complex securities cases; (ii) the Court's Order regarding Defendants' motions to dismiss the SAC; (iii) the difficulties and challenges in

filing a third amended complaint and defending it against a motion to dismiss; (iv) the difficulties and challenges involved in establishing loss causation for all damages caused to the Settlement Class; (v) the difficulties and challenges involved in certifying a class; (vi) the fact that, even if Lead Plaintiff prevailed at summary judgment and trial, any monetary recovery could have been substantially less than the Settlement Amount; and (vii) the inevitable delays that would follow even a favorable final judgment, including appeals.

36. Although Lead Plaintiffs succeeded in defeating Defendants' motions to dismiss in part, the Court's Order severely curtailed the Class Period alleged in the SAC. As a result, Lead Plaintiffs would have had to successfully file and defending a third amended complaint to restore the Class Period and damages alleged.

37. Then Lead Plaintiffs faced the challenges of certifying the Class and defending against Defendants' inevitable motions for summary judgment.

38. After that, Lead Plaintiffs faced the burden of demonstrating liability and damages at trial (and on any subsequent appeal) in the face of reasonable arguments Defendants would likely make concerning the disaggregation of damages resulting from causes other than the alleged securities fraud. If Defendants had been successful at any of these stages, the amount of any potential recovery would have been sharply limited, or even foreclosed altogether.

39. Lead Plaintiff and Class Counsel recognize the significant risk, time, and expense involved in prosecuting the claims against Defendants through class certification,

completion of fact and expert discovery, summary judgment, trial, and subsequent appeals, as well as the inherent difficulties and delays complex litigation like this entails.

40. In summary, there were multiple procedural hurdles, as well as significant merit-based risks involved in proceeding with the litigation, each of which was carefully considered by Lead Counsel and Lead Plaintiffs in making the determination to settle with Defendants on the agreed terms.

41. Having considered the strengths and weaknesses of the claims, and evaluating the aforementioned risks of continued litigation, it is the informed judgment of Lead Counsel, based upon all proceedings to date and their extensive experience in litigating class actions under the federal securities laws, that the Settlement of this matter before this Court and the Plan of Allocation are fair, reasonable, adequate, and in the best interests of the Class.

## VII. THE PROPOSED PLAN OF ALLOCATION

42. The Plan of Allocation is designed to equitably distribute the Net Settlement proceeds among Settlement Class Members. Under the Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund. Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. The Plan of Allocation does not provide preferential treatment to any Settlement Class Member, segment of the Settlement Class, or to Lead Plaintiff and is thus fair, reasonable, and adequate.

## VIII. LEAD COUNSEL'S APPLICATION FOR ATTORNEYS' FEES IS REASONABLE

### A. A Reasonable Percentage of the Fund Recovered Is the Appropriate Method to Use in Awarding Attorneys' Fees in Common Fund Cases

43. For their significant and effective efforts on behalf of the Settlement Class, Lead Counsel are applying for compensation from the Settlement Fund on a percentage basis. Courts have recognized that the percentage method is the appropriate method of fee recovery because, among other things, it aligns the lawyers' interest in being paid a fair fee with the interest of the Class in achieving the maximum recovery.

### B. Consideration of Relevant Factors Justify an Award of 30% Fee in This Case

44. The Notice provides that Lead Plaintiffs' Counsel would apply for a fee award in an amount up to 30% of the Settlement Fund and that Lead Counsel would request reimbursement of Plaintiffs' Counsel's costs and expenses in an amount not to exceed $150,000, which may include an application for reimbursement of the reasonable costs and expenses incurred by Lead Plaintiffs directly related to his representation of the Settlement Class. Lead Counsel submit that such an award is reasonable and appropriate under the circumstances. Numerous factors are present here that justify this Court's award of this fee.

#### 1. The Settlement Benefit Achieved

45. Courts have consistently recognized that the result achieved is a major factor to be considered in making a fee award. Here, the $11 million Settlement is a superb result, particularly where the operative class period would result in only $14.9 million in recoverable damages. Based on the sustained class period, this settlement represents almost

75% of total recoverable damages Plus, when considered in view of the substantial risks and obstacles to recovery if the Action was to be litigated to trial and likely through post-trial motions and appeals, the result achieves an excellent recovery for the class.

