UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN RE MAMMOTH ENERGY SERVICES, INC. SECURITIES LITIGATION | Case No.: 5:19-cv-00522-J<br><br>CLASS COUNSEL'S NOTICE OF MOTION AND MOTION FOR DISTRIBUTION OF CLASS ACTION SETTLEMENT FUNDS |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Class Counsel Block & Leviton LLP ("Class Counsel" or "Block & Leviton") will, and hereby does, move for an Order granting approval of the distribution plan for the Net Settlement Fund substantially in the form submitted herewith.[1]

Class Counsel respectfully requests that the Court: (i) approve the administrative determinations of the Claims Administrator, Angeion Group ("Angeion" or "Claims Administrator") regarding the acceptance and denial of Claims received; (ii) direct the distribution of the Net Settlement Fund to Class Members with eligible claims ("Authorized Claimants"), as described herein and in the Declaration of Charles E. Ferrara of Angeion Group in Support of Class Counsel's Motion for Distribution of Class Action Settlement Funds ("Ferrara Declaration"); and (iii) authorizing additional payment to the Claims Administrator in the amount of $114,175.88 for claims administration services.

This Motion is based upon: (i) the accompanying Memorandum of Points and Authorities; (ii) the Declaration of Jeffrey C. Block ("Block Declaration"); (iii) the Ferrara Declaration; (iv) the Stipulation, pleadings, and other records on file in this Action; and (v) other such matters and argument as the Court may consider at the hearing of this Motion.

---

[1] All capitalized terms that are not otherwise defined herein shall have the meanings set forth in the Stipulation. ECF No. 130-1.

## MEMORANDUM OF POINTS AND AUTHORITIES

Class Counsel respectfully requests the Court approve the Distribution Plan for the Net Settlement Fund, as described herein and by the Claims Administrator in the accompanying Ferrara Declaration.

### I.    BACKGROUND

On May 4, 2021, the Court granted Lead Plaintiffs' Motion for Preliminary Approval. ECF No. 132 ("Preliminary Approval Order"). On September 21, 2021, the Court entered a Judgement Approving Class Action Settlement (ECF 140, the "Final Approval Order"), granting final approval of the Settlement and an Order Approving Plan of Allocation (ECF 141). The Final Approval Order approved the proposed settlement of the above-captioned action for $11,000,000. *Id.*

Pursuant to the Stipulation, the Settlement Amount was deposited into the Escrow Account and has been earning interest for the benefit of the Class. Block Decl. at ¶3. To date, the following amounts have been paid from the Escrow Account: (i) attorneys' fees in the amount of $3,300,000; (ii) litigation expenses in the amount of $63,087.65; (iii) lead plaintiff awards of $5,000 each for lead plaintiffs Daniel Furia, Vincent Furia, and Sharon Furia; (iv) administration costs paid to the Claims Administrator in the amount of $62,255.94; and (v) tax payments of $137,779.00. The escrow account has earned over $554,425.67 in interest, which continues to accrue.

The Claims Administrator disseminated over 23,213 Notice packets to potential Class Members and other nominees, and received and fully processed 8,270 Claims, for a response rate of 35.6%. Ferrara Decl. ¶8; ECF No. 142 at 2. Of the 8,270 Claims, 2,848 were both submitted by the Court-approved Claim submission deadline of October 30, 2021, and determined by Angeion to be eligible to participate in the Settlement following the deficiency process ("Timely Eligible Claims"). Ferrara Decl. ¶26. The Timely Eligible Claims had a total Recognized Loss Amount of $59,064,332.25. *Id.* The Claims Administrator also received 286 Claims which arrived or were postmarked after the Court's October 30, 2021 deadline but by May 28, 2024. Ferrara Decl. ¶27. Of these, Angeion found 141 to be otherwise eligible, except for their belated submission ("Late But Otherwise Eligible Claims"). *Id.* The total Recognized Claim amount for the Late But

Otherwise Eligible Claims is $8,484,366.44. *Id.* The Claims Administrator believes that no delay has resulted from its provisional acceptance of the Late But Otherwise Eligible Claims. *Id.* at ¶28. The Claims Administrator and Class Counsel recommend that the Court permit the Late But Otherwise Eligible Claims to participate in the Settlement.