46. Lead Plaintiffs, however, would have attempted to amend the SAC to expand the class period back to begin on October 20, 2017. If Lead Plaintiffs were successful in doing so—and there was no assurance that the Court would permit another amendment or that the new allegations would not be dismissed again—and if a class were certified, if Defendants' likely summary judgment motion were denied, and if, after a jury trial, the Court and jury accepted Lead Plaintiffs' damages theory (including proof of loss causation, which was hotly contested at mediation)—*i.e.*, Lead Plaintiffs' **best case scenario**—the total maximum damages would be approximately $90.7 million. Thus, the settlement amount represents 12.1% of the total **maximum** damages **potentially** available in this action.

47. By comparison, the median recovery in securities class actions in 2020 was approximately 1.7% of estimated damages. *See* Janeen McIntosh and Svetlana Starykh, Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review, NERA (Jan. 25, 2021), at 20, Fig. 16. (attached hereto as Exhibit 5). Moreover, had Defendants prevailed on any motion(s) for class certification or at summary judgment—or had the Court or a jury later accepted Defendants' loss causation and disaggregation arguments—recoverable damages would have been substantially diminished or completely eliminated. The $11 million settlement far exceeds comparable securities class action settlement and,

16

therefore, is a very strong recovery considering the best possible recovery for the Settlement Class.

48. This favorable Settlement was obtained through investigative efforts, contentious motions practice, extensive review of documents produced in mediation, and vigorous, and arm's-length settlement negotiations with the assistance of a respected and skilled mediator. Nor is there any evidence that the Settlement was tainted by fraud. As a result of this Settlement, hundreds, if not thousands, of Class Members will benefit and receive compensation for their losses and avoid the real, and substantial risk of no recovery in the absence of settlement.

### 2. The Risk of Contingent Class Action Litigation

49. This Declaration and the memoranda in support of the Settlement and the fee request described the substantial risks of the litigation. Those same difficulties also constituted risks that Lead Counsel might never be paid for their efforts. Indeed, courts in this Circuit have consistently recognized the risk of non-payment as an important factor in determining a fee award. There are numerous cases where class counsel in contingent fee cases such as this, after expenditures of thousands of hours and significant out-of-pocket expenditures, have received no compensation whatsoever. Lead Counsel knows from experience that despite the most vigorous and competent of efforts, attorneys' success in contingent litigation such as this is never assured.

50. Moreover, courts have repeatedly recognized that it is in the public interest to have experienced and able counsel for the private enforcement of the federal securities laws and regulations pertaining to the duties of officers and directors of public companies.

Vigorous private enforcement of the federal securities laws can only occur if private plaintiffs take an active role in protecting the interests of shareholders.

51.     Because the fee to be awarded in this matter is entirely contingent, the only certainty from the outset was that there would be no fee without a successful result and that such a result would be realized only after a lengthy and difficult effort. As discussed in greater detail above, this case was fraught with significant risks concerning liability and damages. Lead Plaintiffs' success was by no means assured. Defendants disputed whether Lead Plaintiffs could even establish liability and would have inevitably raised substantial arguments concerning loss causation and damages.

52.     Indeed, were this Settlement not achieved, and even if Lead Plaintiffs prevailed at class certification, on summary judgment, and at trial, Lead Plaintiffs and Lead Counsel faced potentially years of costly and risky litigation against Defendants, with ultimate success far from certain and the prospect of no recovery a substantial possibility. It is also possible that a jury could have found no liability or no damages. Lead Counsel therefore believe that based upon the substantial risk factors present that an award of attorneys' fees of 30% of the Settlement Fund is reasonable.

### 3.     The Diligent Prosecution of This Case

53.     The requested fee is also warranted in light of the extensive efforts on the part of Lead Counsel, as outlined above, required to produce this result.