As the Claims Administrator has now completed its claim processing procedures, deficiency process, and Quality Assurance audit with respect to all claims submitted through May 28, 2024, Ferrara Decl. ¶24, the Court should (i) approve the Distribution Plan for the Net Settlement Fund as described in ¶¶33-40 of the Ferrara Declaration; (ii) permit funds to be released to the Authorized Claimants; and (iii) authorize payment to Angeion for claims administration services in the amount of $114,175.88.

## II.    DETERMINATION OF AUTHORIZED CLAIMS

### a.  Eligible Claims

Angeion mailed over 23,213 Notice packets to potential Class Members and other Nominees. ECF No. 142 at 2. The Summary Notice was also published in *Investor's Business Daily* and was sent over the *PR Newswire* on June 7, 2021. ECF No. 135 at 23. Additionally, Angeion maintained and continues to maintain a toll-free helpline and the Settlement Website (www.MammothSecuritiesSettlement.com), where claim forms, information, and relevant Court filings have been accessible to Class Members and the public. *Id.*

The Notice specified that prospective claimants must submit a properly executed Proof of Claim and Release ("Claim Form") postmarked by October 30, 2021, and accompanied by supporting documentation evidencing eligible trades of Mammoth Energy Services, Inc. common stock within the Class Period, between October 19, 2017 and June 5, 2019. ECF No. 137-1 at 13. The Claims Administrator has processed all Claims it has received through May 28, 2024. Ferrara Decl. ¶24. As of May 28, 2024, Angeion has received a total of 8,270 Claims. *Id.* at ¶¶26–27.

Angeion has concluded that of the submitted Claims, 2,989 are eligible to participate in the Settlement ("Eligible Claims"), representing a total Recognized Claim amount of approximately $67,548,698.69. *Id.* at ¶¶26–27. This total includes the 141 Late But Otherwise Eligible Claims which were received after the October 30, 2021 submission deadline but were otherwise properly

documented and represented a positive Recognized Loss Amount. *Id.* Class Counsel and the Claims Administrator recommend that the Court permit the Late But Otherwise Eligible Claims to participate in the distribution of the Net Settlement Fund because their inclusion has not caused delay and will not prejudice any other Class Members. *Id.* at ¶28; ECF No. 132 at ¶11 ("Notwithstanding the foregoing, Lead Counsel may, at its discretion, accept for processing late Claims provided such acceptance does not delay the distribution of the Net Settlement Fund to the Settlement Class."); *see also Rose v. Array Biopharma Inc. et al.,* 1:17-cv-02789-KLM (D. Colo. Apr. 17, 2023) (ECF No. 102) (allowing claims submitted before March 7, 2023 to participate in settlement distribution, after initial notice deadline passed in August 2021); *In re TASER Int'l, Inc. Sec. Litig.*, No. CV-05-115-PHX-SRB, 2009 WL 10707825, at *2 (D. Ariz. July 15, 2009) (allowing claims submitted after April 16, 2007 deadline and before July 3, 2008 to participate in settlement distribution).

The submission window cannot be held open indefinitely, however, without delaying distributions to Authorized Claimants. Accordingly, the Claims Administrator and Class Counsel recommend the Court order that no Claim received or postmarked after May 28, 2024, be eligible for a distribution from the Net Settlement Fund. *See* Ferrara Decl. ¶28.

Class Counsel therefore respectfully requests the Court approve the Distribution Plan for the Net Settlement Fund described in ¶¶33-40 of the Ferrara Declaration and allow the 3,130 claims identified to be eligible by the Claims Administrator to receive Settlement distributions.