54.     Lead and Liaison Counsel spent approximately 2,667 hours of time on this case, including: (i) conducting a comprehensive investigation into the allegedly wrongful acts, which included, among other things, a review and analysis of Mammoth's filings with

the SEC, public reports and news articles concerning Mammoth, documents filed in the case of *United States of America v. Ahsha Nateef Tribble, Donald Keith Ellison and Jovanda R. Patterson*, Crim. No. 19-541 (D.P.R.) and transcripts of Mammoth's investor calls, and consultation with accounting, damages and market efficiency experts; (ii) drafting the FAC and the operative SAC, based on the investigation; (iii) engaging in voluminous briefing related to Defendants' motions to dismiss the SAC; (iv) drafting extensive mediation statements; (v) participating in protracted mediation efforts, including a full-day mediation session before the Honorable Michael Burrage, Esq., of Whitten Burrage LLP; extensively reviewing nearly 90,000 internal Mammoth documents (including emails, internal accounting and billing summaries, invoices, and contracts) produced by Mammoth as part of mediation; (vi) preparing a draft Third Amended Complaint, based on review of those documents; and (vii) engaging in negotiations regarding the terms of the proposed Settlement.. *See* Declaration of Jeffrey C. Block in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses Filed on Behalf of Block & Leviton LLP ("B&L Decl.") ¶3 (attached hereto as Exhibit 2); Declaration of C. Michael Copeland in Support of Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses Filed on Behalf of Jones, Gotcher & Bogan, P.C. ("JG&B Decl.") ¶4 (attached hereto as Exhibit 3). Plaintiff's Counsel's resulting lodestar is $1,497,317.50. The requested fee results in a multiplier of 2.2, a figure demonstrating that Class Counsel vigorously and efficiently fought to achieve the result on behalf of the Class.

### 4. The Complexity of This Action's Factual and Legal Questions

55. Numerous courts have recognized that risk, as well as the novelty and difficulty of the issues presented, are important factors in determining a fee award. There is no question that from its outset, this Action presented a number of sharply-contested issues of both fact and law and that Lead Plaintiffs faced formidable defenses to liability and damages. The substantial risks and uncertainties made it far from certain that any recovery, let alone $11 million, would ultimately be obtained.

56. From the outset, this Action was an especially difficult and highly uncertain securities case, with no assurance whatsoever that the Action would survive Defendants' attacks on the pleadings, motion for class certification, motions for summary judgment, trial, and appeal. Indeed, Defendants' motions to dismiss the SAC obtained dismissal of all claims based on Defendants' statements made prior to March 15, 2019, leaving a class period of only three months. Defendants' inevitable arguments regarding loss causation and damages posed a significant threat that the total recoverable damages (regardless of the actionable class period) would be significantly reduced. Additionally, very difficult issues of proof remained at summary judgment and trial as to key elements of the claims for securities laws violations. Continued litigation would have involved substantial briefing, extensive and costly expert involvement, third party discovery involving federal and Puerto Rican government agencies, and the taking of numerous depositions. The costs and risks associated with litigating this Action to a verdict, not to mention the inevitable appeals, would have been high, and the process would require hundreds of hours of this

Court's time and resources. This Action would easily require an additional 2-3 years before a recovery, if any, was obtained for the Class.

### 5. Plaintiffs' Counsel's Work and Experience

57. As evidenced by its firm resume, Block & Leviton has significant experience litigating federal securities fraud class actions throughout the country. *See* B&L Decl. Ex. A. Liaison Counsel's firm resume demonstrates that Jones, Gotcher & Bogan, P.C. is also highly experienced. *See* JG&B Decl. Ex. A.

58. The record in this case, along with the matters described in this Declaration, demonstrate the enormous effort and expense that went into successfully resolving this Action. Lead Counsel's declarations outline the amount of time spent by each attorney and paralegal employed by Plaintiffs' Counsel and Liaison Counsel, and the lodestar calculation based on current billing rates, demonstrating that a 30% fee is reasonable for the extraordinary efforts expended to achieve the result in this case.

### 6. Standing and Caliber of Opposing Counsel

59. The quality of work performed by Lead Counsel in attaining the Settlement should also be evaluated in light of the quality of the opposition. Defendants Mammoth, Straehla, and Layton were represented by Quinn Emanuel Urquhart & Sullivan, LLP and Defendant Ellison was represented by Norton Rose Fulbright, both firms with a national reputation for the tenacious litigation of class actions and other complex civil matters. Lead Counsel was able to develop a case that was sufficiently strong to persuade Defendants to settle the case on terms that were highly favorable to the Class.