### b. Deficient Claims

The Claims Administrator conducted a comprehensive analysis to determine claim validity. The review process included, among other things: creating and entering Claim data into a unique database, verifying the completeness and accuracy of information provided on claimants' Claim Forms from the supporting documentation, developing a proprietary "calculation module" to calculate claimants' Recognized Loss Amounts pursuant to the Court-approved Plan of Allocation set forth in the Notice, and identifying deficiency and ineligibility conditions existing within individual Claims. Ferrara Decl. ¶¶10, 15–21.

When Angeion encountered a Claim with one or more deficiencies—for example, incomplete Claims, Claims which lacked adequate documentation or signatures, Claims which lacked purchases during the Class Period, Claims without a Recognized Loss Amount, or duplicate Claims—Angeion mailed a Notice of Rejection of Claim ("Deficiency Letter") to the claimant. *Id.* at ¶¶15–21. Deficiency Letters explained why the Claim was deficient and offered claimants an opportunity to cure the defect by submitting necessary information or documentation within 20 days from the date of the Deficiency Letter. *Id.* at ¶20. The Deficiency Letters informed claimants that their claims would be rejected or denied if the deficiencies were not cured. *Id.* Furthermore, the Deficiency Letters advised claimants that they had a right to contest the Claims Administrator's determination of ineligibility by submitting written statements to the Claims Administrator requesting Court review of their claims. *Id.* at ¶22.

The Claims Administrator mailed a total of 126 Deficient or Denied Claim Notices to claimants who filed paper claims through April 28, 2023. *Id.* at ¶15. Of the 7,729 electronic claims received, 477 were incomplete or deficient and were filed by a total of 33 unique electronic filers. *Id.* at ¶19. In total, the Claims Administrator recommends rejecting 545 Claims in whole or in part because they: (a) did not involve eligible common stock purchases during the Class Period (418); (b) were duplicative or were withdrawn by the Court (102); or (c) had uncured deficiencies (25). *Id.* at ¶30. Additionally, the Claims Administrator recommends 4,734 Claims for rejection due to their Recognized Loss calculating to an amount of zero under the Plan of Allocation. *Id.* at ¶31.

One (1) claimant submitted a request for Court review. *Id.* at ¶22. Angeion promptly contacted the claimant who requested Court review to explain the deficiency designations, answer all questions, and facilitate the submission of information needed to cure the deficiencies. *Id.* at ¶¶22-23. The sole claimant thereafter resolved their request. *Id.* There are no disputed claims that require Court review.

## III.    DISTRIBUTION OF THE NET SETTLEMENT FUND

Angeion has completed its review and is now prepared to distribute the Net Settlement Fund to Authorized Claimants. According to each claimant's Recognized Loss Amount, as calculated pursuant to the Plan of Allocation specified in the Notice, ECF No. 137-1, Ex. A at 2-3, 8-9, each

claimant with a positive Recognized Loss Amount over $10.00 shall receive a pro rata share of the Net Settlement Fund, Ferrara Decl. ¶36. Claimants with Recognized Loss Amounts greater than $0.00 but less than $10.00 shall not receive any distribution from the Net Settlement Fund. *Id.* at ¶35; ECF No. 137-1, Ex. A at 2-3, 8-9. Angeion will then make an initial distribution of the Net Settlement Fund. Authorized Claimants will be notified that if they do not cash their distribution checks within 90 days of issuance, the check will lapse and their entitlement to recovery will be forfeited. Ferrara Decl. ¶36. No earlier than nine (9) months after the initial distribution, the funds allocated to forfeited checks and any other amounts remaining in the Net Settlement Fund will then be made available in a second distribution, after deducting Angeion's fees and expenses for the estimated costs of an additional distribution, to Authorized Claimants who: (1) cashed their Distribution Payment, and (2) are entitled to at least $10.00 from the re-distribution based on their pro rata share of the remaining funds. *Id.* at ¶38.

Should funds remain in the Net Settlement Fund following the second distribution, additional distributions may occur in 90-day intervals until Class Counsel determines that further distributions are not cost effective. *Id.* at ¶39. If any funds remain in the Net Settlement Fund after determining that further re-distribution is no longer cost-effective, the funds shall be contributed to a non-sectarian, not-for-profit 501(c)(3) organization(s), to be recommended by Class Counsel and approved by the Court. *Id.* at ¶40.