21

## IX. PAYMENT OF THE REQUESTED EXPENSES AND COSTS IS FAIR AND REASONABLE

60. Plaintiffs' Counsel are also moving for payment of $64,238.99 in litigation expenses reasonably and actually incurred in connection with commencing and prosecuting the claims against Defendants, as outlined in the accompanying declarations. Plaintiffs' Counsel advanced all of the litigation expenses. *See* B&L Decl. ¶4; JG&B Decl. ¶6.

61. From the beginning of the case, Plaintiffs' Counsel were aware that they might never recover any of their expenses, and, at the very least, would not recover anything until the Action was successfully resolved. Plaintiffs' Counsel also understood that, even assuming the case was ultimately successful, reimbursement for expenses would not compensate them for the lost use of funds advanced by them to prosecute this Action. Thus, Plaintiffs' Counsel were motivated to, and did, take steps to assure that only necessary expenses were incurred for the vigorous and efficient prosecution of the case.

62. In view of the complex nature of the Action, the litigation expenses incurred were reasonable and necessary to pursue the interests of the Class. Accordingly, Lead Counsel respectfully submit that the request for expenses be granted.

## X. THE REQUESTED PAYMENT FOR LEAD PLAINTIFFS IS FAIR AND REASONABLE

63. Lead Plaintiffs Daniel Furia, Vincent Furia, and Sharon Furia seek modest reimbursement for the time they have expended on behalf of the Class. *See* Declaration of Daniel Furia in Support of: (I) Lead Plaintiffs' motion for Final Approval of Class Action Settlement and Plan of Allocation and Certification of Settlement Class for Settlement Purposes Only; and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and

22

Reimbursement of Litigation Expenses ("Furia Decl.") (attached hereto as Exhibit 4). Reimbursement of a class representative's reasonable costs and expenses is authorized under the PSLRA, 15 U.S.C. § 78u-4(a)(4), and Lead Counsel believe, based on their knowledge of Lead Plaintiffs' activity in this case, that the requested amount of $5,000 each, totaling $15,000, is reasonable and should be approved by the Court. Throughout this litigation, the Furia Family received regular status reports from Block & Leviton on case developments and participated in regular discussions concerning the prosecution of the Action, the strengths of and risks to the claims, and potential settlement. *Id.* ¶¶5-7. In particular, throughout the course of this Action, the Furia Family fulfilled their duties as Lead Plaintiffs by: (a) regularly communicating with attorneys at Block & Leviton regarding the posture and progress of the case; (b) reviewing pleadings, briefs, and court orders filed in the Action and discussing them with counsel; (c) consulting with his attorneys regarding the settlement negotiations; and (d) evaluating and approving the proposed Settlement. *Id.* ¶6.

64. Moreover, the Notice stated that Lead Counsel would request reimbursement of litigation costs and expenses in an amount not to exceed $150,000, which may include an application for reimbursement of the reasonable costs and expenses incurred by Lead Plaintiff directly related to his representation of the Class. To date, there have been no objections to such a request. Thus, Lead Counsel believes that an award of $5,000 to each member of the Furia Family for the time and effort they have expended on behalf of the Class would be fair and reasonable.

## XI.   CONCLUSION

65.    For all of the foregoing reasons, Lead Counsel respectfully requests that the Court: (1) approve the Settlement and Plan of Allocation; (2) approve the application for an award of attorneys' fees of 30% of the Settlement Fund, plus $64,238.99 in expenses that were incurred in connection with the litigation; and (3) award $5,000 to each Lead Plaintiff to compensate them for the time they spent on this litigation on behalf of the Class.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this 13th day of August, 2021, at Boston, Massachusetts.

By: *s/ Jeffrey C. Block*
Jeffrey C. Block, *pro hac vice*
**Block & Leviton LLP**
260 Franklin Street, Suite 1860
Boston, MA 02110
Telephone: (617) 398-5600
Facsimile: (617) 507-6020
jeff@blockleviton.com

*Lead Counsel for the Class*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served upon its filing via this Court's

CM/ECF system on this 13th day of August, 2021 to all counsel of record.

By: *s/ Jeffrey C. Block*
Jeffrey C. Block