## IV.    RELEASE OF CLAIMS

To ensure the prompt and full distribution of the Net Settlement Fund, and pursuant to the Stipulation, Class Counsel believes it is necessary to bar any claims against the Net Settlement Fund beyond the amount allocated to claimants, and to provide that all persons involved in the review, calculation, and all other aspects of processing the claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund and Net Settlement Fund, be released and discharged from any and all claims arising out of such involvement. *See* ECF No. 130-1 at ¶29 ("No person or entity shall have any claim against Lead Plaintiffs, Class Counsel, the Claims Administrator or any other agent designated by Class Counsel, or the Defendants' Releasees and/or their respective counsel, arising from distributions made substantially in

accordance with the Stipulation, the plan of allocation approved by the Court, or any order of the Court."). Accordingly, it is respectfully requested that the Court bar any further claims against the Net Settlement Fund beyond the amount allocated to claimants, and release and discharge all persons who worked on the claims administration process from claims arising from that process.

Furthermore, as specified in the Stipulation, Class Counsel respectfully requests that Lead Plaintiffs, Class Counsel, and the Claims Administrator be released from any claims arising from their decisions to exercise or not exercise their discretion to process late-filed claims. ECF No. 130-1 at ¶25; ECF No. 132 at ¶11.

## V.    RECORDS RETENTION

Unless otherwise ordered by the Court, the Claims Administrator will destroy paper copies of all Claims one year after the initial distribution of the Net Settlement Fund. Ferrara Decl. at ¶42. Unless otherwise ordered by the Court, three years after final distribution of the Net Settlement Fund, the Claims Administrator will destroy the electronic copies of the Proofs of Claim and all supporting documentation. *Id.*

## VI.    PAYMENT TO THE CLAIMS ADMINISTRATOR

The Claims Administrator has incurred $176,431.82 in expenses and fees through the Initial Distribution of the Net Settlement Fund. Ferrara Decl. ¶41. The Claims Administrator has been paid $62,255.94 in payment. This leaves an outstanding balance of $114,175.88. *Id.* The Stipulation contemplates and authorizes payment of fees and expenses reasonably incurred in connection with administering and distributing the Net Settlement Fund. ECF No. 130-1 at ¶¶1(ff), 13, 14, 27.

Accordingly, Lead Plaintiffs and Class Counsel respectfully request the Court approve of an additional payment of $114,175.88 in fees and expenses from the Net Settlement Fund to the Claims Administrator.

## VII.    CONCLUSION

Based on the foregoing, Class Counsel respectfully requests that the Court enter an order: (i) approving the Plan of Distribution for the Net Settlement Fund, including approving the Claims Administrator's determinations accepting and rejecting Claims, the *pro rata* distribution for the

Net Settlement Fund for accepted Claimants, and the destruction of paper and electronic copies of Claim Forms and Claim records as set forth herein; (ii) directing the distribution of the Net Settlement Fund to Authorized Claimants; and (iii) authorizing additional payment to the Claims Administrator.

January 24, 2025                          Respectfully submitted,

/s/ Jeffrey C. Block
Jeffrey C. Block (*pro hac vice*)
Jacob A. Walker (*pro hac vice*)
**Block & Leviton LLP**
260 Franklin Street, Suite 1860
Boston, Massachusetts 02110
(617) 398-5600 phone
(617) 507-6020 fax
jeff@blockleviton.com
jake@blockleviton.com

*Class Counsel for Lead Plaintiffs and the Class*

C. Michael Copeland OBA No. 13261
**Jones, Gotcher & Bogan P.C.**
3800 First Place Tower
15 East 5th Street
Tulsa, Oklahoma 74103
(918) 581-8200 phone
(918) 583-1189 fax
mcopeland@jonesgotcher.com

*Local Counsel for Lead Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was served upon its filing via this Court's CM/ECF system on this 24th day of January 2025 to all counsel of record.

By: s/  Jeffrey C. Block

Jeffrey C. Block